UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

————————————————————————
WASHINGTON SHERATON CORPORATION,    )
                                    )
        Plaintiff,                  )
                                    )
            v.                      )
                                    )
2660 WOODLEY ROAD JOINT VENTURE,    )
                                    )        Case No. 1:05CV0971-HHK
        and,                        )
                                    )
JOHN HANCOCK LIFE INSURANCE         )
COMPANY (formerly known as John Hancock  )
Mutual Life Insurance Company),     )
                                    )
        Defendants.                 )
————————————————————————)


MEMORANDUM IN SUPPORT OF DEFENDANT
JOHN HANCOCK LIFE INSURANCE COMPANY'S MOTION TO DISMISS
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT


William E. Wallace III  (DC Bar No. 298000)
Jonathan C. Poling (DC Bar No. 489459)
MILBANK TWEED HADLEY & McCLOY
1825 Eye Street, N.W., Suite 1100
Washington, DC 20006
Telephone: (202) 835-7511
Facsimile:  (202) 263-7511

June 22, 2005                    *Counsel for John Hancock Life Ins. Co.*

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ......................................................................................... 1

THE FACTS ....................................................................................................................... 4
    A. *Hancock Sheraton Litigation I* ........................................................................ 4
    B. *Hancock Sheraton Litigation II* ...................................................................... 7

**ARGUMENT** .................................................................................................................. 9

I.    WSC's Claims are Barred by the Statute of Limitations ................................... 9

II.   WSC's Claims are Barred by Res Judicata .................................................... 12

III.  WSC Failed to Plead Its Fraud Claim With Particularity ............................... 17

**CONCLUSION** ............................................................................................................ 20

TABLE OF AUTHORITIES

## CASES

*2660 Woodley Road Joint Venture v. ITT Sheraton Corp.*,
   369 F.3d 732 (3d Cir. 2004)................................................................. 7

*Alexis v. District of Columbia*,
   44 F. Supp. 2d 331 (D.D.C. 1999) .............................................. 16

*American Forest Resource Council v. Shea*,
   172 F. Supp. 2d 24 (D. D.C. 2001) ............................................ 14

*Anderson v. USAA Case Ins. Co.*,
   221 F.R.D. 250 (D.D.C. 2004) .................................................. 19

*Apotex, Inc. v. FDA*,
   393 F.3d 210 (D.C. Cir. 2004) ................................... 13, 14, 17

*Arturi v. United States Office Prods. Co.*,
   251 F. Supp. 2d 58 (D.D.C. 2003) ............................................ 10

*Brown v. Chaffee*,
   612 F.2d 497 (10th Cir. 1979) .................................................. 21

*Call Carl, Inc. v. B.P. Oil Corp.*,
   554 F.2d 623 (4th Cir. 1977) .................................................... 21

*Clouser v. Temporaries, Inc.*,
   730 F. Supp. 1127 (D. D.C. 1989) ............................................ 12

*Dayan Enterprises, Corp. v. Natuica Apparel, Inc.*,
   2003 WL 22832706 (S.D.N.Y. Nov. 26, 2003) ........................ 22

*EFCO Corp. v. U.W. Marx, Inc.*,
   124 F.3d 394 (2d Cir. 1997)...................................................... 15

*Fletcher v. Evening Star Newspaper Co.*,
   133 F.2d 395 (D.C. Cir. 1942) .................................................... 2

*Hardison v. Alexander*,
   655 F.2d 1281 (D.C. Cir. 1981) ................................................ 13

*Hartford Life Ins. Co., v. Title Guar. Co.*,
   520 F.2d 1170 (D.C. Cir. 1975) ................................................ 13

*Hinton v. Shaw Pittman Potts & Trowbridge*,
   257 F. Supp. 2d 296 (D. D.C. 2003) ........................................... 2

*I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*,
   723 F.2d 944 (D.C. Cir. 1983) .................................................. 17

*John Hancock Mutual Life Ins. Co., Sumitomo Life Realty, & 2660
Woodley Road Joint Venture, et al. v. ITT Sheraton Corp. & Sheraton
Operating Co.*,
   2002 U.S. Dist. LEXIS 439 (D. Del. Jan. 10, 2002).......................... passim

*King v. Hoover Group, Inc.*,
   958 F.2d 219 (8th Cir. 1992) .................................................... 16

*Kowalski v. Gagne*,
   914 F.2d 299 (1st Cir. 1990)....................................................... 2

*Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*,
146 F.3d 983 (D.C. Cir. 1998) ............................................................................ 9

*Morton v. Nat'l Med. Enters.*,
725 A.2d 462 (D.C. 1999) ................................................................................. 12

*Northern Assurance Co. of Am. v. Square D Co.*,
201 F.3d 84 (2d Cir. 2000) ............................................................................... 16

*One-O-One Enterprises, Inc. v. Caruso*,
668 F. Supp. 693 (D.D.C., 1987) ...................................................................... 21

*Phillips v. Bureau of Prisons*,
591 F.2d 966 (D.C. Cir. 1979) ............................................................................ 2

*Professional Management Assocs., Inc. v. KPMG LLP*,
345 F.3d 1030 (8th Cir. 2003) .......................................................................... 15

*Pyramid Sec. Ltd. v. IB Resolution, Inc.*,
924 F.2d 1114 (D.C. Cir. 1991) ........................................................................ 11

*Resolution Trust Corp. v. Gardner*,
788 F. Supp. 26 (D. D.C. 1992) ........................................................................ 11

*Riddell v. Riddell Washington Corp.*,
866 F.2d 1480 (D.C. Cir. 1989) ........................................................................ 13

*Sears v. Likens*,
912 F.2d 889 (7th Cir. 1990) ............................................................................ 20

*Sony Financial Services, LLC v. Multi Video Group, Ltd.*,
2003 WL 21396690 (S.D.N.Y. July 17, 2003) .................................................. 22

*United States v. Cannon*,
642 F.2d 1373 (D.C. Cir. 1981) ................................................................... 19, 20

*Velikonja v. Ashcroft*,
355 F. Supp. 2d 197 (D.D.C. 2005) .................................................................. 16

## STATUTES

D.C. Code § 12-301 (2005) ....................................................................................... 11

D.C. Code § 12-301(7) .............................................................................................. 9

D.C. Code § 12-301(8) (1995) ............................................................................ 11, 12

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

---

| | |
|---|---|
| WASHINGTON SHERATON CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| 2660 WOODLEY ROAD JOINT VENTURE, | ) |
| | ) |
| and, | ) |
| | ) |
| JOHN HANCOCK LIFE INSURANCE | ) |
| COMPANY (formerly known as John Hancock | ) |
| Mutual Life Insurance Company), | ) |
| | ) |
| Defendants. | ) |

Case No. 1:05CV0971-HHK

---

MEMORANDUM IN SUPPORT OF DEFENDANT JOHN
HANCOCK LIFE INSURANCE COMPANY'S MOTION TO
DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

**PRELIMINARY STATEMENT**

Defendant John Hancock Life Insurance Company ("John Hancock")
submits this Memorandum in support of its motion to dismiss Plaintiff Washington
Sheraton Corporation's ("WSC") complaint pursuant to Rule 12(b)(6) of the Federal
Rules of Civil Procedure and Rule 7(a) of the Local Rules of the District Court for the
District of Columbia, or in the alternative for summary judgment pursuant to pursuant to
Rule 56 of the Federal Rules of Civil Procedure.

WSC's three-count complaint alleges that WSC is entitled to one percent
(1%) of the proceeds generated by the sale of the Sheraton Washington Hotel (the
"Hotel") and that John Hancock breached some duty owed to WSC in connection with

the alleged failure and/or refusal to pay to WSC the proceeds to which it claims an entitlement.  The Hotel was sold in January 1999—more than six years ago.

Aside from the fact that more than six years has passed since the Hotel was sold, WSC already has sued, albeit unsuccessfully, on the same claim being advanced in his case.[1]  In August 1997, John Hancock sued Sheraton and one of its wholly-owned subsidiaries for breach of contract, breach of agency, and breach of fiduciary duty in connection with Sheraton's surreptitious receipt of kickback money from vendors who supplied products to the Hotel.  *See John Hancock Mutual Life Ins. Co., Sumitomo Life Realty, & 2660 Woodley Road Joint Venture, et al. v. ITT Sheraton Corp*. & *Sheraton Operating Co.*, 2002 U.S. Dist. LEXIS 439 (D. Del. Jan. 10, 2002) (hereinafter *Hancock Sheraton Litigation I*).

A number of counterclaims were asserted by the Sheraton Defendants.  WSC, which had not been named as a defendant by John Hancock, nonetheless voluntarily and affirmatively intervened in the litigation in order to assert three additional counterclaims (Claims IV, V and VI) alleging a breach of the joint venture agreement at issue here and a breach of John Hancock's fiduciary duties allegedly owed to WSC.

------

[1]     This Court may take judicial notice of the proceedings in *Hancock Sheraton Litigation I. See Hinton v. Shaw Pittman Potts & Trowbridge,* 257 F. Supp. 2d 296, 100 n5 (D. D.C. 2003) ("Consideration of these documents does not convert the motion to dismiss into one for summary judgment as 'the court may take judicial notice of matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment.'" (quoting *Baker v. Henderson*, 150 F. Supp. 2d 13, 15 (D. D.C. 2001)); *See also, e.g. Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C. Cir. 1979) (noting that the court may properly look beyond the complaint to matters of general public record); *Fletcher v. Evening Star Newspaper Co.*, 133 F.2d 395, 395 (D.C. Cir. 1942) ("It is settled law that the court may take judicial notice of other cases including the same subject matter or questions of a related nature between the same parties."); *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").

WSC later sought leave to supplement its three counterclaims to allege the precise claim it is asserting in this case, specifically that WSC is entitled to a 1% share of the proceeds from the sale of the Hotel.[2]

      Chief Judge Farnan of the United States District Court for the District of Delaware issued an order on December 2, 1999, in which he severed from trial the three WSC counterclaims asserting a breach by John Hancock of the joint venture agreement and a breach by John Hancock of its fiduciary duties. The trial judge also denied without explanation WSC's motion for leave to "supplement" the three counterclaims.

      *Hancock Sheraton Litigation I* went to trial in December 1999 and a verdict was entered in favor of John Hancock and against Sheraton. Sheraton and WSC abandoned all of the counterclaims that previously had been severed from the trial and abandoned its attempt to supplement. Both Sheraton and WSC appealed to the Third Circuit Court of Appeals the adverse jury verdict entered against them on the John Hancock claims; however, WSC later abandoned its appeal on all of its claims. Final judgment has been entered in *Hancock Sheraton Litigation I.*

      WSC's late-filed, second bite at the apple complaint should be dismissed. It is barred by the applicable three-year statute of limitations and is also barred by the doctrine of res judicata.

---

[2]    WSC specifically alleged in *Hancock Sheraton Litigation I* that John Hancock, as Managing Partner of the joint venture, "has also breached its contractual duty to WSC by wrongfully withholding WSC's share of the proceeds obtained from the sale of the Hotel." *See* Exhibit <u>L</u>, Second Amended Answer and Counterclaims.

<u>THE FACTS</u>

A. *Hancock Sheraton Litigation I*

In the early 1970's, the Sheraton organization built, owned and managed a large convention hotel, long known as the "Sheraton Washington Hotel."[3] Thereafter, Sheraton decided to sell the Hotel while retaining the right to manage it for the new buyer. John Hancock agreed to buy the Hotel. In 1979, a joint venture was formed between John Hancock and a Sheraton subsidiary, WSC, for the express purpose of owning and operating the Hotel. The original joint venture was formed in 1979 between John Hancock and WSC, sharing ownership equally. In 1985, John Hancock purchased an additional 49% interest in the joint venture from WSC (bringing John Hancock's interest to 99%), and the name 2660 Woodley Road Joint Venture was adopted. The retained 1% interest was driven by the tax ramifications affecting the transaction and Sheraton's desire to avoid certain potential taxes on what was for all practical purposes a sale of the Hotel to John Hancock.[4]

In the mid-1990's John Hancock and its then joint venture partner, Sumitomo Life, discovered that the Sheraton organization was, among other improprieties, demanding illegal kickbacks from the various vendors who were supplying goods and services to the Hotel as a condition for doing business with the Hotel. *See*

---

[3]     The Sheraton Washington Hotel was renamed Marriott Wardman Park Hotel following its sale in 1999.

[4]     The JV Agreement was amended on June 12, 1990 by John Hancock, WSC, and Sumitomo Life Realty, Inc. ("Sumitomo") for the purpose of admitting Sumitomo into the Venture  The amended JV Agreement rendered John Hancock, Sumitomo, and WSC partners of Woodley, with their respective interests in the partnership designated as 51%, 48%, and 1%. Exhibit <u>B</u>, Amended and Restated Joint Venture Agreement, ¶ 1.01 dated June 12, 1990. John Hancock purchased Sumitomo's interest in the joint venture in 1997, and once again became a 99% owner of the partnership.

*generally, Hancock Sheraton Litigation I.*  When discussions between John Hancock and Sheraton did not put an end to Sheraton's blatantly illegal conduct, John Hancock, Sumitomo and the joint venture sued the Sheraton organization.[5]

Shortly after the lawsuit was filed, Chief Judge Farnan forcibly evicted Sheraton from the Hotel.  The Hotel was then sold in January 1999.  Approximately ten months after the sale of the Hotel, WSC sought to supplement its then pending breach of contract and breach of fiduciary duty counterclaims to more specifically articulate a claim for its 1% ownership interest in the proceeds generated from the sale of the Hotel.  This is the very same claim being asserted in this case.  That Sheraton had been stealing from the Hotel and the joint venture for the previous twenty years had no apparent impact on its brazen decision to sue for a share of the sale proceeds from a hotel that it had sold to John Hancock.

Prior to the trial on John Hancock's claims, Chief Judge Farnan ruled that some of the Sheraton counterclaims would be severed and resolved post-trial.  In the same decision, Judge Farnan also denied Sheraton's motion for leave to "supplement" the several counterclaims based on its claim for 1% of the sale proceeds.  Chief Judge Farnan did not explain the ruling and did not indicate if it was with or without prejudice.  The only thing that is clear from the Court's ruling is that all of WSC's claims against John Hancock relating to John Hancock's alleged breach of fiduciary duty to WSC and

---

[5]    On August 1, 1997, John Hancock filed an action against ITT and Sheraton Operating Corporation ("SOC") alleging violation of § 2(c) of the Robinson-Patman Act, 15 U.S.C. § 13(c), violation of RICO, 18 U.S.C. § 1961, breach of contract, breach of fiduciary duty, breach of the duty of good faith and fair dealing, fraud, and intentional and negligent misrepresentation. *See generally, Hancock Sheraton Litigation I.*

breaches of the joint venture agreement were to be severed from the "pending" trial and were to be addressed later in that case. Exhibit C, Order dated December 2, 1999.

A majority of the claims were tried before a jury in Wilmington, Delaware in December 1999. A unanimous verdict was returned against the Sheraton entities for $12,582,000 in compensatory damages and for punitive damages in the amount of $37.5 million. On the Sheraton claims against John Hancock, the jury found for John Hancock on all counts.[6]

Sheraton elected to abandon all of the counterclaims that had been severed pre-trial. In addition, WSC did not raise post-trial its demand for the 1% of proceeds. Sheraton did however raise a slew of other post-trial motions, virtually every one of which was rejected by the trial judge. After the punitive damages award was halved, judgment was entered on the jury verdict on January 10, 2002.[7] The Sheraton Defendants, and third party Counter-Plaintiff WSC, noticed an appeal from the judgment on January 23, 2002. Exhibit E, Notice of Appeal dated January 23, 2002.

WSC abandoned its appeal shortly after the Notice of Appeal was filed[8] and Sheraton chose not to appeal the jury's verdict on the remainder of the counterclaims. After reducing the amount of damages, including the punitive damages award, the Third

---

[6] Exhibit D, General Verdict Form dated December 10, 1999.

[7] Exhibit G, Amended Judgment in a Civil Case dated January 10, 2002.

[8] On February 21, 2002, WSC's counsel wrote the clerk for the Third Circuit informing the clerk that WSC "was a party to the litigation in the district court only as a counterclaim-plaintiff" and although WSC was listed in the Notice of Appeal, "the appeal will not concern the counterclaims for which [WSC] was a necessary party." *See* Exhibit H, Letter from Robert L. Bronston to Teressa L. Williams dated February 21, 2002. The Third Circuit issued an order based on the aforementioned letter dismissing WSC pursuant to Federal Rule of Appellate Procedure 42(b). *See* Exhibit I, Order dated September 25, 2002.

Circuit affirmed in all material respects Sheraton's liability for taking the illegal

kickbacks and for breaching its agency obligations. *See 2660 Woodley Road Joint*

*Venture v. ITT Sheraton Corp*., 369 F.3d 732, 745 (3d Cir. 2004).  The case was

remanded to the district court and final judgment was entered. *See* Exhibit <u>A</u>, Final

Judgment dated March 1, 2005.  Sheraton has satisfied the judgment.

      B. *Hancock Sheraton Litigation II*

      On April 15, 2005, WSC filed this action against John Hancock and the

joint venture, 2660 Woodley Road Joint Venture ("Woodley"), alleging breach of

contract, breach of fiduciary duty, and fraudulent and negligent misrepresentation in

connection with its renewed claim for 1% of the sale proceeds (hereinafter *Hancock*

*Sheraton Litigation II*).[9]  WSC has already sued John Hancock for breach of the joint

venture agreement and for breach of fiduciary duty—and lost.  WSC specifically injected

into the earlier case the specific fact of the Hotel sale and the non-distribution of the 1%

as a basis to support the breach of contract and breach of fiduciary duty claims.  Sheraton

and WSC abandoned these claims in the district court and then abandoned their appeal on

these issues.  WSC does not get a third try in this Court.

      All three claims are barred by the applicable three-year statute of

limitations and by the doctrine of res judicata.  Although the fraud and misrepresentation

allegations in WSC's Complaint have not been pled with the requisite particularity, it is

---

[9]     The complaint was filed in District of Columbia Superior Court and served on Hancock
on April 22, 2005.  Hancock filed a Notice of Removal on May 16, 2005.  By stipulation and
order of Court, Hancock's response to the complaint is due on June 22, 2005.

clear from what has been alleged that the so-called fraud is nothing more than WSC's

alleged breach of contract masquerading as an independent cause of action.[10]

---

[10]     To the extent the Complaint is not dismissed in its entirety with prejudice, the fraud claim should be dismissed without prejudice with leave to amend in compliance with Rule 9 of the Federal Rules of Civil Procedure.

<u>**ARGUMENT**</u>

I.    **WSC'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS**

WSC's claims are barred by the applicable statute of limitations.  WSC waited more than *six years* to bring this claim; it is more than *three years too late*.  According to Section 12.07 of the JV Agreement, the rights and obligations of the parties "shall be governed by and interpreted and enforced in accordance with the laws of the District of Columbia."  D.C. Code § 12-301(7) provides that actions for breach of contract are subject to a three-year statute of limitations.  Specifically, Section 12-301 states that such action "may not be brought after the expiration of the period specified below [three years] *from the time the right to maintain the action accrues*" (emphasis added).

*First*, with regard to the breach of contract claim, the right to maintain an action accrues when the contract is breached.  *See Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d 983, 992 (D.C. Cir. 1998) ("[T]he cause of action accrues and the statute of limitations begins to run when the defendant breaches the contract.").

WSC believed that a breach occurred at least as early as September 14, 1999, when WSC made a formal demand to John Hancock for distribution of the proceeds from the sale of the Hotel.[11]  WSC's letter of October 11, 1999 informed John Hancock that its delay in submitting a final accounting of the joint venture and failure to distribute the net proceeds from the sale of the Hotel is "a breach of the Managing

---

[11] "While the court must generally limit its review to facts alleged within the complaint, the court may also consider facts of which judicial notice may be taken and documents that are both referenced in the complaint and central to the plaintiff's claim."  *Arturi v. United States Office Prods. Co*., 251 F. Supp. 2d 58, 66-67 (D. D.C. 2003).

Partner's fiduciary obligation to its other partner."  Exhibit <u>J</u>, Letter from James Latham to Malcolm Pittman dated October 11, 1999.  Finally, on October 25, 1999, WSC filed a motion for leave to supplement its counterclaims, stating that "WSC, as holder of a 1% interest in the Joint Venture, is entitled to its share of the proceeds from the sale of the Hotel.  WSC has made demand for its share of the proceeds."  Exhibit <u>K</u>, Memorandum of Law In Support of Motion for Leave to Supplement Counterclaims at 3 and Exhibit <u>F</u>, Affidavit of John Kinzay dated October 22, 1999.  WSC knew that if a breach occurred, it had occurred, if at all, by October 25, 1999.

The latest possible date for accrual of the breach of contract claim is December 31, 1999, when the JV Agreement mandated a distribution of assets.  Section 10.02(A) of the JV Agreement provides that the "Net Proceeds from a Capital Transaction" (which includes the proceeds from the sale of the Hotel) shall be distributed by the last day of the Fiscal Year in which liquidation occurs.  The Hotel was sold on or about January 12, 1999, which under the above provision would require John Hancock to apply the proceeds from the sale of the Hotel by December 31, 1999.

Accordingly, if WSC were owed any money from the sale of the Hotel, the latest possible date that a cause of action for breach of contract accrued is December 31, 1999.  The three-year period in which WSC could have brought suit for a breach of contract ended, at the very latest, on December 31, 2002.  The present suit was not filed until April 15, 2005, more than ***six years after it could have been brought***, and at least ***three years too late***.  WSC's suit is barred.

<u>*Second*</u>, WSC's claim for breach of fiduciary duty is also barred by the statute of limitations.  D.C. Code § 12-301(8) imposes a three-year statute of limitations

on claims of breach of fiduciary duty.  *See Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924

F.2d 1114, 1122 (D.C. Cir. 1991) (noting statute of limitations for breach of fiduciary

duty is three years, citing D.C. Code § 12-301(8)).  The limitation period begins running

at "the time the right to maintain the action accrues."  *See* D.C. Code § 12-301 (2005).

Accrual is marked by "the time when the plaintiff both should have known of the

defendant's actions and suffered actual injury."  *See Resolution Trust Corp. v. Gardner*,

788 F. Supp. 26, 29 (D. D.C. 1992).

       Because the breach of fiduciary duty claim arises from John Hancock's

failure to distribute the proceeds of the sale, the subject of WSC's contract claim, the

breach of fiduciary duty claim accrued at the time that its breach of contract claim

accrued.  The statute of limitations was running at least from October 11, 1999, when

WSC informed John Hancock of its delay in submitting a final accounting of the joint

venture and failure to distribute the proceeds from the sale of the Hotel.  Assuming that

date was the earliest that the statute of limitations began running, WSC had until

October 11, 2002 to bring a claim for breach of fiduciary duty.  WSC, however, waited

over five and a half years from the date of that letter—two and a half years longer than

permissible—to bring this claim.

       *Finally*, WSC's claim for common law fraudulent and/or negligent

misrepresentation and concealment is also barred by the applicable statute of limitations.

D.C. Code § 12-301(8) establishes a three-year statute of limitations for fraudulent and

negligent misrepresentation and concealment claims.  *See Clouser v. Temporaries, Inc.*,

730 F. Supp. 1127, 1131 (D. D.C. 1989) ("claims of fraud, fraudulent concealment,

constructive fraud, punitive damages, negligent misrepresentation . . . are governed by

the three-year limitations period provided in D.C. Code § 12-301(8)"); *Morton v. Nat'l Med. Enters.*, 725 A.2d 462, 468 n.18 (D.C. 1999) ("The statute of limitations for fraud is three years. D.C. Code § 12-301(8) (1995) (catch-all provision)").

WSC's present claim was filed on April 15, 2005, so, to be permissible, the basis for the claim must have arisen after April 15, 2002.  WSC's present claim, however, arose well before April 15, 2002.  Under District of Columbia law, the statute of limitations for claims sounding in fraud begins to run when "the plaintiff 'ascertains, or with the exercise of due diligence should ascertain, the material facts upon which the claim is based.'"  *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1489 (D.C. Cir. 1989) (quoting *Hartford Life Ins. Co., v. Title Guar. Co.*, 520 F.2d 1170, 1174 (D.C. Cir. 1975)).

Although WSC failed to plead its fraud claim with particularity—an issue discussed more fully below—it is clear that WSC's fraud claim arises from its allegations that John Hancock did not pay WSC for its 1% interest in the Hotel after it was sold. WSC was aware, however, *at least since WSC attempted to supplement its counterclaim on October 25, 1999*, that John Hancock had not paid WSC for its 1% interest as allegedly required by the JV Agreement.  Therefore, WSC was aware of the material facts upon which its fraud claim is based far longer than three years before it filed this claim.

## II.    WSC'S CLAIMS ARE BARRED BY RES JUDICATA

In addition to WSC's claims being barred by the statute of limitations, WSC's claims are also barred by res judicata.  The doctrine of res judicata "holds that a judgment on the merits in a prior suit bars a second suit involving identical parties or their privies based on the same cause of action."  *Apotex, Inc. v. FDA*, 393 F.3d 210, 217

(D.C. Cir. 2004).  The doctrine is intended to "conserve judicial resources, avoid

inconsistent results, engender respect for judgments of predictable and certain effect, and

to prevent serial forum-shopping and piecemeal litigation."  *Hardison v. Alexander*, 655

F.2d 1281, 1288 (D.C. Cir. 1981).  The elements of res judicata are: identity of cause of

action and issues, identity of parties, and a judgment on the merits by a court of

competent jurisdiction.  *See American Forest Resource Council v. Shea*, 172 F. Supp. 2d

24, 29 (D. D.C. 2001) (listing elements).

       All three elements of res judicata are satisfied here.  The first element—

identity of cause of action and issues—is met.  Two cases implicate the same cause of

action if they "share the same nucleus of facts."  *Apotex, Inc.*, 393 F.3d at 217.  WSC

raised its claim for breach of contract for recovery of its 1% interest in Woodley in its

October 25, 1999 motion for leave to supplement its counterclaims: "This motion is

necessitated by the fact that John Hancock has refused to distribute to [WSC] an

estimated two million dollar in proceeds from the sale of the Hotel, which occurred more

than six months ago."  *See* Exhibit <u>K</u>, Memorandum of Law in Support of Motion for

Leave to Supplement Counterclaims at 1.

       On April 15, 2005, WSC filed this lawsuit alleging: "Plaintiff is entitled to

a pro rata distribution representing its interest in the Partnership, including but not limited

to, its portion of the Sale of proceeds, which, upon information and belief, was

approximately $2 millions at the time of the Sale."  Complaint at ¶ 19.  WSC's breach of

contract claim here is identical to the breach of contract claim raised in *Hancock*

*Sheraton Litigation I.*

The second element of res judicata, the same parties, is also satisfied here. WSC was a counterclaimant and John Hancock was a counter-defendant in the *Hancock Sheraton Litigation I.  See* Exhibit <u>L</u>, Second Amended Answer and Counterclaims.

The third element, a final judgment on the merits, is satisfied as well. WSC asserted and later abandoned its claim that John Hancock breached the joint venture agreement.  WSC also moved for leave to supplement its counterclaims to include a specific reference to its claim for its 1% interest in Woodley.  The district court denied WSC's motion on December 2, 1999.  *See* Exhibit <u>C</u>, Order dated December 2, 1999.. WSC noticed an appeal of the District Court's order in the U.S. Court of Appeals for the Third Circuit, but WSC later withdrew its appeal.  *See* Exhibit <u>E</u>, Notice of Appeal dated January 23, 2002; Exhibit <u>I</u>, Order dated September 25, 2002.  As made clear in *EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394, 399-400 (2d Cir. 1997),

> [w]here a plaintiff's motion to amend its complaint in the first action is denied, and plaintiff fails to appeal the denial, *res judicata* applies to the claims sought to be added in the proposed amended complaint . . . .  In such situations, regardless of the state court's reasons for denying leave to amend, it may fairly be said that the plaintiff has failed to avail himself of an opportunity to pursue a remedy . . . and thus application of *res judicata* is warranted.

*See also Professional Management Assocs., Inc. v. KPMG LLP*, 345 F.3d 1030, 1032 (8th Cir. 2003) ("***Denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading*** . . . . This is so even when denial of leave to amend is based on reasons other than the merits, such as timeliness.") (emphasis added); *Northern Assurance Co. of Am. v. Square D Co.*, 201 F.3d 84, 88 (2d Cir. 2000) ("Where the plaintiff is seeking to add additional claims against the same defendant and leave to amend is denied, claim preclusion is

14

appropriate"); *King v. Hoover Group, Inc.*, 958 F.2d 219, 223 (8th Cir. 1992) ("It is well settled that ***denial of leave to amend constitutes res judicata on the merits of the claims*** which were the subject of the proposed amended pleading") (emphasis added).

Res judicata, however, bars not only claims that were actually litigated previously, but also claims that ***could have been brought*** in previous litigation. *See Velikonja v. Ashcroft*, 355 F. Supp. 2d 197, 200 (D. D.C. 2005) ("In contrast to issue preclusion, new claims need not have actually been adjudicated in an earlier action to be barred by res judicata. It is sufficient if the claims 'could have been raised' at an earlier juncture."); *Alexis v. District of Columbia*, 44 F. Supp. 2d 331, 337 (D. D.C. 1999) ("A party may not litigate any further claims based on the same nucleus of facts that gave rise to the prior litigation because it is that nucleus of facts that comprises the cause of action.").

WSC's breach of fiduciary duty claim is also barred by res judicata. WSC brought its breach of contract claim in the prior litigation. WSC's breach of fiduciary duty claim (like its fraud claim as well), however, is a different legal theory based on the same facts that were present when WSC filed its breach of contract claim on October 25, 1999, and remained present throughout the prior litigation. The breach of fiduciary duty claim, in fact, arises out of the same "nucleus of facts" as the breach of contract claim— both are based on John Hancock's refusal to distribute the proceeds from the sale of the Hotel. *See Apotex, Inc.,* 393 F.3d at 217 (D.C. Cir. 2004) ("Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'. . . In pursuing this inquiry, the Court will consider 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their

treatment as a unit conforms to the parties' expectations or business understandings or usage.'") (quoting *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 n.5 (D.C. Cir. 1983)).

The breach of fiduciary duty claim is inextricably related in time, space, origin and motivation to the breach of contract claim. In fact, the alleged breach of fiduciary duty is a breach that arises directly from the alleged breach of contract. Without a breach of contract, the breach of fiduciary duty claim does not exist. As such, both claims form the same cause of action and should have been addressed during *Hancock Sheraton Litigation I*—not in a piecemeal approach in a different court and almost six years later.

WSC was aware of the facts giving rise to this claim since 1999, and it litigated one legal theory based on the same nucleus of facts. In 1999, WSC was aware of facts it believed gave rise to a breach of fiduciary duty. In October 1999, for example, WSC wrote John Hancock stating that the failure to distribute the net proceeds from the sale of the Hotel is "a breach of the Managing Partner's ***fiduciary obligation*** to its other partner." *See* Exhibit J̲, Letter from James Latham to Malcolm Pittman dated October 11, 1999 (emphasis added). WSC is not entitled to litigate one of its claims arising from John Hancock's refusal to distribute funds, wait several years, come up with different legal theories, and raise those new theories in a different court. The district court continued to deal with that suit for over two years after WSC raised its breach of contract claim in *Hancock Sheraton Litigation I*.[12] At no point during those two years did WSC

---

[12] WSC raised its breach of contract claim on October 25, 1999. See Exhibit K̲, Memorandum of Law in Support of Motion for Leave to Supplement Counterclaims dated October 25. 1999. The

raise the breach of fiduciary duty issue, and it should not be allowed to do so now. The purposes of res judicata—conservation of judicial resources, preventing forum-shopping, and preventing piecemeal litigation—are well served by refusing to allow WSC to bring a claim for breach of fiduciary duty at this time.

   *Finally*, similar to the breach of fiduciary duty claim, the fraud claim also is a new legal theory, which arose from the same nucleus of operative facts, but was not originally brought by WSC when it filed its breach of contract claim against John Hancock. Accordingly, it too is barred by res judicata. The facts on which the fraud claim is based have not changed since 1999, through the subsequent years of litigation thereafter, but WSC failed to bring a fraud claim during those years. The fraud claim rests upon the same set of facts as the breach of contract claim advanced by WSC in 1999. Those facts pertain to disbursement of proceeds relating to the sale of the Hotel. WSC could have brought its fraud claim at anytime during the earlier litigation before a court that was familiar with the facts and aware of the relationship and history between the parties. WSC failed to do so and instead has waited over five years, during which time, it crafted new legal theories that could have and, indeed, should have been brought a long time ago in the United States District Court for the District of Delaware in *Hancock Sheraton Litigation I*.

## III.   WSC FAILED TO PLEAD ITS FRAUD CLAIM WITH PARTICULARITY

   Rule 9(b) of the Federal Rules of Civil Procedure provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be

---

case was in the District Court until January 10, 2002. *See* Exhibit G, Amended Judgment in a Civil Case dated January 10, 2002.

stated with particularity." The "circumstances constituting fraud" that must be stated

include: (1) the time, place, and contents of the alleged misrepresentations; (2) the

identity of the person who made the representation; and (3) the method by which the

representation was communicated to the plaintiff. *See United States v. Cannon*, 642 F.2d

1373, 1385 (D.C. Cir. 1981) ("the pleader must state the time, place and content of the

false misrepresentations"); *see also Anderson v. USAA Case Ins. Co.*, 221 F.R.D. 250 (D.

D.C. 2004) ("In other words, Rule 9(b) requires that the pleader provide the 'who, what,

when, where, and how' with respect to the circumstances of the fraud.").

        The purpose of Rule 9(b) is to prevent baseless allegations and to let a

defendant know what particular actions or statements are the subject of the claim, so that

defendants know what they are defending. *See Cannon*, 642 F.2d at 1385 ("[Rule 9(b)]

serves to discourage the initiation of suits brought solely for their nuisance value, and

safeguards potential defendants from frivolous accusations . . . . [T]he requirements of

9(b) guarantee all defendants sufficient information to allow for preparation of a

response"). WSC's complaint does not provide sufficient information to allow John

Hancock to prepare a response, the allegations are baseless, and allowing the fraud claim

to proceed would frustrate the purpose of Rule 9(b). The extremely vague complaint fails

to meet the heightened pleading requirements of Rule 9(b), and therefore WSC's fraud

claim must be dismissed.

        WSC's misrepresentation claim is barred by Rule 9(b) for at least the

following reasons: (1) WSC failed to indicate the content of the alleged

misrepresentations; (2) WSC failed to indicate the identity of the person or persons who

made the alleged misrepresentations; (3) WSC failed to indicate the time or place of the

alleged misrepresentations; and (4) WSC failed to indicate the method by which the alleged misrepresentations were communicated to it. *See Cannon*, 642 F.2d at 1385 ("the pleader must state the time, place and content of the false misrepresentations"); *see also Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) ("To meet the particularity requirements of Rule 9(b), a complaint must specify the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.").

      WSC did not just fail to specify one of the required elements, it failed to specify *any* of the required elements. The closest WSC comes to alleging any specifics is in paragraphs 38 and 39 of its complaint. Paragraph 38, for example, states: "Defendants were obligated to, and represented to Plaintiff that they would, manage the Partnership on behalf of Plaintiff." Complaint at ¶ 38. This, however, comes directly from the JV Agreement. The law is well settled that a party is not entitled to convert a breach of contract claim into a fraud claim simply by alleging the defendant failed to satisfy its obligation under the contract. *See Brown v. Chaffee*, 612 F.2d 497, 503 (10th Cir. 1979) ("[Plaintiff] cannot turn an action for breach of contract into an action for fraud by merely alleging reliance on representations that the contract would be performed and detriment from its breach."); *see also One-O-One Enterprises, Inc. v. Caruso*, 668 F. Supp. 693, 699 (D. D.C. 1987) ("An action based on fraud 'can only be predicated on misrepresentation of past or existing fact; breach of future promises lies in the realm of contract.'" (quoting *Call Carl, Inc. v. B.P. Oil Corp.,* 554 F.2d 623, 631 (4th Cir. 1977)). WSC makes no allegations that John Hancock breached any obligation separate and apart from its obligations to perform pursuant to the contract and, therefore, should be

dismissed.  *See Dayan Enterprises, Corp. v. Natuica Apparel, Inc.* 2003 WL 22832706 (S.D.N.Y. Nov. 26, 2003) (dismissing fraud allegations where fraud charged related only to the breach of contract); *Sony Financial Services, LLC v. Multi Video Group, Ltd.* 2003 WL 21396690 (S.D.N.Y. July 17, 2003) (dismissing fraud allegations where allegations involved a mismatch of expectations, a failure of performance which may have been a breach of contract claim, or both, but were disguised as a fraud claim).

<u>**CONCLUSION**</u>

For the foregoing reasons, John Hancock respectfully requests the Court to dismiss WSC's Complaint in its entirety with prejudice.  To the extent the Complaint is not dismissed with prejudice, it should be dismissed with leave to amend in compliance with Federal Rule of Civil Procedure 9.

Respectfully submitted,

<u>/s/ William E. Wallace III</u>
William E. Wallace III  (DC Bar No. 298000)
Jonathan C. Poling (DC Bar No. 489459)
MILBANK TWEED HADLEY & McCLOY
1825 Eye Street, N.W., Suite 1100
Washington, DC 20006
Telephone: (202) 835-7511
Facsimile:  (202) 263-7511

June 22, 2005                    *Counsel for John Hancock Life Ins. Co.*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 22, 2005, I electronically filed and caused to

be served by First Class Mail copies of (1) "DEFENDANT'S MOTION TO DISMISS

OR IN THE ALTERNATIVE SUMMARY JUDGMENT," (2) "MEMORANDUM IN

SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE

SUMMARY JUDGMENT," and (3) "PROPOSED ORDER," addressed as follows:

John Scheuermann
Scheuermann & Menist
700 E Street, S.E.
Washington, D.C. 20003
Tel: (202) 547-9180

William A. Brewer, III
Bickel & Brewer
767 Fifth Avenue
New York, NY 10153
Tel: (212) 489-1400

/s/ Jonathan C. Poling
Jonathan C. Poling