IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
2660 WOODLEY ROAD JOINT          :
VENTURE, et al.,                 :
                                 :
        Plaintiffs and           :
        Counterclaim Defendants, :
                                 :
    v.                           :   Civil Action No. 97-450-JJF
                                 :
ITT SHERATON CORPORATION,        :
et al.,                          :
                                 :
        Defendants and           :
        Counterclaim Plaintiffs. :
```

---

James P. Hughes, Jr., Esquire, and John W. Shaw, Esquire of YOUNG
CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.
Of Counsel: William E. Wallace III, Esquire, Thomas J. O'Brien,
Esquire, William M. Bosch, Esquire, and Derek A. Cohen, Esquire
of MORGAN, LEWIS & BOCKIUS LLP, Washington, D.C.
Attorneys for Plaintiffs and Counterclaim Defendants.

Allen M. Terrell, Jr., Esquire of RICHARDS, LAYTON & FINGER,
Wilmington, Delaware.
Of Counsel: John S. Kinzey, Esquire, Scot C. Gleason, Esquire,
and Nicholas W.C. Corson, Esquire of LeBOEUF, LAMB, GREENE &
MacRAE, LLP, New York, New York.
Attorneys for Defendants and Counterclaim Plaintiffs.

---

**MEMORANDUM OPINION**

January 10, 2002

Wilmington, Delaware


DEFENDANT'S EXHIBIT
G
ALL-STATE LEGAL®

**Farnan, District Judge.**

Presently before the Court is Defendants' Motion For A
Judgment As A Matter Of Law Or, In The Alternative, For A New
Trial Or Amendment Of The Judgment (D.I. 352). For the reasons
set forth below, the Court will grant Defendants' Motion insofar
as it seeks a remittitur of the jury's punitive damages award and
deny Defendants' Motion in all other respects.

**BACKGROUND**

Plaintiffs 2660 Woodley Road Joint Venture, John Hancock
Mutual Life Insurance Company, Sumitomo Life Realty, and Woodley
Road Associates, Inc. (collectively "Plaintiffs") filed the
instant suit against Defendants ITT Sheraton Corporation and
Sheraton Operating Corporation (collectively "Defendants"),
seeking damages and other relief for breach of a management
contract (the "Management Contract") between the parties, breach
of fiduciary duty, RICO violations, and violations of the
Robinson-Patman Act. Defendants filed counterclaims against
Plaintiffs for failure to make specified structural repairs and
for breach of contractual and fiduciary duties. Washington
Sheraton Corporation was subsequently included in this litigation
as a counterclaim plaintiff.

After a trial on the merits, the jury returned a verdict in
favor of Plaintiffs on their claim under the Robinson-Patman Act,
on three of their eight breach of contract claims, on their

1

claims for breach of fiduciary duty, breach of the implied
covenant of good faith and fair dealing, and intentional or
negligent misrepresentation, and on their claim for punitive
damages.  The jury also found in favor of Plaintiffs on all of
Defendants' counterclaims.  Defendants subsequently filed the
instant motion for judgment as a matter of law under Rule 50(b),
or in the alternative, for a new trial under Rule 59 (D.I. 352).

## STANDARD OF REVIEW

### I.    Motion For Judgment As A Matter Of Law

To prevail on a renewed motion for judgment as a matter of
law under Federal Rule of Civil Procedure 50(b), the movant "must
show that the jury's findings, presumed or express, are not
supported by substantial evidence or, if they [are], that the
legal conclusions implied [by] the jury's verdict cannot in law
be supported by those findings." Lifescan, Inc. v. Home
Diagnostics, Inc., 103 F. Supp. 2d 345, 350 (D. Del. 2000)
(citations omitted), aff'd, 2001 WL 345439 (Fed. Cir. Apr. 6,
2001).  In assessing the sufficiency of the evidence, the court
must afford the non-movant, as the verdict winner, the benefit of
all logical inferences that can be drawn from the evidence,
resolve all conflicts in the evidence in the non-movant's favor,
and view the record in the light most favorable to the non-
movant.  Id. at 350 (citations omitted).  The court may not
evaluate the credibility of the witnesses, may not re-weigh the

2

evidence, and may not substitute its own interpretation of the
evidence in place of the jury's interpretation.  Id.  Rather, the
court must determine whether evidence exists in the record to
reasonably support the jury's verdict.  Id.

## II.  Motion For A New Trial

Pursuant to Federal Rule of Civil Procedure 59(e), the court
may grant a new trial on all or part of the issues in an action
"for any of the reasons for which new trials have heretofore been
granted at law in the courts of the United States."  Fed. R. Civ.
P. 59(a).  Among the most common reasons for granting a new trial
are the following: (1) the jury verdict is against the clear
weight of the evidence, and a new trial must be granted to
prevent a miscarriage of justice; (2) new evidence has been
discovered that would likely alter the outcome of the trial; (3)
an attorney acted improperly or the court unfairly influenced the
jury's verdict; or (4) the jury's verdict was facially
inconsistent.  Lifescan, 103 F. Supp. 2d at 351.

The decision to grant or deny a new trial is committed to
the sound discretion of the trial court.  Id.  (citations
omitted).  However, where the ground for a new trial is that the
jury's verdict is against the clear weight of the evidence, the
court should proceed cautiously, because such a ruling would, by
its nature, supplant the court's judgment for that of the jury.
Klein v. Hollings, 992 F.2d 1285, 1290 (3d Cir. 1993).  In

determining whether a new trial should be granted, the court need not view the evidence in the light most favorable to the verdict winner. A new trial should only be granted where the verdict results in a miscarriage of judgment or shocks the conscience. <u>Williamson v. Consolidated Rail Corp.</u>, 926 F.2d 1344, 1352 (3d Cir. 1991).

**III. Motion For Remittitur**

As an alternative to granting a new trial, the court may also reduce a damages award if it deems the award to be clearly excessive. <u>Spence v. Board of Educ. of Christina Sch. Dist.</u>, 806 F.2d 1198, 1201 (3d Cir. 1986). Like the decision to grant a new trial, the decision to order a remittitur rests within the sole discretion of the trial court. <u>Id.</u>

**DISCUSSION**

I.    **Whether Defendants' Are Entitled To Judgment As A Matter Of Law, A New Trial, Or A Remittitur Regarding The Jury's Award Of Contractual Damages In Favor Of Plaintiffs**

  A.    <u>Whether The Jury's Verdict And Award Of Contractual Damages Based On Defendants' Breach Of The Agency Provision Is Against The Weight Of The Evidence Or Shocking To The Conscience</u>

By their Motion, Defendants contend that the jury's award of $10.26 million for breach of the Management Contract due to Defendants' failure to act as the Owners' agent ("Agency Provision") is against the weight of the evidence, or in the alternative, shocking to the conscience, such that Defendants'

are entitled to judgment as a matter of law or a remittitur of the jury's damages award.  Specifically, Defendants contend that Plaintiffs presented no evidence that Defendants breached their duty to act as the agent of the Owners' outside of the specific contractual duties separately enumerated in the jury interrogatories.  (D.I. 352 at 8).  Defendants point out the that jury rejected all of Plaintiffs' contract claims except for their claims relating to purchasing and workers' compensation for which the jury awarded Plaintiffs a total of $472,000.  Thus, Defendants contend that Plaintiffs presented no evidence for the jury to infer additional damages for a breach of the Agency Provision, and therefore, Defendants contend that the jury used this contract damage category as "a way to punish [Defendants] for [their] conduct, rather than to compensate Plaintiffs for any losses suffered."  (D.I. 353 at 8).  Accordingly, Defendants contend that the jury's award is excessive, improper and duplicative of the jury's punitive damages award.

After reviewing the record as it pertains to this claim, the Court concludes that Plaintiffs presented sufficient evidence at trial to support the jury's verdict regarding damages for breach of the Agency Provision.  First, the Court disagrees with Defendants' premise that the jury's failure to award damages under the other contract provisions necessarily means that the jury should not have awarded damages for breach of the Agency

Provision. The Agency Provision is a separate contractual provision in the Management Contract and the jury could have separately awarded damages to Plaintiffs if they found that Defendants breached that provision.

Further, after reviewing the record, the Court concludes that Plaintiffs presented substantial evidence to support the jury's verdict regarding the Agency Provision. Plaintiffs' experts repeatedly testified regarding instances in which Defendants put their interests ahead of Plaintiffs' interests, thereby violating the Agency Provision of the Management Contract. For example, Plaintiffs presented evidence detailing Defendants' improper receipt of kickbacks and their failure to disclose their activities, despite their role as Plaintiffs' agent. (Tr. 287-290, 464-465, 1296). Further, Defendants' experts did not refute Plaintiffs' evidence concerning Defendants' breach of their agency duties, because they testified that they did not consider the agency issue in their opinions. (Tr. 1102, 1196). In light of this evidence and in the circumstances of this case, the Court cannot conclude that the jury's verdict was erroneous. Further, in light of Plaintiffs' evidence that Defendants' received over $68 million in fees during the life of the contract, the Court cannot conclude that the jury's damages award was so grossly excessive as to shock the conscience. Accordingly, the Court concludes that Defendants are

not entitled to judgment as a matter of law, a new trial or a remittitur with regard to the jury's verdict and award of damages related to breach of the Agency Provision.

B.    <u>Whether Defendants Are Entitled To A New Trial As A Result Of Allegedly Misleading And/Or Confusing Jury Instructions</u>

In the alternative to their request for judgment as a matter of law or a remittitur, Defendants contend that a new trial is warranted because the Court's jury instructions were misleading and/or confusing to the jury.  Specifically, Defendants contend that the Court should have added the following to the jury instructions, "When the agency agreement takes the form of a contract it is assumed that the document represents the entire understanding of the parties."  (D.I. 352 at 9).  According to Defendants, "the lack of such an instruction or any instruction differentiating between breach of contract for failure to act as owner's agent and breach of fiduciary duty confused the jury and caused the jury to grant the Plaintiffs a large damage award which . . . was not supported by the evidence."  (D.I. 353 at 10).

Where the basis for seeking a new trial is an alleged error in the Court's jury instructions, the error must be "so substantial that, viewed in light of the evidence in the case and the charge as a whole, the instruction was capable of confusing and thereby misleading the jury."  <u>Link v. Mercedes-Benz of North</u>

7

America, Inc., 788 F.2d 918, 922 (3d Cir. 1986). After reviewing the jury charge as a whole in light of the evidence in this case, the Court cannot conclude that its jury instructions confused or misled the jury such that a new trial is warranted. Contrary to Defendants' suggestion that the Court's jury instructions prevented the jury from differentiating between breach of contact and breach of fiduciary duty, the Court instructed the jury separately regarding both concepts, and both instructions properly stated the law. Further, the General Verdict Form Accompanied by Special Interrogatories highlighted the distinction between the claims, by providing separate interrogatories for breach of fiduciary duty and breach of contract as a result of the failure to act as the Owners' agent. Given these circumstances, the Court cannot conclude that the jury was confused or misled by the Court's jury instructions, and therefore, the Court will deny Defendants' request for a new trial based on the Court's jury instructions.

II.  **Whether Defendants' Are Entitled To Judgment As A Matter Of Law, A New Trial, Or A Remittitur Regarding The Jury's Award Of Punitive Damages To Plaintiffs**

   A.  <u>Whether Plaintiffs Presented Sufficient Evidence To Support A Punitive Damages Award</u>

By their Motion, Defendants contend that Plaintiffs failed to present sufficient evidence to support the jury's punitive damages award. Specifically, Defendants contend that "the jury recognized that there was insufficient evidence to support

Plaintiffs' claims for intentional torts when they rejected Plaintiffs' claims based on alleged violations of the RICO statute and common law fraud."  (D.I. 353 at 2).

Punitive damages are unavailable as a matter of law for contract claims, however they are available for tort claims.  To support an award for punitive damages, the plaintiff must present sufficient evidence for a jury to conclude that the tortfeasor "engaged in conduct evincing an evil motive, malice or a reckless or callous disregard of plaintiff's rights."  See e.g. Servino v. The Medical Center of Delaware, Inc., C.A. No. 94C-08-077-WTQ, 1997 Del. Super. LEXIS 274, at *10 (Del. Super. Aug. 1, 1997) (citations omitted).

After reviewing the record, the Court concludes that Plaintiffs presented sufficient evidence to support the jury's decision to award punitive damages.  Although the jury found against Plaintiffs on their fraud and RICO claims, the jury found for Plaintiffs on their breach of fiduciary duty and intentional and negligent misrepresentation claims, all of which are sufficient to form the basis of a punitive damages award. Moreover, in the circumstances of this case, the Court cannot conclude that the jury's decision to award punitive damages was against the weight of the evidence presented by Plaintiffs. Plaintiffs presented the testimony of both lay and expert witnesses supporting their contention that Defendants received

unlawful kickbacks and provided false and/or misleading
information to Plaintiffs.  For example, Plaintiffs presented the
expert testimony of Donald Winter concerning the impropriety of
Defendants' conduct and its deceptive nature (Tr. 290-316) and
the testimony of Defendants' employees and outside vendors
concerning the nature and mechanics of the "rebate" program.
(Tr. 186-204, 217-220).  In addition, Plaintiffs presented
documents reflecting the higher prices charged to the hotels and
illustrating Defendants' failure to inform the Owners that they
were paying for these "rebates."  (Tr. Ex. 7, 114).  In light of
this evidence, the Court cannot conclude that the jury's decision
to award punitive damages award was unsubstantiated, and
therefore, the Court will deny Defendants' motion for judgment as
a matter of law as it pertains to the jury's decision to award
punitive damages.

     B.    <u>Whether Defendants Are Entitled To A New Trial On The
         Grounds That The Jury Failed To Follow The Court's Jury
         Instructions On Punitive Damages</u>

Defendants next contend that the amount of the punitive
damages award indicates that the jury failed to follow the
Court's jury instructions and that the award was based on the
jury's passion and/or prejudice such that a new trial is
warranted.  Defendants further contend that this prejudice was
exacerbated by Plaintiffs' counsel during closing arguments.
Specifically, Defendants point out that during closing arguments,

Plaintiffs' counsel suggested that punitive damages should properly be "two, three, or four times the amount of compensatory damages awarded," including contractual damages (D.I. 353 at 3) (citing Tr. 1551). Plaintiffs' counsel then presented a demonstrative exhibit that included contractual damages as a part of the total $12.5 million in compensatory damages that Plaintiffs sought from Defendants. (D.I. 353 at 3). Defendants contend that, because the jury returned a punitive damages award of $37.5 million, exactly three times the amount of compensatory damages sought by Plaintiffs, the jury must have ignored the jury instruction that punitive damages are only available for breaches of fiduciary duty and negligent and/or intentional misrepresentation, or were otherwise confused by the Court's instructions. (D.I. 353 at 3-4).

After reviewing the record in this case, the Court concludes that Defendants are not entitled to a new trial as a result of the jury's alleged failure to follow the Court's instructions in awarding punitive damages. Defendants suggest that the jury may have been confused by the Court's instructions and the arguments presented by Plaintiffs' counsel. However, Defendants did not object to the Court's instructions as they pertained to punitive damages or counsel's argument concerning punitive damages, and therefore, the Court concludes that Defendants are precluded from pressing these arguments post-trial. See <u>Inter Medical Supplies,</u>

11

<u>Ltd. v. EBI Medical Systems, Inc.</u>; 181 F.3d 446, 463 (3d Cir.
1999) (holding that the failure to timely object to jury
instructions results in a waiver of any objection).

In the alternative, even if the Court were to consider
Defendants' argument, the Court would conclude that Defendants
have not established that a new trial is warranted in the
circumstances of this case.  As in <u>Inter Medical Supplies</u>, the
tortious conduct giving rise to the punitive damages award in
this case is intertwined with Defendants' contractual obligations
to Plaintiffs, such that the Court cannot conclude that it was
erroneous for the jury to consider the total amount of
compensatory damages in awarding Plaintiffs' punitive damages.
<u>Id.</u>

To the extent that Defendants suggest that the jury's
punitive damages award was based on passion and prejudice, the
Court likewise concludes that Defendants are not entitled to a
new trial.  The sheer size of the jury's award is insufficient to
establish that the award was the result of the jury's passion or
prejudice.  <u>Id.</u> at 464.  Moreover, the jury's verdict itself
demonstrates that the jury did not blindly favor Plaintiffs over
Defendants such that its decision was the product of an improper
bias against Defendants.  Indeed, the jury did not find in favor
of Plaintiffs on all of their causes of action, and the jury did
not award Plaintiffs the full amount of damages they sought

12

against Defendants.  Accordingly, in the circumstances of this case, the Court concludes that Defendants are not entitled to a new trial on the grounds that the jury failed to follow the Court's instructions or awarded damages based on the improper motives of passion and prejudice.

C.    <u>Whether The Jury's Punitive Damage Award Is Excessive
       And Unreasonable Such That Defendants Are Entitled To A
       New Trial Or A Remittitur Of the Jury's Punitive
       Damages Award</u>

By their Motion, Defendants further contend that the jury's award of punitive damages in the amount $37.5 million is so excessive and unreasonable that the Court should order a remittitur of the award.  In the alternative, Defendants contend that a new trial is warranted, because the jury's award is excessive.

In determining whether a punitive damages award is unconstitutionally excessive and unreasonable, the Court should apply three "guideposts" set forth by the United States Supreme Court in <u>BMW of North America v. Gore</u>, 517 U.S. 559 (1996). Specifically, the Court should consider:  (1) the degree of reprehensibility of the wrongdoer's conduct; (2) the disparity between the harm or the potential harm suffered by the injured party and the punitive damages award; and (3) the difference between the punitive damages award and the civil penalties authorized or imposed in comparable cases.  <u>Id.</u> at 574-575.

Elaborating on these guideposts, courts have recognized the

13

reprehensibility of the wrongdoer's conduct as the most significant factor. In assessing the reprehensibility of the wrongdoer's conduct, the court should consider (1) whether the harm was economic or physical; (2) whether the conduct would be unlawful in all states; (3) whether the conduct was a single act or repeated acts; (4) whether the conduct was intentional; (5) whether the conduct involved deliberate false statements rather than omissions; and (6) whether the conduct was aimed at a vulnerable target. See e.g. Inter Medical Supplies, 181 F.3d at 467.

Applying these guideposts in the circumstances of this case, the Court concludes that the jury's punitive damages award is unreasonably excessive such that a remittitur is required. Specifically, the Court concludes that while Defendants' conduct is sufficiently reprehensible to justify a punitive damages award, it is not so reprehensible as to justify the size of the award in this case. Further, the Court finds the ratio of punitive damages to compensatory damages to be unjustifiably excessive in light of the other guideposts and the circumstances of this case such that a reduced punitive damages award is appropriate. The Court also concludes that the third BMW guidepost favors an award of punitive damages to some extent, but that it is not so persuasive given the other guideposts as to justify or support the size of the jury's award in this case.

14

Consistent with these conclusions, the Court will analyze each of the BMW factors in turn.

> 1.   Whether Defendants' conduct is sufficiently
>      reprehensible to justify the punitive damages
>      award

With regard to the reprehensibility of Defendants' conduct, the Court concludes that Plaintiffs presented sufficient evidence to support a finding that Defendants' conduct was sufficiently reprehensible to justify a punitive damages award; however the conduct is not so reprehensible as to justify the amount of the award in this case. The harm in this case was economic harm rather than physical harm, which the Supreme Court has recognized to be a less reprehensible type of harm. On the other hand, Defendants' conduct involved deceit, which the Supreme Court has recognized to be more troublesome than ordinary negligence. BMW, 517 U.S. at 576 (recognizing that "the infliction of economic injury, especially when done intentionally through affirmative acts of misconduct or when the target is financially vulnerable, can warrant a substantial penalty"); see also Ballen v. Martin Chevrolet, 1999 WL 1045735, *4 (D. Del. Aug. 7, 1997) (discussing Supreme Court's decision in BMW and noting that the Supreme Court found "trickery or deceit" to be "more troublesome" than negligence). Thus, in the Court's view, the first Inter Medical factor supports some amount of punitive damages, but not the amount awarded in this case.

As for the remaining Inter Medical factors, the Court likewise concludes that they support a finding that Defendants' conduct was sufficiently reprehensible to justify a punitive damages award, but they are not so egregious or so clearly favorable to Plaintiffs that they justify the amount of the award in this case.  For example, Plaintiffs presented evidence that, while serving as Plaintiffs' fiduciaries, Defendants received unlawful kickbacks against Plaintiffs' interests over several years.  Plaintiffs also presented evidence demonstrating that Defendants conduct was intentional and that Defendants deliberately made misleading statements regarding their rebate program to conceal their wrongdoing and the harm it caused Plaintiffs.  (Tr. 186-205, 212-214, 217-220, 220-238, 290-316). However, as the jury's verdict demonstrates, the evidence was not so persuasive as to establish that Defendants were engaged in fraud.  Further, in the Court's view, Plaintiffs evidence concerning their vulnerability was "borderline."  While it is true that Plaintiffs had less experience than Defendants in the hotel business, they were also not entirely naive in such business matters.  And thus, the Court cannot conclude that Defendants' were so vulnerable as to be at a complete disadvantage in their dealings with Defendants.  Accordingly, after weighing these considerations in light of the remaining guideposts, the Court, in its discretion, concludes that it is

appropriate to reduce the jury's punitive damages award.

2. Whether the ratio of punitive damages to
   compensatory damages is excessive

As for the second BMW guidepost concerning the ratio of
punitive damages to the harm suffered by Plaintiffs, Defendants
contend that the ratio is disproportionate, because the Court
should consider only those damages awarded for Plaintiffs' breach
of fiduciary duty and intentional or negligent misrepresentation
claims, i.e. approximately $1.1 million. Using this $1.1 million
figure, Defendants contend that the punitive damages award
represents a 37:1 ratio which is sufficiently shocking to the
conscience to warrant a new trial or remittitur.

While the Court disagrees with Defendants' rationale insofar
as it limits the punitive damages award to the $1.1 million
portion of the jury's verdict, the Court agrees with Defendants'
that, in the circumstances of this case, the ratio of
compensatory damages to punitive damages is excessive. As the
Court previously noted, Defendants' contractual breaches are
sufficiently intertwined with their tortious conduct such that
the Court cannot conclude that it would be inappropriate to
consider the contractual damages in awarding punitive damages.
Inter Medical Services, 181 F.3d at 463. However, as the Court
also pointed out, the harm in this case, while reprehensible, is
not so reprehensible as to justify the size of the jury's
punitive damages award. As the Supreme Court restated in BMW,

17

the proper inquiry for considering the reasonableness of the ratio between compensatory and punitive damages is "'whether there is a reasonable relationship between the punitive damages and the harm likely to result from the defendant's conduct as well as the harm that actually occurred.'" 517 U.S. at 581 (quoting TXO Prod. Alliance Corp. v. Alliance Resources Corp., 509 U.S. 443, 460 (1993)). Further, the purpose of punitive damages is to punish a tortfeasor and deter future conduct, while not exceeding the boundaries of punishment. BMW, 517 U.S. at 568 (citations omitted). While the Court finds support for the punishment purpose of punitive damages in the record, the Court finds little support for the deterrence purpose. Plaintiffs suggest that deterrence is necessary, because Defendants' former Director of Purchasing, Mr. Hathorn, stated that he would set up the rebate program the same way in the future. However, the record also indicates that Mr. Hathorn is no longer employed with or has contact with Defendants. (Tr. 1375-1377). Moreover, there is nothing in the record to suggest that Defendants would be likely to engage in this conduct in the future, particularly in light of the jury's verdict in this case. Further, in the Court's view, a reduced punitive damages award would still serve a deterrent function while comporting more with the boundaries of punishment warranted by the conduct in this case. Accordingly, after weighing these considerations in light of the other BMW

18

guideposts, the Court concludes that it is appropriate to reduce the jury's punitive damages award.[1]

    3.    Whether the difference between the punitive damages award and the civil or criminal penalties imposed in comparable cases weighs in favor of the punitive damages award in this case

Lastly, with regard to the third BMW guidepost, the Court should consider the difference between the punitive damages award and the civil or criminal penalties authorized or imposed in comparable cases. As the parties point out, this factor is designed to determine whether reference to the possible civil or criminal penalties would put one on notice that particular conduct could result in an adverse monetary judgment in an amount approximating the punitive damages award. Plaintiffs direct the Court to the Massachusetts Commercial Bribery statute as the relevant criminal penalty to consider, and Defendants oppose Plaintiffs' reliance on that statute contending that there is no evidence indicating that the jury found a violation of that statute. However, even if the Court were to consider the penalty under the Massachusetts Commercial Bribery statute as the relevant gauge, the Court would conclude that the punitive

_____

[1]    In addition to the foregoing, the Court observes that there is scarce support in other cases for the size of the punitive damages award in this case. Plaintiffs direct the Court to Daka, Inc. v. Breiner, 711 A.2d 86, 100-101 (D.C. 1988), in which the Court upheld a punitive damages award that was 39 times the compensatory damages award. However, Daka is distinguishable from this case, because the plaintiff's injury was a physical injury and not solely an economic injury.

19

damages award in this case is not proportionate to the penalties
imposed by that statute.  A violation of the Massachusetts
Commercial Bribery statute carries a penalty of up to five years
in prison and/or up to a $10,000 fine.  Mass. Gen. Laws ch. 271 §
39(a).  In this case, the amount of punitive damages far exceeds
the maximum monetary fine under that statute.

On the other hand, however, Plaintiffs suffered over $11
million in damages as a result of Defendants' conduct, and
Defendants received over $68 million in fees from the Management
Contract.  Given the amounts of money involved and the nature of
Defendants' conduct, including their duties as Plaintiffs'
agents, the Court cannot conclude that Defendants lacked notice
that their questionable conduct could result in the imposition of
a substantial financial penalty.  Accordingly, after weighing the
competing considerations relevant to this factor in light of the
Court's analysis regarding the other BMW guideposts, the Court
concludes that it is appropriate to reduce the jury's punitive
damages award.

    4.  Summary

Given the circumstances of this case and weighing the
considerations relevant to the BMW guideposts, the Court
concludes that the guideposts weigh in favor of a punitive
damages award; however, the scale is not tipped so far in favor
of Plaintiffs that the Court can conclude that the size of the

jury's punitive damages award in this case is justifiable and/or
supportable.  Accordingly, while the Court will deny Defendants'
Motion insofar as it seeks a new trial, the Court will order a
remittitur of the jury's punitive damages award so that the award
is one and one-half times the amount of the relevant compensatory
damages awarded to Plaintiffs in this case.[2]

### III. Whether Defendants' Are Entitled To Judgment As A Matter Of Law On Plaintiffs' Claims Under Section 2(c) Of The Robinson-Patman Act Or A Remittitur Of The Jury's Damage Award Relating To Those Claims

Defendants next contend they are entitled to judgment as a
matter of law on Plaintiffs' claims under Section 2(c) of the
Robinson-Patman Act, because there is no evidence to support an
anti-trust injury.  Specifically, Defendants contend that
Plaintiffs did not prove by a preponderance of the evidence "that
payments from vendors to [Defendants] 'injured Plaintiffs by
virtue of the fact that Plaintiffs are in the same business or
are in competition with Sheraton.'"  (D.I. 352 at 10) (quoting
Final Jury Instructions at p. 22).  In the alternative,
Defendants request the Court to reduce the jury's damage award of
$750,000 to $250,000.

---

[2]    The amount of compensatory damages the Court will use
for this computation is the amount stated by Plaintiff to be the
"correct amount," i.e. $10.26 million (breach of agency), plus
$250,000 (purchasing activities), plus $1.1 million (common law
damages) for a total of $11.61 million.  (D.I. 357 at 15).
Plaintiffs did not use the amount for breach of workers'
compensation in their computation, and thus, the Court will not
consider that portion of the award for its calculation.

21

To establish a violation of the Robinson-Patman Act in this case, Plaintiffs were required to prove, by a preponderance of the evidence, that (1) Defendants received payments from vendors that constituted or were given in lieu of, commissions, brokerage or other compensation and not for services rendered in connection with a sale or purchase from a vendor; (2) such payment injured Plaintiffs by virtue of the fact that Plaintiffs are in the same business as or are in competition with Defendants; and (3) Defendants were acting as agents for Plaintiffs. Because Defendants' challenge relates solely to the second element of a Robinson-Patman claim, the Court will not discuss the remaining elements.

According to Defendants, Plaintiffs "suggested that they suffered a competitive injury because owners of managed hotels 'footed the bill for Sheraton's rebate scheme' and incurred higher purchasing costs than did Sheraton-owned hotels;" however, Plaintiffs failed to present evidence from which a reasonable jury could infer such an injury. (D.I. 352 at 11). After reviewing the record in the light most favorable to Plaintiffs, the Court disagrees with Defendants' argument and concludes that Plaintiffs presented sufficient evidence for a reasonable jury to conclude that the second element of Plaintiffs' Robinson-Patman claim was satisfied. For example, Plaintiffs presented the expert testimony of Donald Winter, suggesting that Plaintiffs and

other owners of hotels managed by Defendants were treated
differently than hotels owned by Defendants with whom they were
in competition. (Tr. 299-302, 1297-1298). Further, Plaintiffs
presented evidence that John Hancock and Sumitomo owned hotels
that were also in the "same business" as Defendants. (Tr. 140-
141). Because the Court concludes that Plaintiff presented
sufficient evidence from which a reasonable jury could conclude
that Plaintiffs were in the same business as or in competition
with Defendants, the Court concludes that Defendants are not
entitled to judgment as a matter of law regarding the jury's
verdict on Plaintiffs' Robinson-Patman claim.

    As for Defendants' argument that the jury's Robinson-Patman
award should be reduced, the Court likewise concludes that
Defendants are not entitled to relief. Defendants' argument
regarding a reduction of the jury's damage award is based upon an
alleged improper comment by Plaintiffs' counsel during his
closing argument. Specifically, Defendants contend that "[i]t
appears that the jury has already tripled the $250,000 amount,"
because Plaintiffs' counsel stated in closing argument, "In the
Antitrust Laws, in the Robinson-Patman Act, for example, if a
defendant is found guilty in a Robinson-Patman Act case, they
would triple damages." (D.I. 352 at 12) (citing Tr. 1550).
However, Defendants failed to object to counsel's statement at
any time during the trial, and therefore, the Court concludes

that Defendants waived their argument insofar as it is premised

on the closing remarks of Plaintiffs' counsel.[3]  See e.g. Brenner

v. Local 514, 927 F.2d 1283, 1298 (3d Cir. 1991).

**IV.    Whether The Jury's Award For Contractual Damages For Breach Of Contract For Purchasing Services And Workers' Compensation Are Supported By The Evidence**

By their Motion, Defendants contend that the jury's award of

$250,000 for Defendants' purchasing practices and $222,000 for

Defendants' worker's compensation program should be set aside

because, "Plaintiffs offered no evidence quantifying the alleged

impact of these programs on Plaintiffs' hotel." (D.I. 352 at

12). With regard to the workers' compensation program,

Defendants specifically contend that "the management contract

demonstrates that the purchasing of insurance was the owners'

responsibility and that the owner was free at any time to replace

[Defendants'] program with its own." (D.I. 352 at 12) (emphasis

in original). As for the jury's award based on Defendants'

purchasing practices, Defendants contend that this award should

be set aside because it is duplicative of the jury's Robinson-

Patman award.

After reviewing the record as it relates to this issue, the

---

[3]    In the alternative, even if the Court were to consider Defendants' argument, the Court would conclude that Defendants' are not entitled to a reduction of damages. The Court did not instruct the jury to treble damages, and thus, in the Court's view, Defendants' argument about the jury's reasoning in calculating the award is speculative.

Court concludes that Defendants are not entitled to relief, and that Plaintiffs presented sufficient evidence to support the jury's verdict. With regard to the workers' compensation program, Plaintiffs presented the expert testimony of Robert Patterson. Mr. Patterson testified at length about the way in which Defendants improperly profited through their workers' compensation program. In particular, Mr. Patterson testified that Defendants made certain accounting adjustments that yielded extra management fees for themselves in the amount of $115,000 for 1995 and $115,000 for 1996. Given that Plaintiffs presented evidence establishing approximately $230,000 in workers' compensation abuses, the Court cannot conclude that the jury's award of $222,000 on Plaintiffs' workers' compensation claim is unsupported by the evidence, or otherwise shocking, so as to justify granting Defendants' request for judgment as a matter of law, a new trial or a remittitur.

As for Defendants' argument that the jury's award for breach of contract arising from Defendants' purchasing services should be set aside as duplicative of the jury's Robinson-Patman award, the Court likewise rejects Defendants' argument. Defendants suggest that the fact that the Robinson-Patman award is triple the amount awarded by the jury for breach of contract for purchasing services means that the award is duplicative. In the Court's view, however, Defendants' argument is speculative, and

thus, insufficient to support an order setting aside the jury's $250,000 breach of contract award.

Moreover, the record in this case demonstrates that Plaintiffs breach of contract claim related to Defendants' purchasing activities was a separate claim from its Robinson-Patman claim, based on separate activity and requiring separate proof. (D.I. 298 at Section I, ¶ 8, Section II, ¶¶ 10, 11, 14, 17, 21, 22). Further, after reviewing the record, the Court concludes that Plaintiffs presented sufficient evidence to support the jury's verdict on their breach of contract claim. Plaintiffs presented evidence establishing that Defendants engaged in purchasing abuses, did not maintain adequate records of their purchasing program, took deliberate steps to conceal the details of their program, and ultimately received over $30 million in "rebates" over a six year period. Given Plaintiffs' evidence, the Court cannot conclude that the jury's award of $250,000 for breach of contract related to purchasing services was unsupported by the evidence or otherwise shocking or improper so as to warrant the relief Defendants request in their Motion. Accordingly, the Court will deny Defendants' Motion in so far as it seeks judgment as a matter of law, a new trial or a remittitur of the jury's damages awards for Plaintiffs' breach of contract claims based on worker's compensation and purchasing abuses by Defendants.

26

**CONCLUSION**

For the reasons discussed, Defendants Motion For Judgment As A Matter Of Law, Or In The Alternative, For A New Trial Or Amendment Of The Judgment (D.I. 352) will be granted insofar as it seeks a remittitur of the jury's punitive damages award, and will be denied in all other respects.

An appropriate Order will be entered.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

2660 WOODLEY ROAD JOINT          :
VENTURE, et al.,                 :
                                 :
          Plaintiffs and         :
          Counterclaim Defendants, :
                                 :
     v.                          :Civil Action No. 97-450-JJF
                                 :
ITT SHERATON CORPORATION,        :
et al.,                          :
                                 :
          Defendants and         :
          Counterclaim Plaintiffs. :

**O R D E R**

At Wilmington this 10 day of January 2002, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1.  Defendants' Motion For A Judgment As A Matter Of Law Or, In The Alternative, For A New Trial Or Amendment Of The Judgment (D.I. 352) is GRANTED insofar as it requests a remittitur of the jury's punitive damages award.

2.  The jury's punitive damages award will be reduced from $37,500,000 to $17,415,000, said sum reflecting one and one-half times the relevant compensatory damages award of $11.61 million.

3.  Defendants' Motion For A Judgment As A Matter Of Law Or, In The Alternative, For A New Trial Or Amendment Of The Judgment (D.I. 352) is DENIED in all other respects.

        JOSEPH J. FARNAN, JR.
        UNITED STATES DISTRICT JUDGE