# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON SHERATON CORPORATION, )<br><br>                   **Plaintiff,** )<br><br>**v.** )<br><br>2660 WOODLEY ROAD JOINT VENTURE, )<br><br>**and** )<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY )<br>(formerly known as John Hancock Mutual Life )<br>Insurance Company), )<br><br>              **Defendants.** )<br>_____ ) | **Case No. 1:05CV0971-HHK** |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JOHN HANCOCK LIFE INSURANCE COMPANY'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

**SCHEUERMANN & MENIST**

Jack Scheuermann
700 E. Street, S.E.
Washington, D.C. 20003
Telephone: 202-547-9180
Telecopier: 202-547-2050

September 2, 2005

**ATTORNEY FOR PLAINTIFF**

Of Counsel:
**BICKEL & BREWER**
William A. Brewer III
James S. Renard
767 Fifth Avenue
New York, New York 10153
Telephone: 212-489-1400
Telecopier: 212-489-2384

## TABLE OF CONTENTS

Table of Authorities ........................................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

A.    The Relationship Among The Parties ...................................................... 3

B.    The Partnership Sells The Hotel In 1999, But Continues Doing Business
      And Prosecuting The Delaware Action. ................................................... 4

C.    The Contractual Provisions Applicable To The Sale Of The Hotel ......................... 5

D.    Defendants' Right To Withhold From Distribution The Proceeds Of The Hotel
      Sale Pending The Winding Up And Final Liquidation Of The Partnership ........... 6

E.    The Partnership Continues Doing Business
      And Winding Up Its Affairs Into 2005 ..................................................... 7

F.    The Contractual Provisions Applicable To Final Distributions Upon
      The Winding Up And Liquidation Of The Partnership ............................ 8

G.    WSC Timely Filed This Action Based Upon Defendants' Failure To Make Final
      Distributions Following The Winding Up And Ultimate Liquidation Of The
      Partnership. ............................................................................................... 10

SUMMARY OF OPPOSITION ................................................................................... 11

ARGUMENTS AND AUTHORITIES ........................................................................ 12

A.    Standards And Burdens of Proof ............................................................ 12

B.    WSC's Claims Were Timely Asserted And, Therefore,
      Are Not Barred By Limitations ............................................................... 13

C.    WSC's Claims Arose After The Commencement Of The Delaware Action
      And, Thus, Are Not Barred By The Doctrine Of Res Judicata ................ 14

D.    WSC Has A Valid Claim For Fraud, And Any Pleading Deficiency
      With Respect Thereto Can Easily Be Cured By Amendment. ................. 18

REQUEST FOR RELIEF ............................................................................................ 20

TABLE OF AUTHORITIES

CASES

*AFGE v. Loy,*
    332 F. Supp. 2d 218 (D.D.C. 2004) ...................................................................................19

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) .......................................................................................................13

*Estate of Anthony Phillips v. District of Columbia,*
    355 F. Supp. 2d 212 (D.D.C. 2005) ...............................................................................13

*Beck v. Beck,*
    766 A.2d 482 (Del. 2001) ...............................................................................................15

*Beckman v. Farmer,*
    579 A.2d 618 (D.C. 1990) ..............................................................................................14

*Berg v. First American Bankshares, Inc.,*
    599 F. Supp. 500 (D.D.C. 1984) ...........................................................................11, 13,15

*Ciralsky v. CIA,*
    355 F.3d 661 (D.C. Cir. 2004) .......................................................................................20

*Computer Associates International, Inc. v. Altai, Inc.,*
    126 F.3d 365 (2d Cir. 1997) ...........................................................................................17

*Conley v. Gibson,*
    355 U.S. 41 (1957) .....................................................................................................19, 20

*Curtis v. Citibank, N.A.,*
    226 F.3d 133 (2d Cir. 2000) ...........................................................................................15

*Evans v. Chase Manhattan Mortgage Corp.,*
    Civil Action No. 04-2185 (RMC), 2005 U.S. Dist. LEXIS 3982
    (D.D.C. March 9, 2005) ..................................................................................................19

*Faulkner v. Government Employees Insurance Co.,*
    618 A.2d 181 (D.C. 1992) ..............................................................................................16

*Firestone v. Firestone,*
    76 F.3d 1205 (D.C. Cir. 1996) .......................................................................................20

*Kingman Park Civic Association v. Williams,*
    348 F.3d 1033 (D.C. Cir. 2003) ....................................................................... 19

*Legnani v. Alitalia,*
    400 F.3d 139 (2d Cir. 2005) ............................................................... 15, 17, 18

*Manning v. City of Auburn,*
    953 F.2d 1355 (11th Cir. 1992) ...................................................................... 17

*National R.R. Passenger Corp. v. Lexington Insurance Co.,*
    357 F. Supp. 2d 287 (D.D.C. 2005) ................................................................ 14

*North Assurance Co. of America v. Square D Co.,*
    201 F.3d 84 (2d Cir. 2000) ............................................................................. 16

*In re: Piper Aircraft Corp.,*
    244 F.3d 1289 (11th Cir. 2001) ...................................................................... 16

*Regan v. Grill Concepts-D.C., Inc.,*
    338 F. Supp. 2d 131 (D.D.C. 2004) ................................................................ 13

*Rosemann v. Roto-Die, Inc.,*
    276 F.3d 393 (8th Cir. 2002) .......................................................................... 16

*Semon v. Ledecky (In re United States Office Products Sec. Litigation),*
    326 F. Supp. 2d 68 (D.D.C. 2004) .................................................................. 19

*Simmons v. Abruzzo,*
    49 F.3d 83 (2nd Cir. 1995) ........................................................................ 19, 20

*Stone v. McConkey,*
    761 A.2d 276 (D.C. 2000) .............................................................................. 15

*Thoubboron v. Ford Motor Co.,*
    809 A.2d 1204 (D.C. 2002) ............................................................................ 15

*United States ex rel. Harris v. Bernad,*
    275 F. Supp. 2d 1 (D.D.C. 2003) ................................................................... 19

*United States ex rel. McCready v. Columbia/HCA Healthcare Corp.,*
    251 F. Supp. 2d 114 (D.D.C. 2003) ................................................................ 19

*Velikonja v. Ashcroft,*
    355 F. Supp. 2d 197 (D.D.C. 2005) ................................................................ 17

**STATUTES**

D.C. Code § 12-301(7)-(8)............................................................................................13

Fed. R. Civ. P. 7(a) ....................................................................................................12

Fed. R. Civ. P. 8(a)(2)................................................................................................19

Fed R. Civ. P. 9(b) ................................................................................................11, 12

Fed R. Civ. P. 56.........................................................................................................13

**MISCELLANEOUS**

2A Moore's Federal Practice ¶ 8.13, at 8-58 (2d ed. 1994) ...........................................19

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON SHERATON CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>2660 WOODLEY ROAD JOINT VENTURE,<br><br>and<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY<br>(formerly known as John Hancock Mutual Life<br>Insurance Company),<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 1:05CV0971-HHK |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT JOHN HANCOCK LIFE INSURANCE COMPANY'S MOTION TO
## DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Plaintiff Washington Sheraton Corporation files this Memorandum of Law in Opposition

to the Motion of Defendant John Hancock Life Insurance Company to Dismiss or, in the

Alternative, for Summary Judgment, as follows:

### I.

### PRELIMINARY STATEMENT

Plaintiff Washington Sheraton Corporation ("WSC") and defendant John Hancock Life

Insurance Company ("Hancock") are the two general partners in defendant 2660 Woodley Road

Joint Venture (the "Partnership"). At all material times, Hancock has served as the Managing

Partner of the Partnership. Although the Partnership is in dissolution, and apparently wound up

its affairs this year, neither the Partnership nor its Managing Partner has made a final distribution

to WSC pursuant to the Amended and Restated Joint Venture Agreement of the Partnership (the

1

"Agreement"), which governs the relationship among the parties. Defendants' failure to make that final distribution in connection with liquidating the Partnership and winding-up its affairs necessitated the filing of this suit. Although both defendants were properly served, only Hancock has appeared herein and has filed a motion to dismiss or, in the alternative, for summary judgment.

Hancock's motion improperly collapses two separate and distinct obligations – namely: (1) the conditional obligation to make a partial distribution of net proceeds, if any, following the sale of the Partnership's real property (the "Hotel"); and (2) the absolute obligation to make a full and final distribution to all partners following the completion of the dissolution-related winding-up process and liquidation of the Partnership. Regardless of whether it made a partial distribution soon after the sale of the Hotel in 1999 (or was obligated to make such a distribution, but failed to do so), the Partnership is presently obligated to make a final distribution to the Partners (including WSC) now that it has apparently wound up its affairs and ceased any ongoing business activity. The Partnership did not complete the winding-up of its affairs until *this year* – and WSC initiated this action just forty-five (45) days later. In sum, this action was timely filed, and WSC's claims have merit. Accordingly, Hancock's motion should be denied and WSC should be entitled to prosecute and present its claims for relief.

## II.

## STATEMENT OF FACTS

As an initial matter, many of the statements of purported "fact" set forth in the four-plus page section of Hancock's memorandum of law entitled "The Facts" are unaccompanied by any citation to admissible evidence and are otherwise unsupported by the record. To the extent that Hancock relies upon those factual allegations in connection with its request that WSC's Complaint be dismissed pursuant to Rules 12(b)(6) and/or 56 of the Federal Rules of Civil

Procedure, WSC objects to and moves to strike those unsubstantiated allegations. Subject to that objection, WSC sets forth below the facts and/or genuine issues of disputed fact which necessitate the denial of Hancock's motion.

## A.    The Relationship Among The Parties

WSC is a General Partner in the Partnership and holds a one percent (1%) interest therein.[1] At all times pertinent hereto, Hancock was the other General Partner of the Partnership, holding a 99% interest.[2] Hancock does not dispute the fact that WSC, throughout the period applicable to this suit, was – and remains – a General Partner in the Partnership. In addition, at all material times, Hancock served as the Managing Partner of the Partnership.[3]

---

[1] *See* Agreement, attached to the Declaration of William E. Wallace III, dated June 22, 2005 (the "Wallace Declaration"), at 1, 9, and Exhibit 1 thereto. *See also* Complaint at 1-2 ("Plaintiff owns a 1% interest in that Partnership,"); and at 3, ¶ 9 ("Pursuant to the Partnership Agreement, the partnership interests in the joint venture were . . . 1% owned by Sheraton."). *See also* Memorandum in Support of Defendant John Hancock Life Insurance Company's Motion to Dismiss or in the Alternative for Summary Judgment, dated June 22, 2005 ("Hancock's Memorandum"), at 4 ("In 1979, a joint venture was formed between John Hancock and a Sheraton subsidiary, WSC, for the express purpose of owning and operating the Hotel. The original joint venture was formed in 1979 between John Hancock and WSC, sharing ownership equally. In 1985, John Hancock purchased an additional 49% interest in the joint venture from WSC . . . and the name 2660 Woodley Road Joint Venture was adopted.").

[2] *See* Complaint at 1 ("Defendant John Hancock Mutual Life Insurance Company is the Managing Partner and 99% owner of Defendant 2660 Woodley Road Joint Venture"); and at 3, ¶ 9 ("[A]t all relevant times, Hancock owned a 99% interest in the Partnership."). *See also* Hancock's Memorandum at 4, n.4 ("The JV Agreement was amended on June 12, 1990 by John Hancock, WSC, and Sumitomo Life Realty, Inc. ('Sumitomo') for the purpose of admitting Sumitomo into the Venture . . . John Hancock purchased Sumitomo's interest in the Joint Venture in 1997, and once again became a 99% owner of the partnership.").

[3] *See* Agreement at 8, § 1.01 (defining "Managing Partner" as Hancock or any successor thereto). *See also* Complaint at 4, ¶ 12 ("Pursuant to Section 6.01 of the Partnership Agreement, Hancock is the Managing Partner of the Partnership, and has 'the authority, discretion, obligation and responsibility to manage and control the affairs of the Partnership to the best of its ability and use its reasonable best efforts to carry out the Business of the Partnership.'").

The relationship among the parties is governed by the Agreement, dated June 12, 1990,[4] as amended.[5]  It is that Agreement that forms the basis of WSC's breach of contract claims in this action.

**B.     The Partnership Sells The Hotel In 1999, But Continues Doing Business And Prosecuting The Delaware Action.**

On or about January 15, 1999, the Partnership sold its Hotel (the Sheraton Washington Hotel, located at 2660 Woodley Road in Washington, D.C.) to a third-party for approximately $206 million.[6]  No portion of the net proceeds, if any, from that sale were distributed to WSC at that time.[7]

Nevertheless, the Partnership continued to do business, including, but not limited to, the continued pursuit and prosecution of its claims, and the defense of certain counterclaims, in an action then-pending in the United States District Court for the District of Delaware, entitled "*2660 Woodley Road Joint Venture, et al. v. ITT Sheraton Corporation, et al.*," Civil Action No.

---

[4] *See* Exhibit "B" to the Wallace Declaration.

[5] Although Hancock fails to mention it, the Agreement was subsequently amended *twice* – once (the First Amendment) on January 1, 1992, and again (the Second Amendment) on January 1, 1993. Hancock submitted neither amendment in connection with its motion.

[6] *See* Complaint at 5, ¶ 17; *see also* Hancock's Memorandum at 5 ("The Hotel was then sold in January 1999").

[7] *See* Complaint at 5, ¶ 18; *see also* Declaration of Alan Schnaid, dated September 1, 2005 (the "Schnaid Declaration"), submitted by WSC in connection with this Response, at 2-3, ¶ 7 ("It is my understanding that the Partnership's principal asset, the former Sheraton Washington Hotel located at 2660 Woodley Road in Washington, D.C. (the 'Hotel'), was sold by the Partnership to a third-party in 1999.  Although no distributions were made at that time to WSC (or, to my knowledge, to any other Partner of the Partnership), I and other representatives of WSC believed that WSC's fair share of the net proceeds of that sale would ultimately be distributed upon the winding up of the Partnership's affairs.").

97-450-JJF (the "Delaware Action").[8]  In fact, the Delaware Action did not come to a conclusion

until March of this year.[9]

**C.    The Contractual Provisions Applicable To The Sale Of The Hotel**

Pursuant to Section 1.01 of the Agreement, a "Capital Transaction" is defined to include,

among other events, the "sale . . . or other disposition of all or substantially all of the Partnership

Assets."[10]  Thus, the sale of the Hotel in January of 1999 constituted a "Capital Transaction."

Pursuant to Section 5.03 of the Agreement, the "Net Proceeds of a Capital Transaction

shall be distributed to the Partners pro rata in proportion to their respective Percentage

Interests."[11]  "Net Proceeds of a Capital Transaction" is defined in Section 1.01 as the "proceeds

received by the Partnership in connection with a Capital Transaction" less a number of items,

---

[8] *See* Schnaid Declaration at 2, ¶ 5 ("I and other representatives of WSC believed that the Partnership continued to exist through at least March 1, 2005, when the United States District Court for the District of Delaware (Farnan, J.) entered a final judgment in . . . the Delaware Action, following an appeal to the United States Court of Appeals for the Third Circuit and the Third Circuit's disposition thereof and remand to the district court.").  *See also* Exhibits "A," "C," "D," "E," "F," "G," "H," "I," "K," and "L" to the Wallace Declaration.

On October 25, 1999, WSC, one of a number of "Counterclaim Plaintiffs" in the Delaware Action, sought leave of the Delaware District Court to amend its "counterclaims" therein to assert a claim that arose *after* the commencement of that lawsuit by the Partnership and Hancock – namely, the sale of the Hotel in 1999 and the subsequent failure by the Partnership and its Managing Partner to make any interim, partial distributions of the sales proceeds therefrom.  *See* Exhibits "K" and "L" to the Wallace Declaration.  Although the Delaware District Court denied WSC leave to assert that claim in the Delaware Action, it is clear that the sale-related claim was not part of the "transaction" on which the Delaware Action was initially based.

[9] *See* Exhibit "A" to the Wallace Declaration. *See also* Section II.E., *infra*.

[10] *See* Agreement at 4, § 1.01.

[11] *Id.* at 23, § 5.03.

including, but not limited to, "the retention of such proceeds or a portion of such proceeds for a reserve established . . . for contingencies and anticipated cash disbursements."[12]

**D.    Defendants' Right To Withhold From Distribution The Proceeds Of The Hotel Sale Pending The Winding Up And Final Liquidation Of The Partnership**

Among other contingent liabilities existing after its sale of the Hotel in January of 1999, the Partnership faced a counterclaim by Sheraton Operating Corporation in the Delaware Action for wrongful termination of the Hotel's management contract, pursuant to which the former manager sought damages in excess of $100 million.[13]  In fact, WSC's counsel in the Delaware Action acknowledged in 1999 the right of the Partnership and its Managing Partner, Hancock, to withhold from the proceeds of the sale of the Hotel "an appropriate reserve."[14]  Although WSC asserted that it was "unreasonable for John Hancock to not have made at least a partial distribution of the sales proceeds" in 1999,[15] and "that John Hancock [was] attempting to 'stall' the distribution of WSC's funds pending the outcome of the [Delaware] litigation,"[16] it nevertheless put Hancock on notice that "[a]t such time as distribution is made, we will, of course, along with a complete accounting, expect interest on our partnership share from the date of the closing."[17]  The latter was in response to a letter from Hancock informing WSC that there

---

[12] *Id.* at 8, § 1.01.

[13] *See* Exhibit "L" to the Wallace Declaration, at 39, ¶¶ 111-112.

[14] *See* Exhibit "F" to the Wallace Declaration, Letter from John S. Kinzey to William E. Wallace, dated September 24, 1999, attached as Exhibit B to the Affidavit of John S. Kinzey in Support of Motion to Supplement Counterclaims, dated October 25, 1999 (the "Kinzey Affidavit").

[15] *See* Exhibit "F" to the Wallace Declaration, Letter from James D. Latham to Malcolm Pittman, dated September 14, 1999, attached as Exhibit A to the Kinzey Affidavit.

[16] *See* Exhibit "F" to the Wallace Declaration, Letter from John S. Kinzey to William E. Wallace, dated September 24, 1999, attached as Exhibit B to the Kinzey Affidavit.

were a "number of reasons" why a distribution and accounting had not been forthcoming at that time.[18]

## E.    The Partnership Continues Doing Business And Winding Up Its Affairs Into 2005

Clearly, substantial discretion rested in Hancock, as the Managing Partner of the Partnership, to withhold distribution of the proceeds from the sale of the Hotel pending the winding up of the Partnership's affairs – which included the resolution of the multi-year Delaware Action.[19]  Given Hancock's apparent power to withhold up to the full amount of the proceeds from the sale of the Hotel for a reserve and other purposes, it was not previously possible to determine with any certainty whether WSC was entitled to a distribution of Net Proceeds of a Capital Transaction following that sale.

Indeed, the Partnership and Hancock continued to prosecute their claims in the Delaware Action following the sale of the Hotel in January of 1999, and the final, post-appeal judgment of the Delaware Action was not entered until March 1, 2005[20] – a mere forty-five (45) days prior to WSC's commencement of this action.[21]  Of course, any and all excuses for withholding from

---

[17] *See* Exhibit "J" to the Wallace Declaration.

[18] *Id.*

[19] *See* Schnaid Declaration at 3, ¶ 7 ("We believed that the Partnership retained the net proceeds following that sale as a discretionary holdback, reserve, or contingency fund pending the completion of the Partnership's remaining business activities – which included the prosecution of its claims and the defense of certain counterclaims in the Delaware Action.").

[20] *See* Exhibit "A" to the Wallace Declaration.

[21] WSC filed its Complaint in this action on April 15, 2005.

distribution the Partnership's reserves, its other liquid assets, or the proceeds of the sale of its remaining property ended upon the final resolution of the Delaware Action.[22]

**F.    The Contractual Provisions Applicable To Final Distributions Upon The Winding Up And Liquidation Of The Partnership**

Article X of the Agreement governs matters relating to the dissolution of the Partnership.[23] Section 10.01 sets forth seven separate events which trigger the dissolution of the Partnership.[24] The provision applicable here, Section 10.01(A)(3), states that the Partnership shall be dissolved upon the "sale or other disposition of all or substantially all of the Partnership Assets and the collection by the Partnership *and* distribution to the Partners of all proceeds from such sale."[25] It is important to note the conjunctive nature of the foregoing provision. Dissolution does not occur until the occurrence of both of the following: (1) the sale of substantially all of the Partnership's assets; and (2) the collection and *distribution* of the proceeds of such sale. WSC was never notified of any distribution of such proceeds and, of equal importance, Hancock neither alleges nor attempts to prove that any distributions were made.

Assuming, however, that there was some partial distribution of the "Net Proceeds from a Capital Transaction" (*i.e.*, the Partnership's sale of the Hotel in 1999) to parties other than WSC, thus commencing a dissolution, that does not end the inquiry. Section 10.02 of the Agreement

---

[22] *See* Schnaid Declaration at 3, ¶ 7 ("[W]e expected that the Managing Partner would fulfill its obligations and that a final distribution would be made upon the conclusion of the Delaware Action. When no such distributions were made, WSC filed its complaint and commenced this action on April 15, 2005 – a mere forty-five (45) days following the District Court's entry of final judgment in the Delaware Action.")

[23] *See* Agreement at 48-50, Art. X.

[24] *See* Agreement at 49-50, § 10.01.

[25] *See* Agreement at 48-49, § 10.01(A)(3) (emphasis added).

imposes certain obligations upon the Partnership and its Managing Partner upon the dissolution of the Partnership. Specifically, Section 10.02(A) provides:

> Upon the dissolution of the Partnership pursuant to the provisions of <u>Section 10.01</u>, the Partnership shall immediately commence to wind up its affairs and the Managing Partner shall be proceed with reasonable promptness to liquidate the business of the Partnership. The Partnership Assets shall either be (i) distributed in kind in the manner set forth in <u>Section 5.04</u> or (ii) liquidated, with the Net Proceeds from a Capital Transaction applied in the manner set forth in <u>Section 5.04</u> by the later of (y) the last day of the Fiscal Year in which liquidation occurs, or (z) ninety (90) days after the date of liquidation.[26]

It is important that Section 10.02(A) be appropriately analyzed, because Hancock misconstrues how it operates. The obligations set forth in that provision to "wind up" the Partnership's affairs and "liquidate the business of the Partnership" arise when the Partnership goes into dissolution pursuant to Section 10.01. Thus, <u>if</u> the Partnership dissolved as a result of the sale of its Hotel in 1999 (which is a disputed question of fact), then Hancock, as the Managing Partner, had duties to wind up the affairs of the Partnership. Those duties included the obligation to liquidate the business of the Partnership by: (a) distributing its remaining assets, or a portion thereof, in kind (such as any net proceeds from the former sale of the Hotel that were deposited into Partnership accounts during the pendency of the Delaware Action); and/or (2) selling any remaining non-cash assets and distributing the proceeds thereof. In any event, the time periods set forth in Section 10.02(A) relating to the liquidation of the Partnership apply to the <u>final</u>, <u>post-dissolution</u> liquidation and distribution of the Partnership's assets – and <u>not</u> to the prior sale that precipitated the dissolution in the first place. Section 10.02(D) sets forth the circumstances under which the Partnership shall terminate, and it imposes certain obligations upon the Partnership and the Managing Partner with respect thereto:

---

[26] *See* Agreement at 49, § 10.02(A).

> The Partnership shall terminate when all Partnership Assets shall have been disposed of (except for any liquid assets not so disposed of), and the net proceeds therefrom, as well as any other liquid assets of the Partnership, shall, after payment of or due provision for all liabilities to creditors of the Partnership have been distributed to the Partners.  Upon the dissolution of the Partnership, the Accountants shall promptly prepare, and the Managing Partner shall furnish to each Partner upon receipt, a statement setting forth the assets and liabilities of the Partnership.  Promptly following the complete liquidation and distribution of the Partnership Assets, the Accountants shall prepare, and the Managing Partner shall furnish to each Partner upon receipt, a statement showing the manner in which the Partnership Assets were liquidated and distributed.[27]

Unfortunately, as demonstrated below, WSC has not received its final distribution as required by subsections (A) and (D) of Section 10.02 of the Agreement.

**G.    WSC Timely Filed This Action Based Upon Defendants' Failure To Make Final Distributions Following The Winding Up And Ultimate Liquidation Of The Partnership.**

The business activities of the Partnership came to an end *this year* with the conclusion of the Delaware Action and the collection of the monetary award set forth in the final, post-appeal judgment entered therein.  Thus, the Partnership was still in the process of winding up its affairs just a few months ago.  Accordingly, WSC's cause of action relating to defendants' failure to distribute to WSC its proportionate share of the Partnership's liquid assets and the net proceeds from the sale of the Partnership's other property did not accrue until 2005.  This action was, therefore, timely filed.

In sum, there is a substantial and legally-significant difference between:  (1) an alleged failure on the part of the Partnership and Hancock to comply with Section 5.03 of the Agreement relating to the *pro rata* distribution to Partners of the Net Proceeds of a Capital Transaction, subject to hold-backs for reserve in an amount established within the discretion of the Managing Partner; and (2) a failure on the part of the Partnership and Hancock to comply with the

---

[27] *See* Agreement at 50, § 10.02(D).

10

provisions of Article X of the Agreement relating to full and final distributions to Partners in accordance with their proportionate interest in the Partnership upon the completion of the winding up of the Partnership's affairs and the liquidation of the Partnership's remaining assets.[28] WSC's contractual and common law claims with respect to the latter did not arise until 2005.

## III.

## SUMMARY OF OPPOSITION

Hancock asserts three arguments in support of its motion to dismiss or, in the alternative, for summary judgment (the "Motion"): (1) WSC's claims are barred by limitations;[29] (2) WSC's claims are barred by the doctrine of *res judicata*;[30] and (3) WSC failed to plead its fraud claim with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.[31]    As demonstrated herein, each of those arguments is without merit.

First, assuming that the Partnership dissolved in 1999 (which is a disputed issue of fact in light of the conjunctive language of Section 10.01(A)(3) of the Agreement), the Managing Partner did not complete the process of winding up and liquidating the Partnership until *this year* – thus making WSC's commencement of this action timely in all respects.  Whatever obligation that may have been imposed upon defendants to make a partial distribution of the net proceeds, if any, from the sale of the Partnership's Hotel in 1999, a separate and distinct obligation arose

---

[28] *See* Schnaid Declaration at 3, ¶ 8 ("WSC initiated the present action in order to cause the Partnership and its Managing Partner, Hancock, to make a final distribution to WSC in an amount to which it is entitled.").

[29] *See* Hancock's Memorandum at 9-12.

[30] *Id*. at 12-17.

[31] *Id*. at 17-20.

upon the winding up of the Partnership's affairs in 2005 to make full and final distributions to all Partners, including WSC. Because Defendants failed to honor that obligation, WSC initiated this action. Simply put, WSC's claims are <u>not</u> barred by limitations.

Second, WSC's claims arose long after the initiation of the Delaware Action by the Partnership and Hancock and, thus, were neither compulsory counterclaims therein[32] nor claims arising out of the same underlying "transaction" on which that case was commenced (*i.e.*, the alleged mismanagement of the Hotel occurring prior <u>to</u> the termination of its manager and the subsequent sale of that property in January of 1999). Contrary to Hancock's representations to the Court, claim preclusion does <u>not</u> apply under such circumstances.

Finally, WSC has a valid claim for fraud against Hancock. In the event that the Court determines that such claim has not been sufficiently stated pursuant to Fed R. Civ. P. 9(b), WSC respectfully requests leave to file an amended complaint, which will cure any alleged pleading deficiency. For all of these reasons, WSC respectfully requests that Hancock's Motion be denied.

## IV.

## ARGUMENTS AND AUTHORITIES

### A.    Standards And Burdens of Proof

Hancock's Motion to dismiss is based on Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7(a) of the Local Rules. With respect to a 12(b)(6) motion:

> The Court will not grant a motion to dismiss . . . pursuant to Federal Rule of Civil Procedure 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Accordingly, when ruling on a motion to dismiss, the Court accepts as true all of the

---

[32] Indeed, WSC was not even a defendant in the Delaware Action but, instead, was a "counterclaim plaintiff" – *i.e.*, a party that was added to the litigation for the purpose of asserting claims back against the plaintiffs in that suit, the Partnership and Hancock.

complaint's factual allegations. Plaintiff is entitled to the benefit of all inferences that can be derived from the facts alleged.[33]

In the alternative, Hancock asks for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. On a summary judgment motion:

> A party is entitled to summary judgment if the pleadings and evidence show that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. In reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party.[34]

On both motions, the burden rests with the moving party.[35]

**B.    WSC's Claims Were Timely Asserted And, Therefore, Are Not Barred By Limitations.**

Hancock's first argument—that this action is barred by the statute of limitations—is misguided for one simple reason: The Managing Partner did not complete the process of winding up the Partnership until 2005 and, thus, final distributions became due just this year. Indeed, WSC commenced this suit a mere 45 days after March 1, 2005 – the date on which final judgment was rendered in the Delaware Action. Therefore, the claims are well within the District of Columbia's three-year statute of limitations for breach of contract, breach of fiduciary duty, and fraud.[36]

---

[33] *Estate of Anthony Phillips v. District of Columbia*, 355 F. Supp. 2d 212, 216 (D.D.C. 2005).

[34] *Regan v. Grill Concepts-D.C., Inc.*, 338 F. Supp. 2d 131, 133 (D.D.C. 2004).

[35] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (stating that the moving party has the burden of proving summary judgment); *Berg v. First American Bankshares, Inc.*, 599 F. Supp. 500, 503 (D.D.C. 1984) ("In a motion to dismiss pursuant to Rule 12(b)(6), the moving party bears a heavy burden of persuasion.").

[36] The parties agree that District of Columbia law regarding the statute of limitations applies. *See* Hancock Memorandum, at 9-12. The statute of limitations for breach of contract, breach of fiduciary duty, and fraud claims in the District of Columbia is three years. *See* D.C. Code § 12-301(7)-(8) (stating that the statute of limitations for contract, breach of fiduciary duty, and fraud claims is three years).

13

As a general rule, breach of contract actions accrue when the contract is first breached.[37] In addition, pursuant to the law of the District of Columbia, breach of fiduciary duty claims are not actionable "unless injury accrues to the beneficiary or the fiduciary profits thereby."[38] Here, WSC asserts contractual and common law claims against the Partnership and Hancock based on defendants' failure to make distributions to the Partners following the six-year long winding up process following the sale of the Hotel in 1999.[39] Because defendants did not wind up the Partnership's business and affairs until this year, WSC's claims were timely asserted.

**C.** **WSC's Claims Arose After The Commencement Of The Delaware Action And, Thus, Are Not Barred By The Doctrine Of Res Judicata.**

WSC's attempt to supplement its counterclaims in the Delaware Action to add a cause of action based on the failure of the Partnership and Hancock to make a partial distribution to Partners following the sale of the Hotel, and the Delaware Court's denial thereof, has no res judicata effect in this case for at least three reasons: (1) the denial of WSC's leave to supplement its counterclaims was not clearly dismissed with prejudice; (2) WSC was not obligated to appeal the denial of its motion for leave to supplement its counterclaims, because the new claim WSC sought to add to the Delaware Action was based on events that occurred after the initial lawsuit

---

[37] *See Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F. Supp. 2d 287, 294 (D.D.C. 2005) ("General principles of contract law dictate that a plaintiff's right of action normally accrues when the contract is first breached.") (internal quotations and citations omitted).

[38] *Beckman v. Farmer*, 579 A.2d 618, 651 (D.C. 1990) (internal citations and quotations omitted).

[39] In the event the Court determines that the Complaint is not sufficiently clear with respect to the nature of WSC's claims, or requires greater detail as to the allegations of fact, WSC will amend its pleading in accordance with whatever timetable the Court deems appropriate.

was filed; and (3) WSC did not attempt to assert a clam for final (*i.e.*, post-wind up) distributions in 1999, because that claim did not even exist at that time (indeed, it arose in 2005).

First, a dismissal without prejudice has no res judicata effect.[40]  If there is any ambiguity as to whether a dismissal was with or without prejudice, the burden of proof rests with the party seeking dismissal of the later action on res judicata grounds.[41]  Here, as Hancock candidly admits, it was unclear whether WSC's attempt to supplement its counterclaims with a claim for a partial distribution of the Hotel sale proceeds was denied with or without prejudice.[42] Accordingly, Hancock has not carried its burden to show, at the very least, that the denial was with prejudice.

Second, for purposes of claim preclusion analysis, the "crucial date is the date the complaint was filed."[43]  The doctrine of res judicata, or claim preclusion, holds that a "plaintiff must bring all claims at once against the same defendant relating to the same transaction or

---

[40] *See Beck v. Beck*, 766 A.2d 482, 483 (Del. 2001) ("We find that the Family Court dismissed the petition without prejudice and that a subsequent petition on the same cause of action is therefore not barred by res judicata."); *Thoubboron v. Ford Motor Co.*, 809 A.2d 1204, 1210 (D.C. 2002) ("While a voluntary dismissal *with* prejudice constitutes a complete adjudication of the matter and precludes further action between the parties based on the principle of *res judicata*, a dismissal without prejudice renders the proceedings a nullity and leaves the parties as if the action had never been brought.  Thus, a dismissal without prejudice has no *res judicata* effect.") (internal quotations and citations omitted); *Stone v. McConkey*, 761 A.2d 276, 277 (D.C. 2000). ("If the dismissal was without prejudice, that is an indication that the judgment was not on the merits, and thus does not have a res judicata effect.") (internal quotations and citations omitted).

[41] *See Stone*, 761 A.2d at 277 ("[W]e suspect that if the issue is pursued on remand, the precise nature of the Maryland dismissal is readily ascertainable by the parties with a little legwork. The burden of proof is with [the party seeking dismissal on res judicata grounds].").

[42] *See* Hancock Memorandum, at 5.

[43] *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000); *Legnani v. Alitalia*, 400 F.3d 139, 141 (2d Cir. 2005).

event."[44]  Courts have consistently held that events that had yet to occur at the time the initial

suit was filed are unrelated transactions and cannot be precluded by res judicata principles.[45]

Indeed, as the Second Circuit has held, it is of no consequence that a party does not appeal a

denial of a leave to amend if the claims forming the basis of the amendment arose after the initial

lawsuit was commenced:

> In 1995, Legnani filed an action under Title VII and New York City Human
> Rights Law against her employer . . . .  In 1998, with the 1995 action pending,
> Alitalia fired Legnani. Legnani sought leave to amend her 1995 complaint to add
> a retaliatory discharge claim based on this event. The district court denied
> Legnani's request, and Legnani did not appeal the ruling after the court went on to
> award judgment to Alitalia regarding the claims raised in her 1995 complaint.
> Instead, she brought the retaliatory discharge claim in a complaint filed in
> December 1999. . . .
>
> On remand, Alitalia moved for summary judgment, arguing that Legnani's
> retaliatory discharge claim was barred by the doctrine of res judicata. The district
> court agreed, reasoning that Legnani failed to avail herself of an opportunity to
> bring the retaliatory discharge claim in her first action by not contesting on appeal
> the earlier ruling on her motion to add the discharge claim.

---

[44] *See North Assurance Co. of Am. v. Square D Co.*, 201 F.3d 84, 88 (2d Cir. 2000).

[45] *See Rosemann v. Roto-Die, Inc.*, 276 F.3d 393, 397 (8th Cir. 2002) ("One obvious reason why these claims are not part of a single cause of action is that . . . res judicata does not bar claims that did not arise until after the first suit was filed."); *In re: Piper Aircraft Corp.*, 244 F.3d 1289, 1298 (11th Cir. 2001) ("We cannot say that, simply because the commencement of the Chapter 11 proceeding ultimately spawned Kaiser's suit against Teledyne, that suit arises out of a common nucleus of operative fact. Indeed, Teledyne's "but for" argument is at odds with this Circuit's frequent pronouncement that res judicata does not apply where the facts giving rise to the second case only arise after the original pleading is filed in the earlier litigation.") (internal quotations and citations omitted); *Faulkner v. Gov't Employees Ins. Co.*, 618 A.2d 181, 183-84 (D.C. 1992) ("At the time that appellant filed his first action against GEICO, his insurance policy had not yet been terminated. It was not until two and one-half years into the first lawsuit that the policy was terminated. The trial court ruled that appellant should have amended his complaint in his  first action against GEICO in order to include the wrongful cancellation claim once that claim arose, and that failure to do so bars appellant from litigating that claim in a separate action against GEICO. *Res judicata* bars only claims arising out of the same cause of action, however. The action of GEICO for which appellant seeks redress, the cancellation of appellant's insurance policy, occurred five and one-half years after the automobile accident. We cannot agree with the trial court that the events giving rise to the first lawsuit, and the events that occurred five and one-half years later, involve the same 'factual nucleus.'").

Here, res judicata does not bar Legnani's retaliatory discharge action. As a matter of logic, when the second action concerns a transaction occurring after the commencement of the prior litigation, claim preclusion generally does not come into play. Claims arising subsequent to a prior action need not, and often perhaps could not, have been brought in that prior action; accordingly, they are not barred by res judicata regardless of whether they are premised on facts representing a continuance of the same course of conduct. The crucial date is the date the complaint was filed. When Legnani filed her 1995 action, she had not yet been discharged from Alitalia. She could not have brought the retaliatory discharge action at that time and, accordingly, she was free to bring her retaliatory discharge claim in this subsequent action.

Legnani's failed attempt to add the retaliatory discharge claim to her first action is without consequence.[46]

---

[46] *Legnani v. Alitalia Linee Aeree*, 400 F.3d 139, 140-41 (2d Cir. 2005). In *Legani*, the Second Circuit also state that under certain exceptions—namely if a dismissal of a leave to amend is on the merits—res judicata may apply. *See Legani*, 400 F.3d at 142 n.2. But the court also specifically states that this exception will not apply if a leave to amend is denied without explanation, because a dismissal cannot be on the merits if there is no discussion. *See id.* As noted earlier and as Hancock concedes, Judge Farnan dismissed WSC's leave to amend its counterclaims without discussion. *See* Hancock Memorandum, at 5; Exhibit "C" to the Wallace Declaration. It is also worth noting that it is widely accepted that if a claim arises after the original claim was filed, a party is under no obligation to amend his/her complaint to include the new claims because s/he can always pursue those claims later. *See id.* at 84 n.4 (stating that "[w]hile it might be true that appellant *could* have made a motion to amend his complaint to include the wrongful cancellation claim," appellant is not "*required* to make such a motion at the risk of having later litigation on the claim barred by *res judicata*" if claims are not based on the same cause of action); *see also Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369-70 (2d Cir 1997) ("For the purposes of res judicata, the scope of litigation is framed by the complaint at the time it is filed. The res judicata doctrine does not apply to new rights acquired during the action which might have been, but which were not, litigated. Although a plaintiff may seek leave to file a supplemental pleading to assert a new claim based on actionable conduct which the defendant engaged in after a lawsuit is commenced, he is not required to do so. Altai was under no obligation to amend its complaint in the United States action, and res judicata does not bar litigation of claims arising from transactions which occurred after the United States action was brought.") (internal quotations and citations omitted); *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992) ("[W]e do not believe that the res judicata preclusion of claims that "could have been brought" in earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation. Instead, we believe that, for res judicata purposes, claims that "could have been brought" are claims in existence at the time the original complaint is filed or claims actually asserted by supplemental pleadings or otherwise in the earlier action. Our decision avoids the potentially unworkable requirement that every claim arising prior to entry of a final decree must be brought into the pending litigation or lost."); *Velikonja v. Ashcroft*, 355 F.

Hancock's authority for the proposition that failing to appeal a leave to amend has res judicata effects—*EFCO Corp. v. U.W. Marx, Inc.*[47]— is inapposite because "the precluded action in *EFCO* did not involve any event[] arising after the filing of the complaint that formed the basis of the first lawsuit."[48] Here, as demonstrated above, WSC's claim for a partial distribution of the Hotel sale proceeds arose <u>after</u> the commencement of the Delaware Action, and even after the filing of the WSC's initial counterclaims.[49]  Therefore, the denial of the leave to amend and the subsequent choice not to appeal that denial does not bar WSC's present claims.

<u>Third</u>, as demonstrated above, WSC's claim here is for a *final* distribution following the completion of the winding up of the Partnership's business and affairs.  In 1999, when WSC sought leave to assert a claim against the Partnership and Hancock for a partial distribution relating to the sale of the Hotel, the Partnership had just begun the winding up process – that ultimately took six years to finish.  Simply put, WSC did not even have a claim for final distributions in 1999, thus barring any application of the doctrine of res judicata here.

**D.    WSC Has A Valid Claim For Fraud, And Any Pleading Deficiency With Respect Thereto Can Easily Be Cured By Amendment.**

In order to adequately plead fraud, it is only necessary for the plaintiff to provide a plain statement of the claim showing that it is entitled to relief and giving the defendant fair notice of

---

Supp. 2d 197, 204 (D.D.C. 2005) (stating that "plaintiff does not need to amend her complaint to add claims post-dating the filing of her complaint").

[47] 124 F.3d 394 (2d Cir. 1997)

[48] *Legnani*, 400 F.3d at 142 (internal quotations and citations omitted and alterations in the original).

[49] The Partnership and Hancock commenced the Delaware Action on August 1, 1997, and WSC filed its original counterclaims on September 19, 1997.  *See* Exhibit "K" to the Wallace Declaration, at 2.

18

the claim and the grounds upon which it rests.[50]  The plaintiff is not required to plead all the

elements of his *prima facia* case, or to match each of the elements with law or fact.[51]    In the

instant case, Plaintiff has set forth the scheme employed by defendant as well as the falsehoods it

expounded, thus pleading its fraud claim with sufficient particularity.[52]  Further, Plaintiff has

more than satisfied the purpose of the pleading standard, which is to give the defendant fair

notice in order to prepare for trial and for the application of res judicata.[53]    Consequently,

Plaintiff's fraud claim has been pleaded with sufficient particularity and is not subject to

dismissal.

---

[50] *See AFGE v. Loy*, 332 F. Supp. 2d 218, 227 (D.D.C. 2004) ("To survive a motion to dismiss, a complaint need only provide 'a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'") (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)); *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing Fed. R. Civ. P. 8(a)(2)); *Semon v. Ledecky (In re United States Office Prods. Sec. Litig.)*, 326 F. Supp. 2d 68, 74 (D.D.C. 2004) ("Rule 9(b)'s particularity requirement does not abrogate Rule 8's general requirements that a pleading contain a short and plain statement of the claim, and that each averment be simple, concise, and direct . . . alleging all of the requisite elements for the cause of action invoked.").

[51] *Evans v. Chase Manhattan Mortgage Corp.*, 04-CV-2185, 2005 U.S. Dist. LEXIS 3982, at \*7 (D.D.C. March 9, 2005) ("It is not necessary for the plaintiff to plead all elements of his *prima facia* case, or 'plead law or match facts to every element of a legal theory.'") (quoting *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000)) (internal citation omitted).

[52] *See United States ex rel. Harris v. Bernad*, 275 F. Supp. 2d 1, 8 (D.D.C. 2003) (stating that motion to dismiss  failure to plead with particularity will be denied where "[t]he plaintiff alleged the specific scheme and its 'falsehoods,'" explaining "that Rule 9(b) does not require a detailed description of each and every false claim when the fraud takes place over many years.") (internal citations omitted).

[53] *See United States ex rel. McCready v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 114, 116 (D.D.C. 2003) ("The main purpose of Rule 9(b) is to ensure that defendants have adequate notice of the charges against them to prepare a defense."); *see also   Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("'The function of pleadings under the Federal Rules is to give fair notice of the claim asserted. Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.'") (quoting 2A MOORE'S FEDERAL PRACTICE P 8.13, at 8-58 (2d ed. 1994)).

Even if the Court were to find that Plaintiff failed to plead its fraud claim with particularity, such a finding does not justify dismissal with prejudice.[54]  Rather the Court should grant leave to amend.[55]   In fact, dismissal of a claim for failure to plead with particularity without granting leave to amend is considered an abuse of discretion.[56]

## V.

## REQUEST FOR RELIEF

In light of the foregoing, WSC respectfully requests that this Court deny Hancock's Motion or, in the alternative, grant WSC leave to file an amended pleading to cure any alleged deficiency in its present Complaint.

---

[54] *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) ("Failure to plead fraud with particularity likewise does not support a dismissal with prejudice. To the contrary, leave to amend is 'almost always' allowed to cure deficiencies in pleading fraud.").

[55] *See Ciralsky v. CIA*, 355 F.3d 661, 670-71 (D.C. Cir. 2004) (stating that rather than dismiss a complaint that fails to comply with Rule 8(a), courts should give leave to amend, especially when the complaint states an intelligible claim that is not frivolous on its face); *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995) ("[T]he complaint's allegations must of course be taken as true, and the 'complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)).

[56] *See Ciralsky v. CIA*, 355 F.3d 661, 670-71 (D.C. Cir. 2004) ("[I]t will generally be an abuse of discretion to deny leave to amend when dismissing a nonfrivolous original complaint on the sole ground that it does not constitute the short and plain statement required by Rule 8.") (internal quotation omitted).

Respectfully submitted,

SCHEUERMAN & MENIST

By:

John E. Scheuermann, 185470
700 E. Street, S.E.
Washington, D.C. 20003
Telephone: 202-547-9180
Telecopier: 202-547-2050
ATTORNEY FOR PLAINTIFF

Of Counsel:

BICKEL & BREWER

William A. Brewer III
James S. Renard
767 Fifth Avenue
New York, New York 10153
Telephone: 212-489-1400
Telecopier: 212-489-2384

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Opposition was this 2nd day of September, 2005 mailed by first class mail, U.S. postage pre-paid to William E. Wallace, III, Esquire, and to Jonathan Cyril Poling, Esquire, MILBANK, TWEED, HADLEY AND McCLOY, LLP, 1825 Eye Street, N.W., Suite 1100, Washington, D.C. 20006

John E. Scheuermann

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WASHINGTON SHERATON CORPORATION, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Case No. 1:05CV0971-HHK |
|  | ) |
| 2660 WOODLEY ROAD JOINT VENTURE, | ) |
|  | ) |
| and | ) |
|  | ) |
| JOHN HANCOCK LIFE INSURANCE COMPANY | ) |
| (formerly known as John Hancock Mutual Life | ) |
| Insurance Company), | ) |
|  | ) |
| Defendants. | ) |

## DECLARATION OF ALAN M. SCHNAID

1.     My name is Alan M. Schnaid. I am fully competent and qualified in all respects to make this Declaration. The facts set forth herein are true and correct and, unless otherwise qualified, are within my personal knowledge.

2.     I reside in Scottsdale, Arizona. I am Senior Vice President and Corporate Controller of Starwood Hotels & Resorts Worldwide, Inc. ("Starwood"). Starwood is the parent company of Washington Sheraton Corporation ("WSC"), plaintiff in the above-captioned action.

3.     WSC is, and at least since 1990 has been, a partner in 2660 Woodley Road Joint Venture, a District of Columbia general partnership (the "Partnership"), one of the defendants in the above-captioned action. I am one of the persons responsible for WSC's investment in the Partnership.

4.      Neither I nor, to my knowledge, any other representative of WSC or its parent company, Starwood, have ever been notified by the Partnership or its Managing Partner, defendant John Hancock Life Insurance Company ("Hancock"), either that the Partnership has terminated, that all of the Partnership's assets have been liquidated and the proceeds thereof distributed, or that the Partnership has completed its winding up process following its dissolution.

5.      Indeed, I and other representatives of WSC believed that the Partnership continued to exist through at least March 1, 2005, when the United States District Court for the District of Delaware (Farnan, J.) entered a final judgment in Civil Action No. 97-450-JJF, entitled "*2660 Woodley Road Joint Venture, et al. v. ITT Sheraton Corporation, et al.*" (the "Delaware Action"), following an appeal to the United States Court of Appeals for the Third Circuit and the Third Circuit's disposition thereof and remand to the District Court. In fact, we continued to receive Partnership tax returns on an annual basis into 2004.

6.      To my knowledge, however, the Partnership has had no ongoing business affairs or activities since the conclusion of the Delaware Action and the entry of final judgment therein. Neither I nor, to my knowledge, any other representative of WSC has received any communication from the Partnership or its Managing Partner, Hancock, relating to the Partnership since the conclusion of the Delaware Action. Nor have we received any financial statements or distributions since the completion of that litigation.

7.      It is my understanding that the Partnership's principal asset, the former Sheraton Washington Hotel located at 2660 Woodley Road in Washington, D.C. (the "Hotel"), was sold by the Partnership to a third-party in 1999. Although no distributions were made at that time to WSC (or, to my knowledge, to any other partner of the Partnership), I and other representatives

2

of WSC believed that WSC's fair share of the net proceeds of that sale would ultimately be distributed upon the winding up of the Partnership's affairs. We believed that the Partnership retained the net proceeds following that sale as a discretionary holdback, reserve, or contingency fund pending the completion of the Partnership's remaining business activities – which included the prosecution of its claims and the defense of certain counterclaims in the Delaware Action. Nevertheless, we expected that the Managing Partner of the Partnership would fulfill its obligations and that a final distribution would be made upon the conclusion of the Delaware Action. When no such distributions were made, WSC filed its complaint and commenced this action on April 15, 2005 – a mere forty-five (45) days following the District Court's entry of final judgment in the Delaware Action.

8.     WSC initiated the present action in order to cause the Partnership and its Managing Partner, Hancock, to make a final distribution to WSC in an amount to which it is entitled.

9.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on September __1__, 2005.

_____
ALAN M. SCHNAID

5084435.01
1643-36

3

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON SHERATON CORPORATION,<br><br>       **Plaintiff,**<br><br>v.<br><br>2660 WOODLEY ROAD JOINT VENTURE,<br><br>and<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY<br>(formerly known as John Hancock Mutual Life<br>Insurance Company),<br><br>       **Defendants.** | )<br>)<br>)<br>)<br>)<br>) **Case No. 1:05CV0971-HHK**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

  Upon consideration on the _____ day of _____, 2005, of Defendant John Hancock Life Insurance Company's Motion to Dismiss or in the Alternative for Summary Judgment and Plaintiff Washington Sheraton Corporation's Opposition thereto, the Motion is hereby DENIED.

_____
United States District Judge

Copies to:

Jack Scheuermann
SCHEUERMANN & MENIST
700 E. Street, S.E.
Washington, D.C. 20003
Telephone: 202-547-9180
Telecopier: 202-547-2050

William E. Wallace
Jonathan C. Poling
MILBANK, TWEED, HADLEY
 & McCLOY LLP
1825 Eye Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone: 202-835-7511
Telecopier: 202-263-7511