UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON SHERATON CORPORATION, )<br><br>Plaintiff, )<br><br>v. )<br><br>2660 WOODLEY ROAD JOINT VENTURE, )<br><br>and, )<br><br>JOHN HANCOCK LIFE INSURANCE )<br>COMPANY (formerly known as John Hancock )<br>Mutual Life Insurance Company), )<br><br>Defendants. ) | Case No. 1:05CV0971-HHK |

MEMORANDUM OF LAW IN REPLY TO PLAINTIFF WASHINGTON SHERATON
CORPORATION'S OPPOSITION TO DEFENDANT JOHN HANCOCK LIFE
INSURANCE COMPANY'S MOTION TO DISMISS
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

William E. Wallace III  (DC Bar No. 298000)
Jonathan C. Poling (DC Bar No. 489459)
MILBANK TWEED HADLEY & McCLOY
1825 Eye Street, N.W., Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile:  (202) 835-7586

September 16, 2005                    *Counsel for John Hancock Life Ins. Co.*

## <u>TABLE OF CONTENTS</u>

ARGUMENT ......................................................................................................... 2

    A.    Standards And Burdens Of Proof ........................................................... 7

    B.    WSC's Claims Are Untimely And, Therefore, Barred By The
           Statute Of Limitations............................................................................ 8

    C.    WSC's Claims Are Barred By Res Judicata ...................................... 11

    D.    WSC's Fraud Claim Is Not Plead With Particularity ......................... 13

CONCLUSION.................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*AFGE v. Loy*, 332 F. Supp. 2d 218, 227 (D.D.C. 2004) ..................................... 15

*Estate of Anthony Philips v. District of Columbia,* 355 F. Supp. 2d 212, 216 (D.D.C. 2005) ............................................................................................................. 7

*Khouzman v. Ashcroft,* 361 F.3d 161, 167(2d Cir. 2004) .................................... 12

*Kowal v. MCI Communications, Inc.* 16 F.3d 1271, 1276 (D.C. Cir. 1994). ..................... 7

*Legnani v. Alitalia Linee Aeree*, 400 F.3d 139 (2d Cir. 2005) ......................... 13

*Manning v. Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992) ............................ 13

*National City Lines v. LLC Corp., 687 F.2d 1122, 1124 (8th Cir. 1982)*......................... 12

*Regan v. Grill Concepts-D.C., Inc.* 338 F. Supp. 2d 131, 133 (D.D.C. 2004). ................. 7

*Semon v. Ledecky,* 326 F. Supp 2d 68, 74 (D.D.C. 2004) ................................. 15

*United States ex rel. Harris v. Bernad*, 275 F.Supp. 2d 1, 8, (D.D.C. 2003) ................... 14

**<u>Statues</u>**

Fed R. App. P. 42(b) .......................................................................................... 12

Fed R. Civ. P. 9(b) ............................................................................................. 15

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON SHERATON CORPORATION,   ) | |
|       ) | |
|     Plaintiff,    ) | |
|       ) | |
|     v.     ) | |
|       ) | |
| 2660 WOODLEY ROAD JOINT VENTURE,   ) | Case No. 1:05CV0971-HHK |
|       ) | |
|     and,    ) | |
|       ) | |
| JOHN HANCOCK LIFE INSURANCE   ) | |
| COMPANY (formerly known as John Hancock   ) | |
| Mutual Life Insurance Company),   ) | |
|       ) | |
|     Defendants.   ) | |

MEMORANDUM IN SUPPORT OF DEFENDANT JOHN
HANCOCK LIFE INSURANCE COMPANY'S MOTION TO
DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Defendant John Hancock Life Insurance Company ("Hancock") submits this Memorandum in Reply to Plaintiff Washington Sheraton Corporation's ("WSC") Opposition to Hancock's Motion to Dismiss WSC's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7(a) of the Local Rules of the District Court for the District of Columbia, or in the Alternative for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## ARGUMENT

The entirety of WSC's opposition to Hancock's motion to dismiss necessitates a relaxing break from reality while the parties and the Court accept WSC's invitation to take a leisurely stroll through Lewis Carroll's famed looking glass – where all of WSC's positions and statements for the last six years suddenly are reformed to mean exactly the opposite of what they meant before being confronted with Hancock's dispositive motion to dismiss.  For example, in the world that has governed WSC for the six years before its Opposition Memorandum was filed, Sheraton and the world would readily acknowledge that (i) WSC intervened in *Hancock Sheraton Litigation I;* (ii) sought leave to assert a claim for its 1% share of the Sheraton Washington Hotel (the "Hotel") sale proceeds; (iii) the District Court for the District of Delaware denied the request; (iv) WSC noticed an appeal to the Third Circuit, but later decided to abandon its appeal and (v) WSC's appeal was dismissed pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure ("FRAP").  Compare that to the fictional world of WSC's Opposition Memorandum where WSC makes statements like:  "[T]he denial of the leave to amend **and the subsequent choice not to appeal that denial** does not bar WSC's present claims."  Opposition Memorandum, at 8.  WSC asserted the claim at issue in *Hancock Sheraton Litigation I* – **and it took an appeal to the Third Circuit.**  The fact that it later decided – wisely – to dismiss the appeal does not give WSC license to represent to this court that **no appeal was taken.**[1]

---

[1]    This might be very entertaining if we were reading a Harry Potter novel, but it is not.  It is a brief submitted to a federal district court judge and litigants are generally expected not to mislead the Court.

2

Likewise, there is no mistaking that, after six years, WSC is now

attempting to assert here the exact same claim it asserted, and then abandoned, in 1999.

In its Opposition Memorandum, WSC once again takes passage through the looking glass

to argue that its 1999 claims in *Hancock Sheraton Litigation I* are somehow different

from its 2005 claims in *Hancock Sheraton Litigation II*.  But, the cold reality is that the

two claims are one and the same.

| WSC's Counterclaim in 1999 *Hancock Sheraton Litigation I* | WSC's Complaint in 2005 *Hancock Sheraton Litigation II* |
|---|---|
| The sale price of the Hotel is believed to be in excess of two hundred million dollars. WSC, as holder of a 1% interest in the Joint Venture, is entitled to its share of the proceeds from the sale of the Hotel. . . . To date John Hancock has wrongfully withheld WSC's share of the proceeds from the sale of the Hotel, believed to be in excess of two million dollars. Declaration of William E. Wallace III dated June 22, 2005 ("Wallace Declaration"), at 2 and Exhibit K, thereto, at 3. | On or about January 15, 1999, the Partnership sold the Sheraton Washington Hotel ... for approximately $206,000,000 ... Defendants are wrongfully withholding from [WSC] *any* Sale-related or other distributions from the Partnership's ownership, management and sale of the Washington Sheraton Hotel. [WSC] is entitled to a pro rata distribution representing its interest in the Partnership, including, but not limited to its portion of the Sale proceeds, which, upon information and belief, was approximately $2 million at the time of the Sale. Complaint at ¶ ¶ 17-19. |

In 1999, WSC asserted that it was owed approximately $2 million by

Hancock at that time and cast the dispute as one for the proceeds from the sale of the

Hotel.[2]  In 2005, WSC seeks the same $2 million from Hancock.  To suddenly argue that

---

[2]    In a letter from WSC's counsel, William A. Brewer III to Hancock's counsel, William E. Wallace III, dated February 11, 2005, WSC admits that the "Partnership disposed of substantially all of its assets when it sold the Sheraton Washington Hotel for approximately $202,487,981" and at the time of the sale, WSC claims "the portion of the Sale, proceeds attributable to [WSC], in accordance with [WSC's] one percent interest in the Partnership, was $2,024,880." Declaration of Jonathan C. Poling dated September 16, 2005 ("Poling Declaration"), at 2 and Exhibit A, thereto, at 1.  WSC argues, however, that "it has not received *any* Sale-related distributions from

the claim is different because it is now suing for a distribution of profits rather than for

the proceeds of the sale of the Hotel is utter non-sense. The only claim that WSC has

ever had to the sale proceeds was as a distribution claim under the Partnership agreement.

That was the case in 1999 and it is the case in 2005.

WSC's imaginative, if not amusing position in September 2005

concerning the relationship between WSC's claim to the sale proceeds on the one hand

and the *Hancock Sheraton Litigation I* on the other needs to be contrasted to its position

over the preceding six years to see yet another example of morphing of reality. Today,

WSC seeks to avoid application of the statute of limitations by arguing that Hancock

properly withheld distribution of the 1% sale proceeds until the final judgment in

*Hancock Sheraton Litigation I* because the distribution of the 1% and the claims in

*Hancock Sheraton Litigation I* are related. Compare that with WSC's staunch portion to

the contrary, first articulated in 1999:

> Sheraton does not regard its right to be paid its 1% percent (sic) interest in
> the sale proceeds as being in any way related to the pending litigation in
> [*Hancock Sheraton Litigation II*] …**Sheraton will aggressively resist any
> effort by John Hancock to join these two matters.**

Wallace Declaration, at 2 and Exhibit F, at 3 (emphasis added).

Presumably, what WSC intended to say in 1999 is it would aggressively

resist any effort to join these two matters unless it becomes necessary to avoid a dismissal

of its claims on statute of limitations grounds, in which case, it reserves the right to assert

the exact opposite.

---

the Partnership or the Managing Partner". Now, WSC suggests that WSC "believed that the
Partnership retained the net proceeds following the sale as a discretionary holdback, reserve or
contingency fund . . . ." Schnaid Declaration, at ¶7.

In 2005, counsel for WSC says the claim for the sale proceeds was completely unrelated to the other claims being asserted in *Hancock Sheraton Litigation I,* but to Chief Judge Farnan, counsel for WSC argued the claim "is so related to the claims . . . [in *Hancock Sheraton Litigation I*] that the parties would benefit from having these claims all tied in a single action." Wallace Declaration, at 2 and Exhibit K. *Compare* Opposition Memorandum, at 5, fn. 8 *to* Wallace Declaration, at 2 and Exhibit K. Relying on Rule 13 of the Federal Rules of Civil Procedure, WSC argued the claims are "closely related" and should be tried together. That apparently was then and this is now, because now, the claims are completely unrelated. *Id.*

One last example: WSC now says Hancock was correct to withhold the sale proceeds until all the appeals in *Hancock Sheraton Litigation I* had run because there was the possibility that Hancock and the Partnership would be liable for the $100 million wrongful termination claim that Sheraton asserted against Hancock and the Partnership. Opposition Memorandum, at 6. It was only a 45 days ago, WSC fanaticizes, that the Partnership was no longer at risk, and therefore, it was only 45 days ago that WSC could legitimately make a claim for the 1% sale proceeds. This tale is so far in outer space it's hard to know where to begin. First, WSC never made a claim against the Partnership for the sale proceeds. The claim was made against Hancock. Second, and what WSC failed to disclose in its brief is that the jury **rejected** Sheraton's wrongful termination claim in 1999, judgment was entered in favor of Hancock on that claim in 1999 and **no appeal was pursued from the jury verdict** on the wrongful termination claim. There was never any "risk" to the Partnership as a result of Sheraton's fanciful $100 million wrongful

termination claim and whatever risk there was terminated in 1999 when the jury rejected the claim – more than six years before the WSC's Complaint was filed.

Moreover, WSC has been arguing for a partial distribution of proceeds from the sale of the Hotel ***and*** a full and final accounting of Partnership profits since 1999. In October 11, 1999, the General Counsel of Starwood Hotels and Resorts Worldwide, Inc. James D. Latham wrote to Hancock's General Counsel, Malcolm Pittman III and asked for a "***final*** *accounting of the* ***joint venture***"— not a partial distribution of net proceeds of the Hotel. Wallace Declaration, at 2 and Exhibit J (emphasis added). In the same letter, Mr. Latham complains of an alleged nine month delay then in "*making* [a] ***final distribution***" – not a partial distribution of net proceeds of the Hotel. *Id.* (emphasis added). In 1999, Mr. Latham even argued that the purported failure by Hancock to provide ***a full and final*** accounting and distribution of all profits relating to the Partnership constituted "a breach of the Managing Partner's fiduciary obligation to its other partner"—the very same accusations WSC now makes in its Complaint, but six years ago. *Id.* (emphasis added).

WSC's Opposition Memorandum is a mockery. The single fact of the matter is that WSC asserted six years ago the claims being advanced here. The trial court rejected the claim and an appeal was filed. WSC decided to dismiss the appeal and the issue became final. To pretend that no appeal was taken or to advance meaningless distinctions about partial distributions versus full distributions does not alter the results. The Complaint should be dismissed and Hancock awarded costs and attorneys' fees for having to defend WSC's patently frivolous Complaint.

A.    **Standards And Burdens Of Proof**

WSC notes that with respect to a motion to dismiss under Rule 12(b)(6) a "plaintiff is entitled to the benefit of all inferences that can be derived from the facts alleged." Opposition Memorandum, at 13 (quoting *Estate of Anthony Philips v. District of Columbia,* 355 F. Supp. 2d 212, 216 (D.D.C. 2005). WSC, however, conveniently omits the other material aspects of the standard and burden of proof. Regarding inferences, the District of Columbia Circuit has clearly stated that a "court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications, Inc.* 16 F.3d 1271, 1276 (D.C. Cir. 1994). WSC also only notes part of the standard courts must apply when deciding a motion for summary judgment under Rule 56. WSC quotes part of this standard as articulated in *Regan v. Grill Concepts-D.C., Inc.* 338 F. Supp. 2d 131, 133 (D.D.C. 2004). *See* Opposition Memorandum at 13. The rest of the standard immediately follows WSC's block quote from *Regan*:

> However, the nonmoving party must present more than a "scintilla of evidence" and must come forward with specific facts that would enable a reasonable jury to find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)*; Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the evidence presented by the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

*Regan v. Grill Concepts-D.C., Inc.* 338 F. Supp. 2d 131, 133 (D.D.C. 2004).

Here, the nonmoving party, WSC, had not advanced any evidence to defeat a motion for summary judgment. WSC relies entirely on evidence submitted by

7

Hancock and fails to submit a single piece of *additional* documentary evidence in opposition. WSC submitted one declaration based on "personal knowledge" from Alan Schnaid.[3] The Declaration of Alan M. Schnaid, however, is of no evidentiary value. Mr. Schnaid testifies to the unremarkable facts that to his personal knowledge, he i) has not been notified of any termination of the Partnership (Schnaid Declaration, at ¶ 4); ii) believed the Partnership was in existence throughout *Hancock Sheraton Litigation I*; (Schnaid Declaration, at ¶ 5); iii) has not received any communications from the Partnership since the conclusion of *Hancock Sheraton Litigation I*; (Schnaid Declaration, at ¶ 6) and; iv) thought Hancock would make a final distribution upon the conclusion of *Hancock Sheraton Litigation I*. Schnaid Declaration, at ¶ 7.

### B.    WSC's Claims Are Untimely And, Therefore, Barred By The Statute Of Limitations

WSC's argument that its claims are not barred by the applicable statutes of limitations is based on a total misrepresentation of the pertinent law. WSC asserts that its claims are timely for "one simple reason":

> The Managing Partner did not complete the process of winding up the Partnership until 2005 and, thus, final distributions became due just <u>this year</u>. Indeed, WSC commenced this suit a mere 45 days after March 1, 2005—the date on which final judgment was rendered in the Delaware action.

---

[3]    It is not clear what forms basis of the personal knowledge of the irrelevant facts to which Mr. Schnaid testifies. Mr. Schnaid is a Senior Vice-President at Starwood Hotels & Resorts Worldwide, Inc., which is simply the parent company to WSC. *See* Schnaid Declaration, at ¶ 2. It is unclear how he has any personal knowledge of WSC since he admits to only being "responsible for WSC's investment in the Partnership" back in 1990. *See* Schnaid Declaration, ¶ 3. Nowhere in Mr. Schanid's Declaration does he state what his role was or is at WSC, if any.

Opposition Memorandum at 13 (emphasis in original). Indeed, throughout its Opposition Memorandum, WSC continually alludes to the March 1, 2005 entry of judgment after appeal as the relevant date from which its claims came to fruition. Opposition Memorandum, at 5. ("In fact, the Delaware Action did not come to a conclusion until March of this year."). But this isn't what is said to the Judge in *Hancock Sheraton Litigation I* and it is not what it has been saying to Hancock since 1999.

In September 1999, WSC was aware that its claims existed (and were not related to *Hancock Sheraton Litigation I*). On September 14, 1999, James. D. Latham, Senior Vice-President & General Counsel of Starwood Hotels & Resorts Worldwide, Inc. and counsel to the WSC wrote Malcolm Pittman, counsel to Hancock:

> Sheraton does not regard its right to be paid its 1% percent (sic) interest in the sale proceeds as being in any way related to the pending litigation between 2660 Woodley Road Joint Venture, et al and ITT Sheraton Corporation arising from certain operations issues at the hotel. Sheraton will aggressively resist any effort to join these two matters.

Latham to Pittman, September 14, 1999,Wallace Declaration, at 2 and Exhibit F, at 3.

WSC's outside litigation counsel took the same position when he stated:

> [I]t has now been over six months since the former Washington Sheraton Hotel was sold ... Under the joint venture agreement, the sale of the hotel triggered the dissolution of the joint venture partnership, which in turn obligated John Hancock, as managing partner, promptly to wind up the affairs of the partnership and distribute the net proceeds of the sale to the partners... John Hancock has had more than enough time to wind up the joint venture. To the extent that John Hancock is attempting to "stall" the distribution of WSC's funds pending the outcome of the litigation, you have done a very good job of educating me as to Chief Judge Farnan's opinion of this sort of "self help".

Kinzey to Wallace, September 24, 1999, Wallace Declaration, at 2 and Exhibit F, at 4.

WSC repeats:

The closing occurred on January 15, 1999 and a nine month delay in making final distribution – or even a partial distribution – is unreasonable and a breach of the Managing Partner's fiduciary obligation to its other partner.

Latham to Pittman dated October 11, 1999, Wallace Declaration, at 2, Exhibit J

In its filings in the *Hancock Sheraton Litigation I*, WSC states that

[S]ale or other disposition of all or substantially all of the joint venture's assest is an event of dissolution under section 10.01(3) of the Joint venture Agreement. The Hotel constituted all or substantially all of the Joint Venture's assets. ... Hancock must distribute the assets of the joint venture to the Partners...The sale of the Hotel occurred over seven months ago and despite Washington Sheraton's repeated demands, John Hancock has failed to distribute any of the proceeds from the sale of the Hotel ... Hancock has breached its contractual obligations .... To distribute ... the net assets of the Joint Venture to Washington Sheraton following the sale of the Hotel.

As recently as February 7, 2005, counsel for WSC, Mr. Brewer admitted

in a letter to Hancock:

*[G]iven that the Sale [of the Hotel] triggered a dissolution of the Partnership* pursuant to the applicable provisions of the Agreement, the Partnership was obligated to *immediately commence to wind up its affairs* and the Managing Partner became obligated to liquidate the business of the Partnership. Nevertheless, [WSC] has not received *any* liquidation-related distributions.

Poling Declaration at 2, Exhibit A at 1 (emphasis added).

For six years WSC has stood staunchly on the position that Hancock had a

duty to distribute proceeds of the Partnership in 1999. Without the slightest appearance

of embarrassment, WSC in 2005 reverses position 180-degrees and now argues Hancock

had no duty to wind up its affairs and had no duty to distribute anything until a "mere

forty-five days prior to WSC's commencement of this action". Opposition Memorandum,

10

at 7. In WSC's Opposition Memorandum, WSC contends:

> The business activities of the Partnership came to and end *this year* with
> the conclusion of the Delaware Action and the collection of the monetary
> award set forth in the final, post appeal judgment entered therein. Thus,
> the Partnership was still in the process of winding up its affairs just a few
> months ago. Accordingly, WSC's cause of action relating to defendants'
> failure to distribute to WSC its proportionate share of the Partnership's
> liquid assets and net proceeds from the sale of the Partnership's other
> property did not accrue until 2005.

Opposition Memorandum, at 10. (emphasis in original).

WSC admits that "breach of contract actions accrue when the contact is
first breached". Opposition Memorandum, at 14. The breach, by WSC's own
admissions ad nauseum, first occurred in 1999. WSC's claim is clearly time-barred.

### C.    WSC's Claims Are Barred By Res Judicata

WSC's argument why res judicata does not apply is confusing at best and
a deliberate misrepresentation of the applicable law at worst. In both cases it is wrong.
WSC appears to argue that res judicata cannot apply here because its claim for the sale
proceeds was not sufficiently related to the claims in *Hancock Sheraton Litigation I* to
bring them under the rule requiring compulsory assertion. Opposition Memorandum, at
12. This legal proposition is, however, completely irrelevant. Whether WSC was
required to assert the claim is neither here nor there. It did assert the claim in *Hancock
Sheraton Litigation I*. What's more, it noticed an appeal to the Third Circuit and then
dismissed its appeal. Whatever the impact might have been of Chief Judge Farnan's
denial of the motion to supplement the counterclaims to include the 1% claim and his
simultaneous severance of all of WSC's counterclaims from the main trial – there is and
can be no dispute that the issue was finally resolved with prejudice when WSC noticed its

11

appeal and then later dismissed its appeal *See, e.g., National City Lines v. LLC Corp.,* 687
F.2d 1122, 1124 (8th Cir. 1982)("On August 2, 1982, National City Lines (National) and
LLC Corporation (LLC), pursuant to Fed R. App. P. 42(b), filed a stipulation of dismissal
of the appeals initiated by LLC. We hereby dismiss with prejudice appeals numbered 81-
2044, 81-2193 and 82-1212 in accordance with the stipulation of dismissal.") (emphasis
added); *Khouzman v. Ashcroft,* 361 F.3d 161, 167 (2nd Cir. 2004) (In refusing to grant a
voluntary dismissal, the Court noted "[a]lthough the parties are free to agree to a
dismissal on their own, FRAP 42(b) does not mandate that an appellate court issue an
order simply because the parties agree to it. Action by the court is not a subject that the
parties may negotiate among themselves, and a judicial act, such as a dismissal of a
petition, ***is normally taken only when the appellate court determines that such action is
warranted on the merits***.").[4]

> WSC argues that the filing date of the Complaint is the key point for the
Court to examine and contends that courts will not preclude claims that "had yet to occur
at the time the initial suit was filed." Opposition Memorandum, at 16. Courts, however,
also preclude claims that have been raised after the filing of the initial suit, if as here,
they were actually raised in supplemental pleadings. The Eleventh Circuit, for example,
has held:

---

[4]    WSC attempts to mislead the court when it states "the denial of the leave to amend and
the subsequent choice not to appeal that denial does not bar WSC's present claims". WSC did
appeal the decision of the denial of the leave to amend and the Third Circuit dismissed the appeal
pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure. See Wallace Declaration, at 2
and Exhibit I (dismissing "Washington Sheraton Corporation, as an Appellant pursuant to 42(b)
FRAP".)

> We do not believe that the res judicata preclusion of claims that "could
> have been brought" in earlier litigation includes claims which arise after
> the original pleading is filed in the earlier litigation. Instead, we believe
> that, for res judicata purposes, claims that "could have been brought" are
> claims in existence at the time the original complaint is filed or claims
> *actually* asserted by supplemental pleadings or otherwise in the earlier
> action.

*Manning v. Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992) (emphasis in original).

Hancock concedes that res judicata does not compel WSC to have supplemented its

counterclaim in *Hancock Sheraton Litigation I* to seek relief for the purported

withholding of money by Hancock relating to the sale of the Hotel, but WSC did move to

supplement its counterclaims. Having raised its claims in a motion to amend its

counterclaims, the Court severed them and WSC appealed the Court's Order to the Third

Circuit. WSC then withdrew its appeal and never raised its claims again—until now.

In defense, WSC relies upon *Legnani v. Alitalia Linee Aeree*, 400 F.3d 139 (2d

Cir. 2005). In *Legnani* plaintiff sought leave to amend her 1995 complaint to add a

retaliatory discharge claim based on an event that post-dated the complaint. The district

court, however, denied Legnani's request and Legnani did not appeal the ruling after the

district court went on to award judgment to Alitalia regarding the claims raised in her

1995 complaint. There, the district court was reversed by the Second Circuit because the

district court had held that there was an obligation on the part of Legnani to appeal the

earlier ruling on her motion to add the discharged claim. Unlike the facts in *Legnani,*

Hancock does not contend that res judicata required WSC to appeal its ruling.

### D.    WSC's Fraud Claim Is Not Plead With Particularity

WSC does not attempt to argue how its fraud allegations meet the required

elements of Rule 9(b)'s particularity standards. Not once does WSC argue how its fraud

allegations in its Complaint inform Hancock of 1) the time, place and contents of the alleged fraud; 2) the identity or identities of anyone at Hancock who purportedly made fraudulent representations to WSC; or 3) the method by which the alleged fraudulent misrepresentations were communicated to WSC. *See* Motion to Dismiss, at 17-18. Quoting *United States ex rel. Harris v. Bernad*, 275 F.Supp. 2d 1, 8, (D.D.C. 2003), WSC also suggests that "a detailed description of each and every false claim when the fraud takes place over many years" is not necessary. Opposition Memorandum, at 19 n.52. *Bernad* was a prosecution under the False Claims Act, not a simple breach of contract claim that is also dressed up as a fraud claim. Even there, however, where the Court relaxed the standards because of the complexity of the fraudulent transactions, a level of complexity that is certainly not alleged by WSC or possible since this suit is merely between two parties, the Government provided a number of specifics about the false representations that were made:

> Describing the content of the false representations, the government explains the defendants' scheme to falsify claims or submit claims based on false records by creating fee tickets that only allowed CPT codes at Level III or higher and by upcoding. Compl. ¶¶ 21-25. The government further proffers that evidence in 12 patient files indicates a discrepancy between the reported treatment and the actual treatment administered by the defendants. *Id.* ¶ 25. These 12 files adequately provide the specificity required in complex fraud cases, even if these patients' cases are only exemplary.

*United States ex rel. Harris v. Bernad*, 275 F. Supp. 2d 1, 8 (D.D.C. 2003). WSC cannot and does not point to a single paragraph in its Complaint that comes close to the type of specificity that the Government provided in its Complaint in *Bernad*.

Instead of arguing that its allegations satisfy the Federal Rules of Civil Procedure standards for particularity relating to fraud allegations, WSC argues for a

lower standard by which its fraud allegations should be judged. Relying in part on 8(a), WSC argues that it is "only necessary" to plead fraud with a plain statement that merely gives a defendant fair notice of the claim and the grounds upon which it rests. *See* Opposition Memorandum at 18. The pleading requirements for fraud are under Rule 9(b) and are heightened, requiring greater specificity than a mere notice pleading.[5]

Moreover, this Circuit has already spoken on the interplay of Rule 8(a) and 9(b) and the requirements for alleging fraud clearly require more than "a plain statement of the claim" sufficient to give Hancock "fair notice of the claim and the grounds upon which it rests." Opposition Memorandum, at 18-19. In *Kowal v. MCI Communications, Inc.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994), the Court dealt with WSC's attempt to confuse the requirements of Rule 8(a) and 9(b):

> Rule 8 of the Federal Rules of Civil Procedure states that a claim for relief should contain "a short and plain statement of the claim showing that the pleader is entitled to relief," but Rule 9(b) also requires that "[in] all averments of fraud or mistake, the circumstances constituting fraud ... shall be stated with particularity." Fed R. Civ. P. 9(b). Reading these two provisions in conjunction "normally ... means that the pleader must state

---

[5]    Opposition Memorandum, 19 at n 50. WSC's own supporting legal authorities on this point contradict WSC's argument that the standard under Rule 9(b) is mere notice pleading for fraud allegations. In footnote 51 of WSC's Opposition, WSC relies on two cases as support for the argument that Rule 9(b) only entails notice pleading for fraud allegations. First, *AFGE v. Loy*, 332 F. Supp. 2d 218, 227 (D.D.C. 2004), cited in footnote 50 of WSC's Opposition as primary support for this argument has nothing to do with pleading requirements relating to fraud under Rule 9(b). Second, the court in *Semon v. Ledecky*, 326 F. Supp 2d 68, 74 (D.D.C. 2004) notes:

> [W]hile the court must take as true all allegations of material fact and construe them in the light most favorable to the pleader in resolving a Rule 9(b) challenge, the pleader nevertheless must satisfy his burden by stating with particularity the supporting factual allegations for his claim. Finally, "conclusory allegations that a defendant's actions were fraudulent and deceptive are not sufficient to satisfy 9(b).

(citations omitted).

15

the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *United States v. Cannon,* 642 F.2d 1373, 1385 (D.C. Cir. 1981) (quotation deleted), *cert. denied,* 455 U.S. 999 (1982).

WSC also argues that if the Court finds that its fraud claim was not plead with particularity, the Court should grant leave to amend. *See* Opposition Memorandum, at 20. Hancock agrees that WSC should *ordinarily* be allowed to amend the Complaint in the event the Court finds that the fraud allegations were not plead with particularity. *See* Motion to Dismiss, 8 at n. 10.

Before the Court would allow WSC to amend its fraud claims, however, the Court must first determine whether or not WSC's fraud claim is anything more than its breach of contract and breach of fiduciary duty claim disguised as an independent cause of action. Unfortunately, WSC fails to address why its fraud allegations, even if sufficiently plead, should not be dismissed if its breach of contract and breach of fiduciary duty causes of action are dismissed by the Court. Having failed to address this issue at all in its Memorandum Opposition, the law is clear that WSC cannot be allowed to convert a breach of contract claim into a fraud claim by merely alleging that Hancock has failed to satisfy some burden under the contract. *See* Motion to Dismiss, at 19. If WSC's breach of contract and breach of fiduciary duty claims are dismissed with prejudice, so too will the fraud claim have to be dismissed with prejudice.

16

## CONCLUSION

For the foregoing reasons, Hancock respectfully requests the Court to dismiss WSC's Complaint in its entirety with prejudice.  Hancock further requests that the Court grant it costs and attorneys' fees.

Respectfully submitted,

William E. Wallace III  (DC Bar No. 298000)
Jonathan C. Poling (DC Bar No. 489459)
MILBANK TWEED HADLEY & McCLOY
1825 Eye Street, N.W., Suite 1100
Washington, DC 20006
Telephone: (202) 835-7511
Facsimile:  (202) 263-7511

September 16, 2005                    *Counsel for John Hancock Life Ins. Co.*

17

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 16, 2005, I electronically filed and caused to be served by First Class Mail copies of Memorandum Of Law In Reply To Plaintiff Washington Sheraton Corporation's Opposition To Defendant John Hancock Life Insurance Company's Motion To Dismiss Or In The Alternative For Summary Judgment addressed as follows:

John Scheuermann
Scheuermann & Menist
700 E Street, S.E.
Washington, D.C. 20003
Tel: (202) 547-9180

William A. Brewer, III
Bickel & Brewer
767 Fifth Avenue
New York, NY 10153
Tel: (212) 489-1400

Jonathan C. Poling