UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON SHERATON CORP., <br><br> Plaintiff, <br><br> v. <br><br> 2660 WOODLEY ROAD JOINT VENTURE, et al., <br><br> Defendants. | Civil Action 05-00971 (HHK) |

MEMORANDUM OPINION AND ORDER

Plaintiff Washington Sheraton Corporation ("WSC") brings this action against 2660 Woodley Road Joint Venture (the "Partnership") and John Hancock Life Insurance Co. ("Hancock"), alleging that WSC was improperly denied its share of the proceeds generated by the sale of the Sheraton Washington Hotel (the "Hotel") by the Partnership. In its complaint, WSC asserts that Hancock's actions constituted breach of contract ("Count I"); breach of fiduciary duty ("Count II"); and fraudulent and/or negligent misrepresentation ("Count III"). By this action, WSC seeks a final accounting of the partnership as well as money damages. Before the court is Hancock's motion to dismiss [#9] or, in the alternative, for summary judgment [#10]. Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes Hancock's motions must be denied as to Counts I and II, and its motion to dismiss must be granted as to Count III.

## I. BACKGROUND

Hancock and WSC, a subsidiary of ITT Sheraton Corp. ("Sheraton"), entered into the Partnership in 1979 for purposes of owning and operating the Hotel. The Partnership is governed by the Joint Venture Agreement of June 12, 1990, as amended (the "Partnership Agreement"). Def.'s Mot. to Dismiss Ex. B. Under the Partnership Agreement, Hancock served as the managing partner and held a ninety-nine percent interest, and WSC held a one percent interest. The parties also entered into a management agreement under which Sheraton agreed to act as Hancock's agent in managing the Hotel's operations.

In 1997, Hancock and the Partnership sued Sheraton in the District of Delaware for allegedly receiving "rebates," or kickbacks, from vendors that supplied the Hotel (the "Delaware Action"). *See 2660 Woodley Rd. Joint Venture v. ITT Sheraton Corp.*, 2002 U.S. Dist. LEXIS 439, at *2-3 (D. Del. Jan. 10, 2002).[1] WSC was subsequently added as a counter-claim plaintiff. As a result of that action, the district court ordered Sheraton to quit the premises of the Hotel, which was then sold in 1999 for $206 million. In October 1999, WSC sought, and was denied, leave to supplement its counterclaim to include a claim that the Partnership was required to make an interim distribution to WSC of its share of the proceeds from the sale of the Hotel. *See id.*,

---

[1] This court takes judicial notice of this related litigation between the parties in the District of Delaware. In the Delaware Action, Hancock and the Partnership sued Sheraton for violations of the Robinson-Patman Act, 15 U.S.C. § 13(c); violations of RICO, 18 U.S.C. § 1961; and state law claims of breach of contract, breach of fiduciary duty, and breach of the implied duty of good faith and fair dealing; as well as fraud, and intentional or negligent misrepresentation. *See, generally, 2660 Woodley Rd. Joint Venture v. ITT Sheraton Corp.*, 369 F.3d 732, 735-736 (3d Cir. 2004). Following trial, a jury found for Sheraton on Hancock's RICO claim, but found for Hancock on its Robinson-Patman claim and on several of its state law claims. The district court then entered judgment in favor of Hancock in the total amount of $31.5 million, which was later reduced by the Third Circuit to $3.4 million. *Id.* at 745.

1999 U.S. Dist. LEXIS 20860 (D.Del. Dec. 2, 1999).  The court also severed WSC's counterclaims from the trial, and WSC ultimately abandoned them.  The Partnership continued to pursue its claims against Sheraton in the Delaware Action, in which final judgment was rendered on March 1, 2005.

On April 22, 2005, WSC filed the instant complaint against Hancock and the Partnership seeking to recover its share of the proceeds from the 1999 sale ($2 million) that WSC contends it is due under the terms of the Partnership Agreement.[2]  For its part, Hancock contends that the complaint should be dismissed because (1) WSC's claims are time-barred by a three-year statute of limitations period; (2) the claims are barred by res judicata in that they were raised (or should have been raised) in the Delaware Action; and (3) WSC has not pleaded fraud with the degree of particularity required by Federal Rule of Civil Procedure 9.  The court will assess each of Hancock's contentions in turn.

## II. ANALYSIS

### A.   Statute of Limitations

Hancock first asserts that WSC's claims should be dismissed as a matter of law because they are barred by the applicable statute of limitations.[3]  The Partnership Agreement provides that

---

[2] WSC filed its three-count complaint on April 22, 2005 in the Superior Court of the District of Columbia, and Hancock filed a notice of removal on May 16, 2005.

[3] Under Rule 56, a motion for summary judgment should be granted only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party's "initial responsibility" consists of "informing the [trial] court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Where the moving party meets its burden, the burden then shifts to the non-moving party to establish

the rights and obligations of its parties "shall be governed by and interpreted and enforced in accordance with the laws of the District of Columbia." Partnership Agreement § 12.07, at 52. The applicable law provides that actions for breach of contract, as well as for actions sounding in equity, are subject to a three-year statute of limitations period from the time when the actions accrue. *See* D.C. Code § 12-301(7) (providing three year limitations period for actions "on a simple contract"); *id.* § 12-301 (8) (providing three-year limitations period for actions "for which a limitation is not otherwise specially prescribed"); *Warren v. Chapman*, 535 A.2d 856, 858 n.4 (D.C. 1987) (observing that an equitable action is subject to D.C. Code § 12-301(8), and assuming that a three-year limitation applies to accounting) .[4]

Hancock contends that WSC's cause of action accrued by December 31, 1999, because the Hotel was sold in January 1999, and the Partnership Agreement required a distribution of assets from the sale of the hotel by the end of that fiscal year. *See* Partnership Agreement §10.02, at 49. Thus, according to Hancock, the statute of limitations period ended on December 31, 2002, at the latest. WSC asserts, however, that a final distribution of the Partnership's assets did not become due until March 2005, when final judgment was rendered in the Delaware Action

---

that a genuine issue as to any material fact actually exists. Fed. R. Civ. P. 56 (e); *Laningham v. U.S.*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). To meet its burden, the non-moving party must show that " 'the evidence is such that a reasonable jury could return a verdict' " in its favor. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Such evidence must consist of more than mere unsupported allegations or denials and must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

[4] Under the law of the District of Columbia, it is unclear whether WSC's claims would be governed by the statute of limitations period applicable to actions concerning breach of contract, or to those brought in equity. The court need not reach that issue, however, as the applicable limitations period for either type of action is three years. *See Warren,* 535 A.2d at 859 n.4 (concluding the same).

and Hancock completed winding up the Partnership.  Thus, WSC contends that its April 2005 complaint was well within the statute of limitations period.

The critical issue, then, is when WSC's causes of action accrued.  Hancock correctly observes that a cause for breach of contract accrues when the contract is first breached, *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d 983, 992 (D.C. Cir. 1998), and that a cause of action for fiduciary duty accrues at "the time when the plaintiff both should have known of the defendant's actions and suffered actual injury," *Resolution Trust Corp., v. Gardner*, 788 F. Supp. 26, 29 (D.D.C. 1992).  What Hancock fails to recognize, however, is that a partnership continues to exist until its business is wound up.  *See* D.C. Code § 33-108.02  (providing that a partnership continues after dissolution for the purpose of winding up its business, and the partnership is terminated when the winding up of its business is completed); *Wash. Med. Ctr., Inc. v. Holle*, 573 A.2d 1269, 1278 (D.C. 1990).  Thus the statute of limitations on a demand for an accounting of a partnership does not begin to run "until after the business of the firm is concluded."  *Warren*, 535 A.2d at 859-60 (internal quotation marks and citation omitted).  Moreover, one's fiduciary duties as a partner continue throughout winding up the partnership and the final accounting.  *See, e.g.,* D.C. Code § 41-120(a) (providing that a partner is accountable as fiduciary for any benefit derived in any transaction connected with the formation, conduct or liquidation of partnership); *Wash. Med. Ctr.,* 573 A.2d at 1278.  Thus, while the Partnership may have dissolved in 1999 with the sale of the Hotel, the Partnership continued to exist while it pursued its claims in the Delaware Action.  Thus, WSC's claims regarding the final distribution

did not accrue until after the Partnership began winding up its business in March 2005, following final judgment in the Delaware Action.[5]

Hancock makes much of the fact that WSC made a formal demand for distribution of the proceeds in September 1999 and for a final accounting in October 1999, which Hancock asserts is an indication that WSC believed its cause of action to have accrued in 1999. *See* Def.'s Mot. to Dismiss at 9. WSC's purported "belief" is not dispositive of the legal determination regarding whether the cause of action had accrued in 1999. More importantly, whether these demands were timely or appropriate in 1999 is not at issue before this court. What is at issue is when the current causes of action accrued. The court concludes that, under the governing law, WSC's claims for final distribution did not accrue until after the Partnership began to wind up its business in March 2005. Thus, WSC's complaint, filed in April 2005, was timely, and the statute of limitations does not provide a ground upon which Hancock is entitled to judgment as a matter of law.

**B.    Res Judicata**

Hancock next contends that WSC's claims are barred by res judicata because WSC asserted the same claims in the Delaware Action as it does here. Under the doctrine of res judicata, or claim preclusion, "a final judgment on the merits of an action precludes the parties or

---

[5] The Partnership Agreement provided that partners were entitled to distribution of "Net Proceeds of a . . . Capital Transaction," which was defined as the proceeds of a transaction less a number of items, including "the retention of such proceeds or a portion of such proceeds for a reserve established . . . for contingencies and anticipated cash disbursements." Partnership Agreement § 1.01, at 8. WSC points out that the Partnership had set aside a reserve pending the outcome of the Delaware Action, which included a counterclaim by Sheraton against the Partnership for wrongful termination. Pl.'s Opp. at 6-7 (citing various exhibits to Def.'s Mot. to Dismiss). Thus, WSC contends that the Partnership had not yet dissolved until at least March 2005.

their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Claim preclusion requires a showing of three elements: (1) the presence of the same parties or privies in the previous and current suit; (2) claims arising from the same cause of action in the previous suit as those in the current suit; and (3) a final judgment on the merits in the previous suit. *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004).

The first element — identity of the parties — is met here. In the Delaware Action, WSC was a counter-claimant and Hancock was a counter-defendant.

The second element — identity of claims — is not established, however. Whether two claims "implicate the same cause of action turns on whether they share the same nucleus of facts." *Id.* (internal quotation marks omitted). The court must inquire into "whether the facts are related in time, space, origin, or motivation," among other relevant factors. *Id.* (internal quotation marks omitted). Here, the "nucleus of facts" are not identical in time, space or origin. As discussed above, any claim asserted by WSC in 1999 in connection with the Delaware Action could only have been for a *partial* distribution of assets — rather than a *final* distribution — as the Partnership had not yet dissolved. WSC's claim in the current action concerns the Partnership's actions surrounding the *final* distribution of assets, a cause of action which did not yet exist at the time of the Delaware Action. As WSC notes, courts have consistently concluded that "res judicata does not apply where the facts giving rise to the second case only arise after the original pleading is filed in the earlier litigation." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1298 (11th Cir. 2001) (internal quotation marks and citation omitted); *see also Faulkner v. GEICO,* 618 A.2d 181, 183 (D.C. 1992) ("For purposes of res judicata, the nature and scope of a

cause of action is determined by "the factual nucleus, not the theory on which a plaintiff relies." (internal quotation marks omitted)). WSC's claims in the second suit involve claims that did not accrue until six years after the first claims were asserted, and thus, they are not identical.

Because the facts and the cause of action are not identical, the third element of claim preclusion — a final judgment on the merits — is also not present here. To be sure, WSC sought, and was denied, leave to supplement its counterclaim in the Delaware Action to include a claim that the Partnership was required to make an interim distribution to WSC of its share of the proceeds from the sale of the Hotel. *2660 Woodley Rd. Joint Venture v. ITT Sheraton Corp.*, 1999 U.S. Dist. LEXIS 20860 (D.Del. Dec. 2, 1999). As explained above, however, such a claim is distinct from WSC's present claim for distribution following the dissolution of the partnership. Thus, the Delaware Action cannot be said to be a decision on the merits of the claims asserted in the present action.[6]

Accordingly, the court concludes WSC's claims are not barred by res judicata, and Hancock is not entitled to a judgment as a matter of law on these grounds either.

---

[6] On a similar note, Hancock contends that WSC's breach of fiduciary duty claim should be barred because it *could* have been asserted at the time of the Delaware Action. *See, e.g., Velikonja v. Ashcroft*, 355 F. Supp. 2d 197, 201 (D.D.C. 2005) (observing that res judicata bars claims that " could have been raised at an earlier juncture" (internal quotation marks omitted)). For the reasons already discussed, any claim based on breach of fiduciary duty in 1999 could not have encompassed all of the facts that underlie the claim of breach in 2005. Accordingly, the claim cannot be barred by res judicata.

C.    **Requisite Particularity**

Finally, Hancock contends that Count III should be dismissed because it was not pleaded with particularity.[7] Rule 9(b) of the Federal Rules of Civil Procedure requires that the circumstances of fraud must be alleged with particularity, including (1) the time, place, and contents of alleged misrepresentations; (2) the identity of the person who made the misrepresentation; and (3) the method by which the misrepresentation was made to the plaintiff. *See United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551-52 (D.C. Cir. 2002). "Conclusory allegations that a defendant's actions were fraudulent and deceptive are not sufficient to satisfy Rule 9(b)." *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 73 (D.D.C. 2002). WSC contends that it has pleaded Count III with particularity and that, in any event, it should be permitted to amend its complaint if the court concludes that it was not properly pleaded.

The court concludes that WSC's complaint has failed to sufficiently set forth the circumstances surrounding Hancock's alleged misrepresentations or fraud. WSC's complaint primarily rests on its breach of contract allegations to support its claim for fraudulent and/or misprestation. A plaintiff "cannot turn an action for breach of contract into an action for fraud

---

[7] A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Radack v. U.S. Dept. of Justice,* 402 F. Supp. 2d 99, 103 (D.D.C. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). When reviewing a motion to dismiss, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Egilman v. Keller & Heckman, LLP*, 401 F. Supp. 2d 105, 109 (D.D.C. 2005). As such, a motion to dismiss under Rule 12(b)(6) tests not whether a plaintiff will ultimately prevail on the merits, but only whether the plaintiff has properly stated a claim for which she is entitled to relief. *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 76 (D.D.C. 2003).

by merely alleging reliance on representations that the contract would be performed and detriment from its breach." *Brown v. Chaffee*, 612 F.2d 497, 503 (10th Cir. 1979). As WSC's complaint fails to allege any circumstances beyond the breach of contract to support its claim, the court will dismiss the claim without prejudice. *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) ("Failure to plead fraud with particularity . . . does not support a dismissal with prejudice.").[8]

### III. CONCLUSION

For the foregoing reasons, it is this 27th day of September, 2006, hereby

**ORDERED** that Hancock's motion to dismiss [#9], or in the alternative, for summary judgment [#10] is **DENIED** with respect to Counts I and II and **GRANTED** with respect to Count III, which is dismissed without prejudice.

Henry H. Kennedy, Jr.
United States District Judge

---

[8] WSC states, "[e]ven if the court were to find that Plaintiff failed to plead its fraud claim with particularity, such a finding does not justify dismissal with prejudice. Rather the Court should grant leave to amend." Pl.'s Opp'n at 20. The court observes that its dismissal of WSC's fraud claim is without prejudice and that this court's "leave to amend" neither has been sought nor is needed. *See* Fed. R. Civ. P. 15(a) ("A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.").