UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON SHERATON CORPORATION,<br><br>Plaintiff and Counterclaim Defendant<br><br>v.<br><br>2660 WOODLEY ROAD JOINT VENTURE,<br><br>and,<br><br>JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY<br><br>Defendants and Counterclaim Plaintiffs | Case No. 1:05CV0971-HHK |

## ANSWER AND COUNTERCLAIMS
## OF JOHN HANCOCK FINANCIAL SERVICES, INC.

John Hancock Financial Services, Inc. (formerly known as John Hancock Mutual Life Insurance Company) (hereinafter "Hancock"), by its undersigned attorneys, Milbank, Tweed, Hadley & McCloy LLP, as and for its Answer to Washington Sheraton Corporation's ("WSC") Complaint and for its Counterclaims against WSC, respectfully pleads as follows:

1.   Hancock is without knowledge or information sufficient to form a belief as to truth of the allegations contained in Paragraph 1 of the Complaint.

2.   Hancock denies the allegations contained in Paragraph 2 of the Complaint.

3.   Hancock denies the allegations contained in Paragraph 3 of the Complaint.

4. Hancock admits the allegations contained in Paragraph 4 of the Complaint.

5. To the extent Paragraph 5 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock denies each and every allegation contained in Paragraph 5 of the Complaint.

6. To the extent Paragraph 6 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock denies each and every allegation contained in Paragraph 6 of the Complaint.

7. To the extent Paragraph 7 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock admits that WSC and Hancock were parties to a Joint Venture Agreement dated September 27, 1979.

8. Hancock admits the allegations contained in Paragraph 8 of the Complaint.

9. Hancock admits the allegations contained in Paragraph 9 of the Complaint.

10. Hancock admits that the language quoted in Paragraph 10 of the Complaint is an accurate transcription of the Amended and Restated Joint Venture Agreement of 2660 Woodley Road Joint Venture (the "Partnership Agreement").

11. Hancock admits the allegations contained in Paragraph 11 of the Complaint.

12. Hancock admits that it was the Managing Partner under the Partnership Agreement. Hancock denies that the language quoted in Paragraph 12 of the Complaint

is an accurate transcription of the Partnership Agreement and denies all remaining allegations contained in Paragraph 12 of the Complaint.

13. To the extent Paragraph 13 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock denies each and every allegation contained in Paragraph 13 of the Complaint.

14. To the extent Paragraph 14 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock denies each and every allegation contained in Paragraph 14 of the Complaint.

15. To the extent Paragraph 15 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock admits that Article V of the Partnership Agreement is entitled "Profits, Losses, and Distributions." Hancock denies that the language quoted in Paragraph 15 of the Complaint is an accurate transcription of the definition of "Partnership Interests" contained in the Partnership Agreement. Hancock further denies that the language quoted in Paragraph 15 of the Complaint is an accurate transcription of the definition of "Capital Transaction" contained in the Partnership Agreement. Hancock denies all remaining allegations contained in Paragraph 15 of the Complaint.

16. Hancock denies that the language quoted in Paragraph 16 of the Complaint is an accurate transcription of Section 5.03 of the Partnership Agreement. Hancock denies all remaining allegations contained in Paragraph 16 of the Complaint.

17. Hancock admits the allegations contained in Paragraph 17 of the Complaint.

18.     To the extent Paragraph 18 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock denies each and every allegation contained in Paragraph 18 of the Complaint.

19.     To the extent Paragraph 19 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock denies each and every allegation contained in Paragraph 19 of the Complaint.

20.     To the extent Paragraph 20 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock denies each and every allegation contained in Paragraph 20 of the Complaint.

21.     To the extent Paragraph 21 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock denies each and every allegation contained in Paragraph 21 of the Complaint.

22.     To the extent Paragraph 22 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock denies each and every allegation contained in Paragraph 22 of the Complaint.

23.     To the extent Paragraph 23 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock denies each and every allegation contained in Paragraph 23 of the Complaint.

## CLAIMS

A.     **Count One: Breach of Contract**

24.     Hancock adopts and incorporates by reference its responses to the paragraphs above as if fully contained herein.

25. To the extent Paragraph 25 of the Complaint contains legal conclusions, no response is required.

26. To the extent Paragraph 26 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock denies each and every allegation contained in Paragraph 26 of the Complaint.

27. To the extent Paragraph 27 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock denies each and every allegation contained in Paragraph 27 of the Complaint.

28. To the extent Paragraph 28 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock denies each and every allegation contained in Paragraph 28 of the Complaint.

29. To the extent Paragraph 29 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock denies each and every allegation contained in Paragraph 29 of the Complaint.

30. To the extent Paragraph 30 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock admits that Plaintiff seeks monetary relief in the form of compensatory and consequential damages in this litigation, but denies that Plaintiff is entitled to such relief. Hancock denies all remaining allegations contained in Paragraph 30 of the Complaint.

**B.   Count Two: Breach of Fiduciary Duty**

31. Hancock adopts and incorporates by reference its responses to the paragraphs above as if fully contained herein.

32.     To the extent Paragraph 32 of the Complaint contains legal conclusions, no response is required.

33.     To the extent Paragraph 33 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock denies each and every allegation contained in Paragraph 33 of the Complaint.

34.     With regard to Paragraph 34 of the Complaint, Hancock admits that WSC seeks an accounting of the Partnership's assets, but denies that WSC is entitled to such relief.

35.     With regard to Paragraph 35 of the Complaint, Hancock admits that WSC seeks to recover an award of monetary damages, but denies that Plaintiff is entitled to such relief.

36.     To the extent Paragraph 36 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock admits that Plaintiff seeks to recover punitive damages, but denies that WSC is entitled to such relief. Hancock denies all remaining allegations contained in Paragraph 36 of the Complaint.

C.  **Count Three: Common Law Fraudulent And/Or Negligent Misrepresentation and Concealment**

37.     Hancock adopts and incorporates by reference its responses to the paragraphs above as if fully contained herein. Count Three was dismissed by the Court on September 27, 2006. As such, no response to Paragraphs 37 – 44 of the Complaint is required. See Memorandum Opinion and Order, dated September 27, 2006.

38.     Hancock denies each and every allegation contained in the Wherefore Clause of the Complaint, including subparts (a) – (f) thereof. In addition, Hancock denies each and every allegation of the Complaint not specifically admitted

herein. Hancock further denies that WSC is entitled to any of the relief requested, and demands strict proof of each element of WSC's claims and asserted damages.

## AFFIRMATIVE DEFENSES

For its further and separate affirmative defenses to the Complaint and the claims WSC purports to assert therein, and without assuming the burden of proof on any matters for which that burden rests with WSC, Hancock alleges:

### First Affirmative Defense

39. WSC's claims are barred, in whole or in part, by the doctrine of *res judicata*.

### Second Affirmative Defense

40. WSC's claims are barred, in whole or in part, by the applicable statute of limitations.

### Third Affirmative Defense

41. WSC's claims are barred, in whole or in part, by the doctrine of unclean hands.

### Fourth Affirmative Defense

42. WSC's claims are barred, in whole or in part, by the doctrine of laches.

### Fifth Affirmative Defense

43. WSC's claims are barred, in whole or in part, by the doctrine of *in pari delicto*.

### Sixth Affirmative Defense

44. WSC's claims are barred, in whole or in part, by recoupment and setoff.

### Seventh Affirmative Defense

45.     Hancock reserves the right to raise additional affirmative and other defenses as may be established by discovery and the evidence in this case.

### COUNTERCLAIMS

Defendant and Counterclaim-Plaintiff Hancock by its undersigned attorneys, Milbank, Tweed, Hadley & McCloy LLP, as and for its Counterclaims against Plaintiff and Counterclaim-Defendant WSC, alleges upon information and belief as follows:

46.     In 1979, WSC and Hancock became partners pursuant to a Joint Venture Agreement (the "JV Agreement") that formed a joint venture ("Partnership") between Hancock and WSC, sharing ownership equally. Hancock purchased an additional 49% interest in the Partnership from WSC (bringing Hancock's interest to 99%), and the name 2660 Woodley Road Joint Venture was adopted.

47.     As a partner, WSC owed and continues to owe a fiduciary duty, a duty of a loyalty and a duty of good faith and fair dealing to the Partnership and Hancock under the terms of the JV Agreement until the Partnership is wound up.

48.     Upon information and belief, WSC is nothing more than the alter ego to Sheraton. Sheraton has been guilty of misconduct against Hancock and the Partnership and WSC, as an alter ego, is also guilty of Sheraton's breaches.

49.     Upon information and belief, WSC conspired with and aided and abetted Sheraton in its breaches of fiduciary duty to the Partnership and in so doing, WSC also breached its fiduciary duty, duty of a loyalty and duty of good faith and fair dealing to Hancock and the Partnership.

50. Upon information and belief, WSC's conduct caused damages to Hancock and the Partnership, which include significant legal costs in defense of Sheraton and WSC's claims in two separate jurisdictions. Hancock and the Partnership are entitled to damages against WSC for its breaches of fiduciary duty, duty of loyalty and duty of good faith and fair dealing.

### The Parties

51. Hancock is a corporation organized under the laws of the Commonwealth of Massachusetts.

52. WSC is a corporation organized under the laws of the State of Delaware.

### Jurisdiction and Venue

53. Subject matter jurisdiction is proper under 28 U.S.C. §§ 1332, 1367.

54. Venue and personal jurisdiction are proper under 28 U.S.C. § 1391.

### Factual Allegations

55. Upon information and belief, in the early 1970's, the Sheraton organization built, owned and managed a large convention hotel, at the time known as the Sheraton Washington Hotel ("Hotel").

56. Upon information and belief, in the late 1970's, Sheraton decided to sell the Hotel while retaining the right to manage it for the new buyer.

57. Upon information and belief, in 1979, a Partnership was formed between Hancock and a Sheraton subsidiary, WSC, for the express purpose of owning and operating the Hotel.

58. Upon information and belief, the JV Agreement was amended on June 12, 1990 by Hancock, WSC, and Sumitomo Life Realty, Inc. ("Sumitomo") for the purpose

of admitting Sumitomo into the Partnership.

59. The amended JV Agreement rendered Hancock, Sumitomo, and WSC partners of Woodley, with their respective interests in the partnership designated as 51%, 48%, and 1%. Hancock purchased Sumitomo's interest in the Partnership in 1997, and once again became a 99% owner of the Partnership.

60. Upon information and belief, the retained 1% interest was driven by the tax ramifications affecting the transaction and Sheraton's desire to avoid certain potential taxes on what was for all practical purposes a sale of the Hotel to Hancock.

61. Hancock and its then joint venture partner Sumitomo suspected that Sheraton was, among other improprieties, demanding illegal kickbacks from the various vendors who were supplying goods and services to the Hotel as a condition for doing business with the Hotel.

62. On or about August 1, 1997, Hancock, Sumitomo, and the joint venture (the "Delaware Plaintiffs") filed an action against Sheraton in the United States District Court for the District of Delaware (the "Delaware Litigation"), seeking damages and other relief for Sheraton's breach of a management contract, breach of its fiduciary duty, RICO violations, and violations of the Robinson-Patman Act.

63. The Partnership sold the Hotel in January 1999.

64. Upon information and belief, WSC voluntarily intervened in the Delaware Litigation on behalf of Sheraton and filed three counterclaims against the Delaware Plaintiffs, including the Partnership itself, alleging a breach of the joint venture agreement and a breach of Hancock's fiduciary duty to WSC. Prior to the Delaware trial, all of WSC's counterclaims were severed from the Delaware Litigation. After the trial,

WSC abandoned all of its asserted counterclaims against the Delaware Plaintiffs and WSC did not pursue claims against the Partnership until after Sheraton lost its appeal to the Third Circuit.

65. After a trial on the merits in the Delaware Litigation, the jury returned a verdict in favor of Hancock and against Sheraton on its numerous claims of wrongdoing, including its claims for breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and intentional or negligent misrepresentation, and on its claim for punitive damages.

66. After reducing the amount of damages, including the punitive damages award, the Third Circuit affirmed in all material respects Sheraton's liability for taking the illegal kickbacks and for breaching its fiduciary obligations.

67. Sheraton has admitted that WSC is a wholly-owned subsidiary of Sheraton and that WSC was formed solely for the purpose of holding Sheraton's interest in the property and owning the Hotel.

68. WSC knew of Sheraton's wrongdoing and had a duty to disclose Sheraton's wrongdoing to Hancock and the Partnership, but WSC did not do so.

69. WSC also had a duty to take steps to stop Sheraton from acting wrongfully against Hancock and the Partnership, but failed to do so.

70. WSC provided assistance to Sheraton in defense of its breaches of fiduciary duty, breaches of implied covenant of good faith and fair dealing, and Sheraton's intentional or negligent misrepresentation, by, among other things, affirmatively intervening in the Delaware Litigation against the Partnership and in favor of Sheraton. WSC's conduct on behalf of Sheraton in the Delaware Litigation was in bad

faith and calculated to coerce Hancock to abandon its legal claims against Sheraton.

71. WSC, an alter ego for Sheraton, is liable to Hancock and the Partnership for Sheraton's proven misconduct.

72. WSC engaged in a civil conspiracy with Sheraton to cause harm to Hancock and the Partnership and to further Sheraton's misconduct against Hancock and the Partnership.

73. WSC aided and abetted Sheraton in its misconduct against Hancock and the Partnership.

74. As a result of WSC's misconduct, Hancock and the Partnership have been injured by WSC, the full amount of which will be determined at trial.

WHEREFORE, Hancock requests judgment by the Court:

(1) Ordering that WSC take nothing by the Complaint filed in the above-entitled matter, and that the Complaint be dismissed with prejudice.

(2) Granting Hancock judgment on its counterclaims in an amount to be determined at trial, together with pre-judgment and post-judgment interest on any amount awarded until paid;

(3) Awarding Hancock its costs;

(4) Awarding Hancock its attorneys' fees; and

(5) Granting Hancock such other and further relief as the Court deems just.

Respectfully submitted,

/s/ William E. Wallace III
William E. Wallace III (DC Bar No. 298000)
Jonathan C. Poling (DC Bar No. 489459)
MILBANK TWEED HADLEY & McCLOY LLP
1850 K Street, N.W., Suite 1100
Washington, DC 20006
Telephone: (202) 835-7511
Facsimile: (202) 263-7511

October 26, 2006   Attorneys for John Hancock Financial Services, Inc..

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2006, I electronically filed and caused to be served by First Class Mail copies of Defendant John Hancock Financial Services, Inc.'s Answer and Counterclaims to Washington Sheraton Corporation's Complaint addressed as follows:

>John Scheuermann
>Scheuermann & Menist
>700 E Street, S.E.
>Washington, D.C. 20003
>Tel: (202) 547-9180
>
>William A. Brewer, III
>Bickel & Brewer
>767 Fifth Avenue
>New York, NY 10153
>Tel: (212) 489-1400
>
>
>/s/ Naseema Shafi
>Naseema Shafi

DC1:#8119133