UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

_____
WASHINGTON SHERATON CORPORATION,    )
                                    )
    Plaintiff and Counterclaim Defendant,    )
                                    )
        v.                          )
                                    )
2660 WOODLEY ROAD JOINT VENTURE,    )
                                    )   Civil Action 05-00971 (HHK)
    and,                            )
                                    )   Status Conference:
JOHN HANCOCK MUTUAL LIFE INSURANCE  )   **Sept. 21, 2007 at 10:15am**
COMPANY                             )
                                    )
    Defendants and Counterclaim Plaintiffs.    )
_____)

### AMENDED ANSWER AND COUNTERCLAIMS OF JOHN HANCOCK LIFE INSURANCE COMPANY & 2660 WOODLEY ROAD JOINT VENTURE

John Hancock Life Insurance Company (formerly John Hancock Mutual Life Insurance Company) (hereinafter "Hancock") and 2660 Woodley Road Joint Venture (the "Joint Venture" or "Partnership"), by John Hancock Financial Services, Inc. and through its undersigned attorneys, Milbank, Tweed, Hadley & McCloy LLP, as and for their Amended Answer to Washington Sheraton Corporation's ("WSC") Complaint and for their Counterclaims against WSC, respectfully pleads as follows:

1.    Hancock and the Partnership are without knowledge or information sufficient to form a belief as to truth of the allegations contained in Paragraph 1 of the Complaint.

2.   Hancock and the Partnership admit the allegations contained in Paragraph 2 of the Complaint.

3.   Hancock and the Partnership deny the allegations contained in Paragraph 3 of the Complaint.

4.   Hancock and the Partnership admit the allegations contained in Paragraph 4 of the Complaint.

5.   To the extent Paragraph 5 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock and the Partnership deny each and every allegation contained in Paragraph 5 of the Complaint.

6.   To the extent Paragraph 6 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock and the Partnership deny each and every allegation contained in Paragraph 6 of the Complaint.

7.   To the extent Paragraph 7 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock and the Partnership admit that WSC and Hancock were parties to a Joint Venture Agreement dated September 27, 1979.

8.   Hancock and the Partnership admit the allegations contained in Paragraph 8 of the Complaint.

9.   Hancock and the Partnership admit the allegations contained in Paragraph 9 of the Complaint.

10.  Hancock and the Partnership admit that the language quoted in Paragraph 10 of the Complaint is an accurate transcription of the Amended and Restated Joint Venture Agreement of 2660 Woodley Road Joint Venture (the "Partnership Agreement").

11. Hancock and the Partnership admit the allegations contained in Paragraph 11 of the Complaint.

12. Hancock and the Partnership admit that it was the Managing Partner under the Partnership Agreement. Hancock denies that the language quoted in Paragraph 12 of the Complaint is an accurate transcription of the Partnership Agreement and denies all remaining allegations contained in Paragraph 12 of the Complaint.

13. To the extent Paragraph 13 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock and the Partnership deny each and every allegation contained in Paragraph 13 of the Complaint.

14. To the extent Paragraph 14 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock and the Partnership deny each and every allegation contained in Paragraph 14 of the Complaint.

15. To the extent Paragraph 15 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock and the Partnership admit that Article V of the Partnership Agreement is entitled "Profits, Losses, and Distributions." Hancock and the Partnership deny that the language quoted in Paragraph 15 of the Complaint is an accurate transcription of the definition of "Partnership Interests" contained in the Partnership Agreement. Hancock and the Partnership further deny that the language quoted in Paragraph 15 of the Complaint is an accurate transcription of the definition of "Capital Transaction" contained in the Partnership Agreement. Hancock and the Partnership deny all remaining allegations contained in Paragraph 15 of the Complaint.

16. Hancock and the Partnership deny that the language quoted in Paragraph 16 of the Complaint is an accurate transcription of Section 5.03 of the Partnership Agreement. Hancock and the Partnership deny all remaining allegations contained in Paragraph 16 of the Complaint.

17. Hancock and the Partnership admit the allegations contained in Paragraph 17 of the Complaint.

18. To the extent Paragraph 18 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock and the Partnership deny each and every allegation contained in Paragraph 18 of the Complaint.

19. To the extent Paragraph 19 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock and the Partnership deny each and every allegation contained in Paragraph 19 of the Complaint.

20. To the extent Paragraph 20 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock and the Partnership deny each and every allegation contained in Paragraph 20 of the Complaint.

21. To the extent Paragraph 21 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock and the Partnership deny each and every allegation contained in Paragraph 21 of the Complaint.

22. To the extent Paragraph 22 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock and the Partnership deny each and every allegation contained in Paragraph 22 of the Complaint.

23. To the extent Paragraph 23 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock and the Partnership deny each and every allegation contained in Paragraph 23 of the Complaint.

## CLAIMS

### A. Count One: Breach of Contract

24. Hancock and the Partnership adopts and incorporates by reference its responses to the paragraphs above as if fully contained herein.

25. To the extent Paragraph 25 of the Complaint contains legal conclusions, no response is required.

26. To the extent Paragraph 26 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock and the Partnership deny each and every allegation contained in Paragraph 26 of the Complaint.

27. To the extent Paragraph 27 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock and the Partnership deny each and every allegation contained in Paragraph 27 of the Complaint.

28. To the extent Paragraph 28 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock and the Partnership deny each and every allegation contained in Paragraph 28 of the Complaint.

29. To the extent Paragraph 29 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock and the Partnership deny each and every allegation contained in Paragraph 29 of the Complaint.

30. To the extent Paragraph 30 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock and the

Partnership admit that WSC seeks monetary relief in the form of compensatory and consequential damages in this litigation, but deny that WSC is entitled to such relief. Hancock deny all remaining allegations contained in Paragraph 30 of the Complaint.

**B.    Count Two: Breach of Fiduciary Duty**

33.    Hancock and the Partnership adopt and incorporate by reference its responses to the paragraphs above as if fully contained herein.

32.    To the extent Paragraph 32 of the Complaint contains legal conclusions, no response is required.

33.    To the extent Paragraph 33 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock and the Partnership deny each and every allegation contained in Paragraph 33 of the Complaint.

34.    With regard to Paragraph 34 of the Complaint, Hancock and the Partnership admit that WSC seeks an accounting of the Partnership's assets, but deny that WSC is entitled to such relief.

35.    With regard to Paragraph 35 of the Complaint, Hancock and the Partnership admit that WSC seeks to recover an award of monetary damages, but denies that WSC is entitled to such relief.

36.    To the extent Paragraph 36 of the Complaint contains legal conclusions, no response is required. To the extent a response is required, Hancock and the Partnership admit that WSC seeks to recover punitive damages, but denies that WSC is entitled to such relief. Hancock and the Partnership deny all remaining allegations contained in Paragraph 36 of the Complaint.

### C. Count Three: Common Law Fraudulent And/Or Negligent Misrepresentation and Concealment

37. Hancock and the Partnership adopt and incorporate by reference its responses to the paragraphs above as if fully contained herein. Count Three was dismissed by the Court on September 27, 2006. As such, no response to Paragraphs 37 – 44 of the Complaint is required. See Memorandum Opinion and Order, dated September 27, 2006.

38. Hancock and the Partnership deny each and every allegation contained in the Wherefore Clause of the Complaint, including subparts (a) – (f) thereof. In addition, Hancock denies each and every allegation of the Complaint not specifically admitted herein. Hancock and the Partnership further deny that WSC is entitled to any of the relief requested, and demands strict proof of each element of WSC's claims and asserted damages.

### AFFIRMATIVE DEFENSES

For its further and separate affirmative defenses to the Complaint and the claims WSC purports to assert therein, and without assuming the burden of proof on any matters for which that burden rests with WSC, Hancock and the Partnership allege:

### First Affirmative Defense

39. WSC's claims are barred, in whole or in part, by the doctrine of *res judicata*.

### Second Affirmative Defense

40. WSC's claims are barred, in whole or in part, by the applicable statute of limitations.

### Third Affirmative Defense

41.     WSC's claims are barred, in whole or in part, by the doctrine of unclean hands.

### Fourth Affirmative Defense

42.     WSC's claims are barred, in whole or in part, by the doctrine of laches.

### Fifth Affirmative Defense

43.     WSC's claims are barred, in whole or in part, by the doctrine of *in pari delicto*.

### Sixth Affirmative Defense

44.     WSC's claims are barred, in whole or in part, by recoupment and setoff.

### Seventh Affirmative Defense

45.     WSC's claims are barred, in whole or in part, by the express terms of the JV Agreement.

### Eighth Affirmative Defense

46.     Hancock and the Partnership reserve the right to raise additional affirmative and other defenses as may be established by discovery and the evidence in this case.

### COUNTERCLAIMS

Defendants and Counterclaim-Plaintiffs John Hancock Life Insurance Company ("Hancock") and 2660 Woodley Road Joint Venture (the "Partnership") by their undersigned attorneys, Milbank, Tweed, Hadley & McCloy LLP, assert the following counterclaims against Plaintiff and Counterclaim-Defendant Washington Sheraton Corporation ("WSC").

**Preliminary Statement**

Defendants counterclaim against WSC for i) aiding and abetting in breaches of fiduciary duties; ii) engaging in a civil conspiracy in furtherance of the aiding and abetting of breaches of fiduciary duty and iii) alter ego breaches of fiduciary duty. Defendants' counterclaims, like the claims asserted in the Complaint, arise from the parties' interests in the Partnership which were governed by the same joint venture agreement that forms the basis of Plaintiff's claims against Defendants. Each of Defendants' three counterclaims asserted herein are claims for recoupment against WSC's claims.

**The Parties**

47. Counterclaim-Plaintiff Hancock is a corporation organized under the laws of the Commonwealth of Massachusetts.

48. Counterclaim-Plaintiff 2660 Woodley Road Joint Venture is a District of Columbia general partnership.

49. Counterclaim-Defendant WSC is a corporation organized under the laws of the State of Delaware. WSC is also a wholly-owned subsidiary and/or alter ego of one or more of the following entities: The Sheraton Corporation (f/k/a ITT Sheraton Corporation or the ITT Corporation), Sheraton Operating Company and/or Starwood Hotels and Worldwide Resorts, Inc. (collectively, the "Sheraton Entities").

**Jurisdiction and Venue**

50. Subject matter jurisdiction is proper under 28 U.S.C. §§ 1332, 1367.

51. Venue and personal jurisdiction are proper under 28 U.S.C. § 1391.

**Factual Allegations**

I. **The Partnership**

52. In the early 1970's, the Sheraton Entities built, owned and managed a large convention hotel, at the time known as the Sheraton Washington Hotel ("Hotel") and located at 2660 Woodley Road, N.W., Washington, D.C.

53. The Sheraton Entities decided to sell the Hotel while retaining the right to manage it for the new buyer and in 1979, WSC and Hancock became partners pursuant to a joint venture agreement (the "Original Partnership Agreement") that formed the Partnership between Hancock and WSC, at the time owning equal percentages of the Hotel.

54. In 1990, the Original Partnership Agreement was amended by Hancock, WSC, and Sumitomo Life Realty, Inc. ("Sumitomo") for the purpose of admitting Sumitomo into the Partnership (the "JV Agreement"). Pursuant to the JV Agreement, Hancock, Sumitomo, and WSC were each made partners, sharing ownership interests in the Partnership of 51%, 48%, and 1%, respectively.

55. In 1998, Hancock purchased Sumitomo's interest in the Partnership and became a 99% owner of the Partnership. The Sheraton Entities, through WSC, retained a 1% interest in the Hotel for purposes of avoiding certain potential tax liabilities in what was a sale of the Hotel to Hancock.

56. WSC, as a partner in the Partnership, owed Hancock and the Partnership fiduciary duties, duties of loyalty, and duties of good faith and fair dealing, and is obligated to act in the best interests of the Partnership.

## II.  The Sheraton-Hancock Litigation I

57. On or about August 1, 1997, Hancock, Sumitomo, and the Partnership filed an action against the Sheraton Entities captioned <u>2660 Woodley Road Joint Venture v. ITT Sheraton Corp.</u>, Civil Action No. 97-450-JJF, in the United States District Court for the District of Delaware (the "<u>Sheraton-Hancock Litigation I</u>"), seeking damages and other relief for the Sheraton Entities' breach of a management contract, breaches of their fiduciary duties, RICO violations, and violations of the Robinson-Patman Act, all precipitated, in part, by a scheme in which the Sheraton Entities demanded and received illegal kickbacks from vendors in exchange for service contracts with the Hotel.

58. After a trial on the merits in *Sheraton-Hancock Litigation I*, the jury returned a verdict in favor of Hancock and the Partnership on their numerous claims of wrongdoing asserted against the Sheraton Entities, including their claims for breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, intentional or negligent misrepresentation, and on their claim for punitive damages. After reducing the amount of damages, including the punitive damages award, the Third Circuit affirmed in all material respects the Sheraton Entities' liability for taking the illegal kickbacks and for breaching their fiduciary obligations to Hancock and the Partnership.

59. Nearly a decade of litigation between the parties concluded on March 1, 2005, when final judgment was entered in *Sheraton-Hancock Litigation I* against the Sheraton Entities in the amount of $3,016,728.92 in compensatory damages, interest and costs and $2,025,000 in punitive damages.

60. But shortly after final judgment was entered against the Sheraton Entities in *Sheraton-Hancock Litigation I*, WSC filed its Complaint and began this litigation

against Hancock and the Partnership seeking, among other things, an accounting from the Partnership and proceeds from the sale of the Hotel, which occurred in 1999 during the *Sheraton-Hancock Litigation I.*

### III. WSC Aided And Abetted Sheraton Entities In Breaching Their Fiduciary Duties

61. The March 1, 2005 final judgment conclusively established that the Sheraton Entities breached their fiduciary duties to Hancock and the Partnership.

62. The breaches committed by the Sheraton Entities, however, could not have been carried out without the knowledge and assistance of WSC, of which the Sheraton Entities controlled and manipulated through their 1% interest in the Partnership.

63. WSC, as a partner in the Partnership, owed a duty to Hancock and the Partnership to stop or to disclose the illegal activities committed by its parent and/or alter egos against Hancock and the Partnership.

64. WSC, as a wholly-owned subsidiary and/or alter ego of the Sheraton Entities, had knowledge and/or participated in, among other things, the illegal kickbacks and improper vendor arrangements perpetrated by the Sheraton Entities.

65. But WSC, having knowledge and/or participating in its parent and/or alter ego's breaches against Hancock and the Partnership, took no steps to put a stop to the Sheraton Entities' illegal activities nor did it ever disclose its knowledge of such activities to Hancock and the Partnership. Indeed, WSC actively conspired to hide the breaches of fiduciary duty from its fellow partners.

66. Upon discovering on their own the illegal activities being conducted by the Sheraton Entities in the management of the Hotel, Hancock and its then partner Sumitomo were confronted, at virtually every turn, by WSC in a bad faith effort to

frustrate Hancock's, Sumitomo's, and the Partnership's investigation the Sheraton Entities' management practices and to force Hancock, Sumitomo, and the Partnership to abandon their legal claims against the Sheraton Entities.

67. It was important to WSC that its parent and/or alter ego remain manager of the Hotel. The Sheraton Entities had made it clear to Hancock and the Partnership that they could not and would not own—through WSC—a Hotel that was managed under a brand different from Sheraton.

68. WSC and the Sheraton Entities took steps to ensure—notwithstanding the illegal conduct of the Sheraton Entities—that the lucrative arrangement that the Sheraton Entities had to manage the Hotel would remain in place.

69. In its efforts to frustrate Hancock and its then partner Sumitomo's efforts to investigate the illegal activities of its parent and/or alter ego, WSC first filed a formal demand in October 1996 to remove Hancock as managing partner of the Partnership, asserting that Hancock was failing to provide for the capital needs of the Hotel. In reality, however, WSC's demand was just another effort on the part of WSC to assist its parent and/or alter ego in carrying out and covering up their breaches of fiduciary duty against Hancock and the Partnership.

70. The formal demand was next followed up with counterclaims asserted by ITT Sheraton and WSC "on behalf of the Joint Venture" alleging Hancock had breached the JV Agreement and fiduciary duties to ITT Sheraton and WSC by failing to provide for the capital needs of the Hotel and seeking an order from the court to remove and replace Hancock as managing partner. Hancock and the Partnership were forced—at considerable expense—to defend Hancock against these and other claims by WSC and

the Sheraton Entities.

71.     Upon information and belief, WSC sought and did inject these claims into the *Sheraton-Hancock Litigation I* purely in order to block Hancock's and the Partnership's claims against the Sheraton Entities.

72.     During *Sheraton-Hancock Litigation I* and despite repeated demands by the Hancock and the Partnership, the Sheraton Entities refused to cease managing the Hotel.  Hancock and the Partnership, therefore, moved for a preliminary injunction to remove the Sheraton Entities from managing the Hotel.  The court, however, granted Hancock's and the Partnership's motion for a preliminary injunction and the Sheraton Entities were expelled from the Hotel.

73.     Prior to the trial in *Sheraton-Hancock Litigation I*, all of WSC's counterclaims were severed from the litigation.  WSC subsequently abandoned those counterclaims, however, and seemingly chose not to pursue its then claims against Hancock and the Partnership.

74.     But WSC filed its current action against Hancock only after entry of the March 1, 2005 Delaware judgment against the its parent and/or alter ego Sheraton Entities.

75.     Upon information and belief, WSC brings its current action against Hancock and the Partnership in a transparent attempt to revive its abandoned counterclaims and recover for its parent and/or alter ego some of the damages the Sheraton Entities were ordered to pay to Hancock and the Partnership.

**IV.     WSC Is An Alter Ego Of One Or More Of The Sheraton Entities**

76.     Upon information and belief, the Sheraton Entities exercise complete

14

dominion and control over WSC, rendering it nothing more than the alter ego of one or more of the Sheraton Entities. WSC differs from the Sheraton Entities in name only.

77. WSC's only participation in the Partnership is its holding a 1% ownership interest – WSC does not maintain an office, does not employ any employees, and does not engage in any business. Furthermore, WSC's capital contribution to the Partnership was entirely provided by the Sheraton Entities.

78. The JV Agreement was executed on WSC's behalf by James D. Latham, former Senior Vice President and General Counsel of one of the Sheraton Entities known as the ITT Sheraton Corporation. Mr. Latham signed the JV Agreement as the "authorized agent" for WSC. No employee, officer, or director of WSC participated in the signing of the JV Agreement.

79. Officers of the Sheraton Entities confirmed in *Sheraton-Hancock Litigation I* that WSC is merely a shell for the Sheraton Entities. The Vice President and Associate General Counsel of the Sheraton Entities, for example, submitted an affidavit in *Sheraton-Hancock Litigation I* stating that WSC was formed for the sole purpose of holding the Sheraton Entities' interest in the Hotel.

80. In that same affidavit, the Vice President and Associate General Counsel of the Sheraton Entities stated that "the ultimate party in interest in the transaction was Sheraton, which was the source of WSC's capital funding, and that John Hancock had little or no interest in how we ordered Sheraton's business affairs among Sheraton and its subsidiaries."

81. The *Sheraton-Hancock Litigation I* conclusively established the numerous breaches of fiduciary duty committed by the Sheraton Entities against Hancock

15

and the Partnership. As the wholly-owned subsidiary and alter ego of the Sheraton Entities, WSC not only assisted and aided in those breaches, but continues to this day to breach its fiduciary duties to Hancock and the Partnership.

### Recoupment

### (Aiding & Abetting Breach of Fiduciary Duty)

82. Hancock and the Partnership hereby re-allege paragraphs 47 to 81 as if fully asserted herein.

83. WSC aided and abetted the Sheraton Entities in their breaches of fiduciary duty to the Hancock and the Partnership.

84. WSC damaged Hancock and the Partnership in an amount to be proven at trial, which will include recoupment of the significant legal costs in defense of Sheraton Entities and WSC's claims in now two separate jurisdictions.

### Recoupment

### (Civil Conspiracy)

85. Hancock and the Partnership hereby re-allege paragraphs 47 to 84, as if fully asserted herein.

86. WSC conspired with Sheraton Entities to cause harm to Hancock and the Partnership by aiding and abetting the Sheraton Entities in breaches of fiduciary duty. Despite fiduciary obligations, WSC aided and abetted Sheraton Entities' in its misconduct against Hancock and the Partnership by engaging in a civil conspiracy with Sheraton Entities to cause harm to Hancock and the Partnership and to further Sheraton Entities' misconduct against Hancock and the Partnership.

87. WSC damaged Hancock and the Partnership in an amount to be proven at

trial, which will include recoupment of the significant legal costs in defense of Sheraton Entities and WSC's claims in now two separate jurisdictions.

## Recoupment

### (Alter Ego Breach of Fiduciary Duty)

88. Hancock and the Partnership hereby re-allege paragraphs 47 to 81, as if fully asserted herein.

89. WSC, as an alter ego to one or more of the Sheraton Entities, breached fiduciary duties that have been proven, in part in *Sheraton-Hancock Litigation I*.

90. WSC damaged Hancock and the Partnership in an amount to be proven at trial, which will include recoupment of the significant legal costs in defense of Sheraton Entities and WSC's claims in now two separate jurisdictions.

WHEREFORE, Hancock requests judgment by the Court:

(1) Ordering that WSC take nothing by the Complaint filed in the above-entitled matter, and that the Complaint be dismissed with prejudice.

(2) Granting Hancock and the Partnership judgment on its recoupment counterclaims in an amount to be determined at trial, but not to exceed an amount awarded to WSC on its causes of action for breach of contract and breach of fiduciary duty;

(3) Awarding Hancock and the Partnership costs;

(4) Granting Hancock and the Partnership such other and further relief as the Court deems just.

                          Respectfully submitted,

                          <u>/s/ William E. Wallace III</u>
                          William E. Wallace III  (DC Bar No. 298000)
                          Jonathan C. Poling (DC Bar No. 489459)
                          MILBANK TWEED HADLEY & McCLOY LLP
                          1850 K Street, N.W., Suite 1100
                          Washington, DC 20006
                          Telephone: (202) 835-7511
                          Facsimile:  (202) 263-7511

December 8, 2006          *Attorneys for John Hancock Financial Services, Inc. & 2660 Woodley Road Joint Venture*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2006, I electronically filed and caused to be served by First Class Mail copies of Defendant John Hancock Life Insurance Company's and 2660 Woodley Road Joint Venture's Amended Answer and Counterclaims to Washington Sheraton Corporation's Complaint addressed as follows:

>John Scheuermann
>Scheuermann & Menist
>700 E Street, S.E.
>Washington, D.C. 20003
>Tel: (202) 547-9180
>
>Luke McGrath
>Bickel & Brewer
>767 Fifth Avenue
>New York, NY 10153
>Tel: (212) 489-1400
>
>
>/s/ Jonathan C. Poling
>Jonathan C. Poling