UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON SHERATON CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>2660 WOODLEY ROAD JOINT VENTURE, )<br>)<br>and )<br>)<br>JOHN HANCOCK LIFE INSURANCE COMPANY )<br>(formerly known as John Hancock Mutual Life )<br>Insurance Company), )<br>)<br>Defendants. ) | Case No. 1:05CV0971-HHK<br><br>Status Conference:<br>September 21, 2007 at 10:15 am |

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

SCHEUERMANN & MENIST

John E. Scheuermann
700 E. Street, S.E.
Washington, D.C. 20003
Telephone: 202-547-9180
Telecopier: 202-547-2050

ATTORNEYS FOR PLAINTIFF

Of Counsel:

**BICKEL & BREWER**

William A. Brewer III
James S. Renard
Luke McGrath
767 Fifth Avenue
New York, New York 10153
Telephone: 212-489-1400
Telecopier: 212-489-2384

## Table of Contents

Page

I. PRELIMINARY STATEMENT ..................................................................................................2

II. SUMMARY OF ARGUMENT ..................................................................................................3

III. ARGUMENT AND AUTHORITIES........................................................................................4

    A.    Defendants' Counterclaims Are Not Claims For Recoupment...............................4

        1.    Defendants' allegations of breach of fiduciary duty (and/or vicarious liability) sound in tort, not contract, and arise out of the conduct of the parties, not the Partnership Agreement. ......................................................4

        2.    Defendants' Counterclaims do not arise out of the same transaction as WSC's claims............................................................................................6

        3.    The nature of relief sought by Defendants' Counterclaims is different than the nature of relief sought under a typical recoupment claim. ..............8

    B.    Defendants' Counterclaims Are Barred By The Doctrines Of Satisfaction And Double Recovery.................................................................................................12

    C.    Defendants' Counterclaims Are Barred By The Doctrine Of *Res Judicata* And The Running Of The Relevant Statute Of Limitations. ..................................13

    D.    WSC Is Entitled To Attorneys' Fees Related To The Motion...............................15

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON SHERATON CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>2660 WOODLEY ROAD JOINT VENTURE,<br><br>and<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY<br>(formerly known as John Hancock Mutual Life<br>Insurance Company),<br><br>Defendants. | Case No. 1:05CV0971-HHK<br><br>Status Conference:<br>September 21, 2007 at 10:15 am |

### PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
### MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

Plaintiff Washington Sheraton Corporation ("WSC") files this Brief in Support of Plaintiff's Motion to Dismiss the Counterclaims of Defendants John Hancock Life Insurance Company ("Hancock") and 2660 Woodley Road Joint Venture (the "Partnership") (jointly, "Defendants"), as follows:

### I.

### PRELIMINARY STATEMENT

Defendants' Counterclaims were initially asserted as affirmative claims for relief and were only later recharacterized as "recoupment" claims when it became abundantly obvious that they would otherwise have been barred by limitations and *res judicata*. Once again attempting in vain to stay one step ahead of a dismissal, Defendants now portray their "recoupment" Counterclaims as somehow being inextricably tied to WSC's claims in this action. That effort must fail. Defendants' "recoupment" claims relate directly to the prior-adjudicated Delaware

2

Action; whereas this Court has already held that WSC's claims do <u>not</u> arise from that now-completed litigation.

In light of those undisputed facts, this Court should appropriately reject Defendants' attempt to piggy-back their claims (which are barred under the doctrines of claim preclusion, limitations, and satisfaction) upon the subsequently-arising claims of WSC. Accordingly, WSC respectfully requests that the Court dismiss Defendants' Counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## II.

## SUMMARY OF ARGUMENT

Defendants oppose WSC's motion to dismiss (the "Motion") and assert that: (1) Defendant's Counterclaims arise from the same contract as WSC's claims; (2) the nature of relief sought by Defendants' Counterclaims is the same as that sought with respect to WSC's claims; (3) the Partnership Agreement provides that Defendants are entitled to attorneys' fees and costs as damages from WSC; (4) Defendants' Counterclaims are not barred by the doctrines of satisfaction and double recovery; and (5) WSC's request for attorneys' fees and costs is without merit. None of those arguments, however, provides a basis for this Court to deny the relief sought by WSC's Motion.

This Court should grant WSC's Motion for four reasons. <u>First</u>, Defendants' Counterclaims are *not* claims for recoupment. <u>Second</u>, Defendants' Counterclaims are barred by the doctrines of satisfaction and double recovery. <u>Third</u>, Defendants' Counterclaims are barred by the doctrine of *res judicata* and the applicable three-year statute of limitations. <u>Fourth</u>, WSC is entitled to recover from Defendants its attorneys' fees and costs related to the Motion.

3

## III.

## ARGUMENT AND AUTHORITIES

A. <u>**Defendants' Counterclaims Are Not Claims For Recoupment.**</u>

Defendants' Counterclaims are not true claims for recoupment for three reasons. <u>First</u>, Defendants' allegations of breach of fiduciary duty (and/or vicarious liability) sound in tort, not contract, and arise out of the conduct of the parties, not the Partnership Agreement. <u>Second</u>, Defendants' Counterclaims do not arise out of the same transaction as WSC's claims. <u>Third</u>, the nature of relief sought by Defendants' Counterclaims is different than the nature of relief sought under a typical recoupment claim.

1. **<u>Defendants' allegations of breach of fiduciary duty (and/or vicarious liability) sound in tort, not contract, and arise out of the conduct of the parties, not the Partnership Agreement.</u>**

Defendants argue that their Counterclaims are based upon the Partnership Agreement, and therefore arise from the same contract as WSC's claims. This argument is without merit. Defendants' Counterclaims arise out of the purported conduct of WSC, which may be actionable as a breach of fiduciary duty under District of Columbia tort law, but do not arise under the Partnership Agreement. As discussed more fully below, Defendants allege that WSC aided and abetted the Sheraton Entities in breaching their fiduciary duties to the Partnership, engaged in a civil conspiracy to do so, or acted as an alter ego to the Sheraton Entities.[1] A claim for breach of

---

[1] *See* Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Defendants' Counterclaims [Document 34] ("Defendants' Opposition") at 6-7 ("Defendants assert three Counterclaims against Plaintiff. All of the Counterclaims are asserted as claims of recoupment against Plaintiff's claims and (i) assert claims for breaches of fiduciary duty . . . . What Defendants allege is clear: Plaintiff has breached its fiduciary duty to Defendants under the Partnership Agreement by aiding and abetting one or more of the Sheraton Entities in breaching their fiduciary duties to the Partnership and engaging in a civil conspiracy thereof or in a breach of its fiduciary duty to Defendants under the Partnership Agreement as an alter ego to one or more of the Sheraton Entities.").

4

fiduciary duty (or vicarious liability for another's breach of fiduciary duty) sounds in tort, not contract.[2] Thus, Defendants' Counterclaims for breach of fiduciary duty cannot arise out of any contract and do not arise out of the Partnership Agreement.

Defendants rely upon *United States v. Intrados/International Management Group*[3] for the proposition that "the issues of law and fact presented by the defendants' counterclaim are similar to those in the plaintiff's claims because both rely on the same contract."[4] This case is inapposite. The *Intrados* court based its decision on the fact that the recoupment claim was for breach of contract.[5] The court expressly relied upon the fact that the plaintiff's claims seeking costs and reimbursement under the contract and the defendants' claims seeking recoupment based upon breach of that contract implicated contract provisions from the same legal

---

[2] *United States v. York*, 890 F. Supp. 1117, 1142 n.2 (D. D.C. 1995) ("numerous cases have recognized that breach of fiduciary duty is an action sounding in tort."); *Regency Communications Inc. v. Cleartel Communications Inc.*, 160 F. Supp. 2d 36, 41 (D. D.C. 2001) ("'There is virtually an endless stream of American cases from various appellate courts discussing the relationship of tort and breach of contract.' 1 Stuart M. Speiser et al., *The American Law of Torts* § 1:20, at 65 (1983). A common formulation is as follows: 'The distinction between a claim *ex contractu* [in contract] and one *ex delicto* [in tort] is found in the nature of the grievance. Where the wrong results from a breach of a promise, the claim is *ex contractu*. However, if the wrong springs from a breach of a duty either growing out of the relationship of the parties, or imposed by law, the claim is *ex delicto*.'"); *see also Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983) ("Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for an underlying tort. The separate tort of aiding-abetting . . . recognizes that a person's actions in support of a wrong may make him liable for the tortious injury . . . .").

[3] 277 F. Supp. 2d 55 (D. D.C. 2003).

[4] Defendants' Opposition at 11 (quoting *Intrados*, 277 F. Supp. 2d at 61).

[5] 277 F. Supp. 2d at 57 ("The defendants assert a counterclaim for recoupment, alleging that the plaintiff is in breach of contract.") (internal footnote omitted).

5

instrument.[6] Unlike the claims in *Intrados*, however, Defendants' Counterclaims are not for breach of contract, but, rather, are for breach of fiduciary duty. As discussed above, tort claims for breach of fiduciary duty and vicarious liability resulting from another's breach of fiduciary duty do not implicate provisions of any contract. Accordingly, *Intrados* does not support Defendants' position, because Defendants' Counterclaims do not arise out of particular provisions in the Partnership Agreement.[7]

### 2. **Defendants' Counterclaims do not arise out of the same transaction as WSC's claims.**

In addition, Defendants' Counterclaims do not arise out of the same transaction as WSC's claims. The parties agree that the test for determining whether a putative counterclaim is sufficiently connected to a plaintiff's claim to qualify as a claim for recoupment is the logical relationship test under Rule 13(a).[8] No dispute exists that WSC's claims derive from and arise out of the contractual rights WSC enjoys as a Partner under the Partnership Agreement, and the fact that Defendants did not distribute to WSC assets proportionate to its interest in the Partnership as part of the winding up of the Partnership ("WSC's Claims").[9] In contrast,

---

[6] *Id.* at 61 (explaining that because "the plaintiff relies on the contractual clauses governing allowable costs and reimbursement," and "the defendants depend on the same legal instrument in bringing their counterclaim" for recoupment based on breach of contract, a logical relationship existed between the parties' claims based on "the parties' indispensable reliance on the same contract to establish their claims.").

[7] Defendants maintain in Defendants' Opposition that their claim for damages is legally supported by provisions of the Partnership Agreement. *See* Defendants' Opposition at 14. As discussed below, these provisions cannot be considered by the Court in resolving WSC's Motion and, in any event, do not support Defendants' Counterclaims. *See* Section III.A.3.

[8] *See* Memorandum of Law in Support of Plaintiff's Motion to Dismiss Defendants' Counterclaims [Document 33] ("WSC's Memorandum") at 10 & n. 36; Defendants' Opposition at 12.

[9] *See* WSC's Memorandum at 10-12.

Defendants' Counterclaims allege breaches of fiduciary duty (and/or vicarious liability) arising from the Sheraton Entities' breaches of fiduciary duty in the <u>prior-adjudicated</u> Delaware Action:

- "Defendants counterclaim against WSC for i) aiding and abetting in breaches of fiduciary duties; ii) engaging in a civil conspiracy in furtherance of the aiding and abetting of breaches of fiduciary duty and iii) alter ego breaches of fiduciary duty."[10]

- Under their first Counterclaim, subtitled "Aiding and Abetting Breach of Fiduciary Duty," Defendants allege that "WSC aided and abetted the Sheraton Entities in their breaches of fiduciary duty to [Defendants]."[11] Defendants further aver that WSC brought claims against them in the Delaware Action in order to aid the Sheraton Entities.[12]

- Under their second Counterclaim, subtitled "Civil Conspiracy," Defendants allege that WSC conspired with the Sheraton Entities to breach their fiduciary duty: "WSC conspired with Sheraton Entities . . . by aiding and abetting the Sheraton Entities in breaches of fiduciary duty. Despite fiduciary obligations, WSC . . . engag[ed] in a civil conspiracy with Sheraton Entities . . . ."[13]

- Under their third Counterclaim, subtitled "Alter Ego Breach of Fiduciary Duty," Defendants allege that "WSC, as an alter ego to one or more of the Sheraton Entities, breached fiduciary duties that have been proven, in part in *Sheraton-Hancock Litigation I* [*i.e.*, the Delaware Action]."[14]

Taking Defendants' allegations as true, WSC's Claims bear no logical relationship to issues arising from these transactions. Indeed, this Court has already determined that the Delaware

---

[10] *See* Amended Answer and Counterclaims of John Hancock Life Insurance Company & 2660 Woodley Road Joint Venture [Document 31] ("Answer"), filed on December 8, 2006, at 9 (Preliminary Statement).

[11] *Id.* at ¶ 83.

[12] *Id.* at ¶ 70.

[13] *Id.* at ¶ 86; *see also id.* at ¶ 65 ("Indeed, WSC actively conspired to hide the breaches of fiduciary duty [of the Sheraton Entities] from its fellow partners.").

[14] *Id.* at ¶ 89; *see also id.* at ¶ 81 ("As the wholly-owned subsidiary and alter ego of the Sheraton Entities, WSC . . . assisted and aided in [the Sheraton Entities' proven] breaches [of fiduciary duty.]").

Action concerned transactions different from those underlying WSC's Claims in this action.[15] Accordingly, because Defendants' Counterclaims relate to the Delaware Action, which, in turn, concerned claims different from WSC's Claims, Defendants' Counterclaims cannot logically relate to WSC's Claims.

    3.    **The nature of relief sought by Defendants' Counterclaims is different than the nature of relief sought under a typical recoupment claim.**

The nature of the relief sought by Defendants is not the same as the relief sought under a true recoupment claim for two reasons. First, Defendants' Counterclaims seek affirmative relief, which is contrary to the defensive nature of a true claim for recoupment. Second, the Partnership Agreement does not provide a basis in contract for Defendants to recover their attorneys' fees and costs as damages from WSC. Accordingly, Defendants' Counterclaims do not state a claim for recoupment.

    a.    **Defendants' Counterclaims seek affirmative relief, which is contrary to the defensive nature of a true claim for recoupment.**

Defendants assert that WSC and Defendants both seek the same type of relief, namely, monetary damages.[16] This assertion is inaccurate because Defendants seek to recover attorneys' fees and costs, which relief is different in kind from the relief sought by WSC's Claims.[17] Furthermore, as Defendants concede, their request for recovery of attorneys' fees and costs is an affirmative claim for relief.[18] A claim for affirmative relief of attorneys' fees and costs is

---

[15] *See* WSC's Memorandum at 10-13 (identifying differences between issues of law and fact underlying Defendants' Counterclaims as compared to WSC's Claims).

[16] *See* Defendants' Opposition at 13.

[17] WSC's Claims seek actual, compensatory, consequential, and punitive damages and an accounting of the Partnership. *See generally* WSC's Complaint [Document 1].

[18] *See* Defendants' Opposition at 13 ("Defendants' Counterclaims seek relief in the form of monetary damages").

8

inconsistent with a defensive claim for recoupment.[19] Indeed, Defendants' Counterclaims, as alleged, are not defensive claims seeking merely to reduce WSC's recovery. Rather, Defendants' Counterclaims seek the reimbursement for Defendants' previous and current expenses—attorneys' fees and costs—in the Delaware Action and in this action, respectively. As the court noted in *In re Eyke*, such requested relief (i.e., recovery of fees already paid) is contrary to a defensive claim of recoupment.[20] Accordingly, because Defendants do not seek to recover the same kind of relief as does WSC, and because Defendants assert an affirmative claim for attorneys' fees and costs, Defendants' Counterclaims cannot be considered proper claims for recoupment.

---

[19] *See Vile v. Chamberlain*, No. 542830, 1999 Conn. Super. LEXIS 1715, at *5-*7 (Conn. Super. Ct. June 29, 1999) ("this court [cannot] discern from the pleadings that the counterclaim plaintiffs genuinely seek recoupment as a purely defensive mechanism to the plaintiff's cause of action," because "the counterclaim plaintiffs explicitly request affirmative relief for: compensatory damages, punitive damages, *attorneys fees* and declaratory relief.") (emphasis added) (granting motion for summary judgment because counterclaim did not fall within recoupment exception so as to avoid the effect of the statute of limitations); *Baylor v. Bortolussi*, 194 A.2d 653, 656 (D.C. 1963) (granting motion for summary judgment because counterclaim did not fall within recoupment exception so as to avoid the effect of the statute of limitations); *Sears, Roebuck & Co. v. Goudie*, 290 A.2d 826, 830 (D.C. 1972) ("the generally accepted view [is] that affirmative claims made by way of setoffs and counterclaims must be tested by the statute of limitations while recoupment sought only by way of defense is a right that continues in existence with the primary claim. . . . To the extent that Goudie's claim went beyond matters of defense, it must be tested by the statute of limitations."). Defendants' Opposition cites only *In re Eyke*, 246 B.R. 550, 558 (Bankr. W.D. Mich. 2000), as authority for the proposition that Defendants can recover attorneys' fees and costs as damages under a claim of recoupment. *See* Defendants' Opposition at 14 & n.35. *In re Eyke* is readily distinguishable. There, the bankruptcy court made a determination in the context of a bankruptcy proceeding that a creditor could recoup from future payments its attorneys' fees due to an indemnification provision in the contract. *See* 246 B.R. at 558. *In re Eyke*, therefore, involves another example in which contract provisions form the basis of recoupment. *See id.* In contrast to *In re Eyke*, no contractual basis exists here to support Defendants' claim for the recovery of attorneys' fees and costs from WSC under recoupment.

[20] *See In re Eyke*, 246 B.R. at 558 ("Recoupment 'is not in the nature of a cross demand, but rather it lessens or defeats any recovery by the [other party].' Therefore, CBI, having voluntarily made the $3,000 payment to the Trustee, is unable to affirmatively recover that payment.").

>    b.  **<u>The Partnership Agreement does not provide a basis in contract for Defendants to recover their attorneys' fees and costs as damages from WSC.</u>**

In an eleventh hour attempt to shift the basis of their breach of fiduciary duty claims (and/or vicarious liability tort claims) from tort to contract, Defendants argue that they are entitled to recover attorneys' fees under the Partnership Agreement.[21] This argument is without merit for two reasons. <u>First</u>, Defendants cannot overcome the fact that the Counterclaims do not allege, or provide any basis from which the Court may infer, that WSC is liable to Defendants for breach of any specific terms of the Partnership Agreement. <u>Second</u>, the Partnership Agreement provisions referred to in Defendants' Opposition do not support Defendants' argument that they may recover attorneys' fees and costs.

In their Counterclaims, Defendants do not allege, or provide any basis from which the Court may infer, that WSC is liable to Defendants for breach of any specific terms of the Partnership Agreement.[22] Defendants' Counterclaims do not refer to, quote from, or attach the Partnership Agreement.[23] Accordingly, the Partnership Agreement is not before the Court with regard to those Counterclaims.[24] Indeed, Defendants refer to the Partnership Agreement as allegedly providing a basis for Defendants' damages for the first time in Defendants'

---

[21] *See generally* Defendants' Opposition.

[22] *See generally* Answer at ¶¶ 47-90.

[23] *Id.*

[24] *See Estate of Anthony Phillips v. District of Columbia*, 355 F. Supp. 2d 212, 216 (D. D.C. 2005) ("when ruling on a motion to dismiss, the Court accepts as true all of <u>the complaint's factual allegations</u>. Plaintiff is entitled to the benefit of all inferences that can be derived from <u>the facts alleged</u>.") (emphasis added). Defendants concur. *See* Defendants' Opposition at 9 (discussing the Rule 12(b)(6) standard and stating that "[t]he Court must accept as true <u>all allegations of fact set forth in Defendants' Counterclaims</u> . . . and determine whether 'under any reasonable reading of <u>the pleading</u>, [Defendants] may be entitled to relief.'") (emphasis added).

Opposition.[25] Without any such allegations in the Counterclaims supporting this argument, the Partnership Agreement can have no bearing on this Court's determination under Rule 12(b)(6).[26] In fact, contrary to that argument, Defendants' Counterclaims allege a different basis for relief altogether—namely, that Defendants are entitled to recover their attorneys' fees and costs as a result of WSC's breach of fiduciary duty (and/or vicarious liability for the Sheraton Entities' breaches of fiduciary duty).[27] Thus, because Defendants fail to allege contract liability in their Counterclaims, the Court should reject Defendants' argument that their damages claims are based upon the Partnership Agreement.

Moreover, the Partnership Agreement provisions referred to in Defendants' Opposition do not support Defendants' argument that they may recover attorneys' fees and costs. According to Defendants' Opposition, Paragraph 6.09 of the Partnership Agreement requires the Partnership to bear all costs and expenses incurred in connection with the management and operation of the Partnership.[28] However, the purported text of paragraph 6.09, as quoted in Defendants' Opposition, does <u>not</u> authorize Defendants to recover attorneys' fees and costs <u>from WSC</u>.[29] Furthermore, according to Defendants' Opposition, Paragraph 6.10 of the Partnership Agreement purportedly requires the Partnership to indemnify Hancock for any expenses of any nature, including attorneys' fees and costs.[30] But, again, Paragraph 6.10 does not authorize recovery of

---

[25] *See* Defendants' Opposition at 4, 14.

[26] *See supra* note 24.

[27] *See* Answer at ¶¶ 81-90.

[28] *See* Defendants' Opposition at 14.

[29] Defendants discuss what Paragraph 6.09 of the Partnership Agreement supposedly provides, but do not quote any of the express terms of any such Paragraph. *See id.*

[30] *See id.*

those costs <u>from WSC</u>.[31]  Thus, the Partnership Agreement's provisions—as proffered by Defendants in Defendants' Opposition—do not enable Defendants to state a claim for relief in recoupment or otherwise.[32]

B.  **Defendants' Counterclaims Are Barred By The Doctrines Of Satisfaction And Double Recovery.**

Defendants argue that "attorneys' fees were not the subject of the Delaware Action," and, therefore, that "Defendants have not yet recovered these expenses."[33]  This argument is without merit.  Defendants had a full and fair opportunity to seek attorneys' fees and costs in the Delaware Action and, to the extent that Defendants had a viable claim to recover attorneys' fees and costs in the Delaware Action (WSC believes no such right of recovery existed), the Delaware Court and the Third Circuit Court of Appeals both decided not to award such relief to Defendants.[34]  Indeed, at every step after the jury award in the Delaware Action, the Delaware Court and the Third Circuit reduced and limited the relief granted to Defendants as full

---

[31] Again, Defendants discuss what Paragraph 6.10 of the Partnership Agreement supposedly provides, but quote only a limited portion of the express terms of any such Paragraph. *See id.*

[32] Of course, if the Court were to entertain the alleged applicability of the Partnership Agreement to support the legal basis for Defendants' claims for attorneys' fees and costs as damages in this action, the Court could also rely on the Partnership Agreement to bar Defendants' Counterclaims, which are not based on any allegedly willful, fraudulent, or bad faith conduct committed by WSC.  Indeed, Defendants do not seek punitive damages in this action.  *See id.* at 14 n.36 (indicating "Paragraph 6.10 of the Partnership Agreement also states that '[n]either the Partnership nor any Partners shall have any claim against the Partners by reason of any act or omission of the Partners except where such claim is based on the actual fraud, bad faith, gross negligence or willful misconduct of a Partner.'").

[33] *See id.* at 15.

[34] *See* Exhibits 7-11 attached to the Declaration of John E. Scheuermann in Support of Plaintiff's Motion to Dismiss Defendants' Counterclaims (the Delaware Court's initial, amended, and final judgments, and the Third Circuit's opinion).

12

compensation for their injury.[35] An award of attorneys' fees and costs in recoupment now would be contrary to those decisions limiting Defendants' recovery and would provide Defendants with a windfall above and beyond the relief awarded to Defendants in the Delaware Action.[36]

C. **Defendants' Counterclaims Are Barred By The Doctrine Of *Res Judicata* And The Running Of The Relevant Statute Of Limitations.**

Defendants cannot escape the fact that their Counterclaims should have been brought in the Delaware Action and are, thus, barred by the doctrine of *res judicata*. Defendants had a full and fair opportunity in the Delaware Action to bring these claims for attorneys' fees and costs as compulsory counterclaims against WSC or as claims directly against the Sheraton Entities—for whom Defendants allege WSC acted as an "alter ego." Indeed, the court in the Delaware Action rightly allowed joinder of the claims WSC raised in that action.[37] The appearance of WSC and

---

[35] *See id.*

[36] *See* WSC's Memorandum at 14-16. To the extent that Defendants contend that WSC is liable for a separate injury from that caused by the Sheraton Entities' breaches of fiduciary duties at issue in the Delaware Action, *see* Defendants' Opposition at 14 ("Defendants incurred expenses in the form of attorneys' fees as a result of Plaintiff's aborted claims against Defendants in the Delaware Action and continue to incur expenses as a result of the claims brought in this action."), Defendants do not dispute that even if WSC were vicariously liable for the Sheraton Entities' breaches of fiduciary duty at issue in the Delaware Action, WSC would merely be jointly and severally liable for the same injury for which Defendants have already been compensated. *See* WSC's Memorandum at 16 n.63. Defendants' Counterclaims seek recovery for the same injury because ITT Sheraton, one of the Sheraton Entities in the Delaware Action, *see* Answer at ¶ 49, and WSC jointly filed and pursued the "aborted claims" for which Defendants seek to recover attorneys' fees and costs in this action, *see id.* at ¶ 70 ("The formal demand was next followed up with counterclaims asserted by ITT Sheraton <u>and</u> WSC . . . . [Defendants] were forced . . . to defend Hancock against these and other claims by WSC and the Sheraton Entities.") (emphasis in original). Nor can Defendants establish any separate injury resulting from WSC's commencement of this action. *See* WSC's Memorandum at 15 n.59.

[37] *See* Memorandum Order in the Delaware Action, filed on April 6, 1999, attached as Exhibit 4 to the Declaration of John E. Scheuermann in Support of Plaintiff's Motion to Dismiss Defendants' Counterclaims, at 4 ("the Court finds that [Sheraton's] and WSC's state law counterclaims share a common nucleus of operative fact with [Hancock's] underlying federal claims . . . because [Sheraton and WSC's] counterclaims relate to the factual setting of the Joint Venture Agreement and Management Contract. Taken together, these documents define the

the Sheraton Entities in the Delaware Action triggered Defendants' obligation to bring compulsory counterclaims against those parties, thereby precluding Defendants from now asserting these Counterclaims in this action.[38]

In addition, Defendants do not dispute that if the Counterclaims do not properly lie in recoupment, Defendants' Counterclaims are time barred by the applicable three-year statute of limitations.[39] Defendants' Counterclaims, as amended, recharacterized the initially-asserted affirmative claims for relief to newly-asserted claims for recoupment specifically to <u>avoid</u> the running of the applicable limitations period.[40] Notwithstanding Defendants' assertions to the contrary, Defendants' Counterclaims are <u>not</u> recoupment claims and, therefore, are barred by the running of the statute of limitations.

---

duties and responsibilities of the parties which is the underlying issue in [Hancock's] federal claims and [Sheraton and WSC's] counterclaims. The [parties] allege injury to their respective business interests and breach of fiduciary duties because of each other's action and/or inaction."); *id.* at 8 ("As previously discussed, [Hancock's] federal claims arise from [Sheraton and WSC's] duties and responsibilities under the Management Contract. Similarly, [Sheraton and WSC's] counterclaims arise from the Joint Venture Agreement. The Court finds that the two agreements are so intertwined that the claims and counterclaims arise out of a series of transactions which meet the transitionally related requirement. Additionally, the Court finds that there is a common question of law or fact between [Hancock's] federal claims and [Sheraton and WSC's] counterclaims. All the claims arise from the fiduciary and legal relationship between the parties.").

[38] *See* WSC's Memorandum at 18 n.68 (discussing applicability of the doctrine of *res judicata* to Defendants' Counterclaims). Notably, Defendants' failure to bring a claim for attorneys' fees and costs against WSC (or any of the Sheraton Entities) in the Delaware Action, notwithstanding the numerous legal claims and other theories of recovery asserted by Defendants in the Delaware Action, also suggests the lack of any legal basis for Defendants' ability to recover their attorneys' fees and costs from WSC as damages in this action.

[39] *See generally* Defendants' Opposition; WSC's Memorandum at 17 & n.67 (discussing applicability of relevant statute of limitations to Defendants' Counterclaims).

[40] *Compare* Answer and Counterclaims of John Hancock Financial Services, Inc. ("Answer") [Document 22], filed on October 26, 2006, at ¶¶ 46-74, to Defendants' Answer at ¶¶ 47-90.

14

D.   **WSC Is Entitled To Attorneys' Fees Related To The Motion.**

Defendants ignored the Court's prior ruling and, therefore, sanctions are warranted. Defendants asserted meritless Counterclaims with knowledge that they are not true claims for recoupment. Sanctions are an accepted deterrent for vexatious litigation. They are assessed when litigants knowingly assert claims that are either time-barred claims, or that are barred by the doctrine of *res judicata*.[41] Because Defendants' Counterclaims are plainly subject to dismissal and were improperly asserted against WSC in this action, an award of WSC's costs and fees related to this Motion is just and proper.

Respectfully submitted,

**SCHEUERMANN & MENIST**

700 E. Street, S.E.
Washington, D.C. 20003
Telephone: 202-547-9180
Telecopier: 202-547-2050

/s/ John E. Scheuermann
John E. Scheuermann

**ATTORNEYS FOR PLAINTIFF**

Of Counsel:

**BICKEL & BREWER**

William A. Brewer III
James S. Renard
Luke McGrath
767 Fifth Avenue
New York, New York 10153
Telephone: 212-489-1400
Telecopier: 212-489-2384

---

[41] *See* WSC's Memorandum at 17-18.

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2007, I electronically filed and caused to be served by First Class Mail copies of Plaintiff's Reply Brief in Support of Motion to Dismiss Defendants' Counterclaims to Defendants' counsel of record addressed as follows:

William E. Wallace III
Jonathan C. Poling
MILBANK TWEED HADLEY & McCLOY LLP
1850 K Street, N.W., Suite 1100
Washington, D.C. 20006

/s/ John E. Scheuermann
John E. Scheuermann

5123428.6
1643-35